1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    EDWARD ALVARADO, et al.,                    No. C 04-00098 SI

9              Plaintiffs,                        **ORDER GRANTING IN PART AND
                                                  DENYING IN PART DEFENDANT'S
10      v.                                        MOTIONS FOR SUMMARY JUDGMENT
                                                  AS TO JANICE LEWIS, BERTHA
11                                                DUENAS, DYRONN THEODORE,
     FEDEX CORPORATION,                           CHARLOTTE BOSWELL AND
12                                                GRANTING DEFENDANT'S MOTION
              Defendant.                          FOR SUMMARY JUDGMENT AS TO
13   _____/           CHARLES GIBBS**

14

15

16        On November 21, 2005, the Court heard oral argument on defendant's motions for summary

17   judgment against plaintiffs Janice Lewis, Bertha Duenas, Dyronn Theodore, Charlotte Boswell, and

18   Charles Gibbs.  Having carefully considered the arguments of counsel and the papers submitted, the

     Court enters the following order.
19

20

21                                    **LEGAL STANDARD**

22        Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

23   and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

24   material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

     56(c).
25

26        In a motion for summary judgment, "[if] the moving party for summary judgment meets its

27   initial burden of identifying for the court those portions of the materials on file that it believes

28   demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts

2  showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors*

3  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 317

4  (1986). In judging evidence at the summary judgment stage, the Court does not make credibility

5  determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the

6  non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v.*

7  *Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509

8  (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e).

9  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues

10  of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th

11  Cir. 1979).

12

13                                                    **DISCUSSION**

14          As a general matter, the Court observes that plaintiffs' opposition briefs contain fairly long

15  statements of facts, and argument sections that are often devoid of specific details and/or citations to

16  evidence. Plaintiffs submitted numerous declarations with voluminous exhibits, yet for the most part

17  the opposition briefs do not contain any citations to these documents. However, it is not the Court's task

18  to "scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1278

19  (9th Cir. 1996), and "it need not examine the entire file for evidence establishing a genuine issue of fact,

20  where the evidence is not set forth in the opposition papers with adequate references so that it could be

21  conveniently found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

22  Moreover, the Court notes that plaintiffs' counsel raised submitted several declarations on the day of

23  the hearing, and raised a number of new arguments and citations to the record that were not contained

24  in their papers. The Court will not consider arguments and evidence raised for the first time at the

25  hearing.

26          All of the plaintiffs contend that summary judgment on any of their claims would be

27  inappropriate in light of the fact that the Court has certified a class action in *Satchell et al. v. FedEx*

28  *Corp.*, 03-2659 SI ("*Satchell*"). Plaintiffs contend that if the Court grants summary judgment in favor

of FedEx on any of plaintiffs' claims, this would result in "inconsistent" judgments.

Plaintiffs filed their individual actions when the *Satchell* case was pending, and thus plaintiffs made the choice to pursue their individual actions outside of the class context. Indeed, four of the five plaintiffs[1] were originally listed as plaintiffs in the *Satchell* action. The language plaintiffs refer to regarding "inconsistent judgments" is from Federal Rule of Civil Procedure 23(b)(1)(A), which provides that a class action may be maintained if, *inter alia*, "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . . ." Fed. R. Civ. P. 23(b)(1)(A).

This Rule does not require that defendant's motions for summary judgment be denied, because a finding that any of the plaintiffs has not raised a triable issue of fact with respect to his or her claims would not "establish incompatible standards of conduct" for FedEx. The Court's conclusion in this case that some of the plaintiffs' claims are time-barred, or that plaintiffs have failed to submit sufficient evidence to survive summary judgment has no consequence whatsoever for the class claims in *Satchell.*

Conversely, plaintiffs suggest that the Court's certification of the *Satchell* case somehow precludes an adverse ruling in this case. However, as plaintiffs well know (particularly since counsel for plaintiffs are also class counsel in the *Satchell* case), the Court's certification of a class in the *Satchell* case was *not* a ruling on the merits of the class claims. Simply put, the certification of the *Satchell* case has no bearing on whether summary adjudication is appropriate on plaintiffs' claims in

---

[1] Bertha Duenas, Charles Gibbs, Charlotte Boswell and Dyronn Theodore were originally listed as either class representatives or individual plaintiffs in the state court *Satchell* complaint filed on December 12, 2002. These plaintiffs, along with the other *Alvarado* and *White* plaintiffs filed their own individual actions on January 9, 2004.

After the *Satchell* case was certified as a class action, plaintiffs Theodore, White and Rivera filed a motion to dismiss their individual actions without prejudice so they could have their claims adjudicated as part of the class action. By order filed October 19, 2005, the Court denied the request, noting, *inter alia*, that these plaintiffs had made the decision to pursue their individual cases outside the class context. On October 24, 2005, counsel for plaintiffs sent a letter to the Court requesting that "the Court correct the ruling to accurately reflect that [the plaintiffs] did not file their complaints after the class action, but instead they had indicated their desire to be part of the class action all along – albeit not in the capacity as class representatives." This is a distinction without a difference, as there is no question that these plaintiffs were named as plaintiffs in the original state court *Satchell* case, and that after the case was removed to federal court (and prior to certification), these plaintiffs and others severed their cases and filed separate individual actions in *Alvarado* and *White*.

United States District Court

For the Northern District of California

this case.

## I.      Summary Judgment as to Janice Lewis

Plaintiff Janice Lewis is an African American woman.  Lewis was hired by FedEx as a part-time casual handler on May 6, 1997, and she held that position until February 1998.  In March 1998 Lewis became a part-time permanent handler at the Oakland facility.  On May 2, 1999, Lewis became a ramp transport driver (RTD) at the San Leandro facility.

On March 4, 2003, Lewis filed a complaint with the DFEH stating that "from March 2002 until December 2002 I was subjected to harassment because of my race, African American, color, Black, and sex, gender, female, in violation of the Fair Employment and Housing Act." Lewis Decl. Ex. E.  In May 2003 Lewis filed a complaint with the EEOC alleging discrimination based on race and retaliation.  On February 16, 2005, Lewis filed a second charge with the EEOC alleging that she was fired on February 23, 2004 on account of physical disability.

### A.      Promotion

Throughout her employment at FedEx, Lewis repeatedly applied for and was denied promotions. Lewis concedes that the first thirteen of the twenty positions she sought are outside the statute of limitations.  Opposition at 9.[2]  However, Lewis contends that five[3] promotions she sought in 2002 are timely: a May 24, 2002 application for a COA position; her May 24, 2002, September 20, 2002, and December 27, 2002 applications for RTD positions; and an October 11, 2002 application for a dispatcher position.

FedEx does not dispute that these five promotion denials are timely, and instead contends that each fails as a matter of law.  FedEx argues that for some of the promotions at issue, Lewis has failed

[2]  Lewis was not listed on the original state court *Satchell* complaint, but she was originally named as a plaintiff in *Caldwell et al. v. FedEx*, 03-2878 SI, which was filed on June 19, 2003.  Pursuant to the stipulation filed November 6, 2003, Lewis' claims were severed and she was allowed to file her own complaint, which she filed (along with the other *Alvarado* plaintiffs) on January 9, 2004.

[3]  Lewis does not identify or address the other two promotions that she contends are timely, and thus the Court concludes that she has abandoned any claim that the denials of these promotions was discriminatory.

United States District Court

For the Northern District of California

to make out a *prima facie* case because she has not shown that an individual outside the protected class was hired. For all of five of the promotions, FedEx argues that Lewis' CEV score was lower than the successful applicants, and that Lewis failed to show that FedEx's legitimate, non-discriminatory reason for the hiring decisions was pretext for discrimination.

As an initial matter, the Court concludes that Lewis has established a *prima facie* case of discrimination with respect to all five of the promotions at issue. There is evidence in the record (in the form of Lewis' deposition testimony) that Lewis applied for each of these positions, that she was denied each of these positions, and in each case, the successful applicant or applicants were either Caucasian women or men of various races. Lewis has submitted evidence that she was qualified for the positions at issue, and FedEx does not dispute her qualifications. Accordingly, the Court finds Lewis has established a *prima facie* case of discrimination. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

After the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's rejection. *Id.* FedEx asserts that its legitimate, non-discriminatory reason for the hiring decisions is that the successful applicants had higher CEV scores than Lewis. FedEx has submitted evidence showing Lewis' CEV numbers at the time she applied for the some of the promotions at issue, along with the CEV numbers of all of the applicants, including those who were hired.

The burden then shifts back to Lewis to produce evidence showing that FedEx's stated reason for the rejection was pretextual. *Id.* at 442. Lewis argues that she has submitted evidence of pretext because successful applicants have been hired despite the fact that they have lower CEV scores than other applicants. The evidence submitted by FedEx shows that this is in fact true. Adams Decl. Ex. 1 (showing that for several positions successful applicant did not have highest CEV score). The Court concludes that Lewis has submitted evidence sufficient to defeat summary judgment on her promotions claims with respect to the five promotions she sought in 2002. *See Warren*, 58 F.3d at 443 (reversing grant of summary judgment where plaintiff introduced evidence that promotions procedures were subjective and non-minority applicants who ranked below him on employment list were hired).

Accordingly, the Court GRANTS defendant's motion for summary judgment to the extent Lewis

challenges the denial of any promotion aside from the five promotions in 2002, and DENIES defendant's motion with respect to these five promotion denials in 2002.

### B.   Discipline

FedEx identifies the following disciplinary actions received by Lewis: (1) a February 2000 counseling letter; (2) a June 2000 counseling letter; and (3) a March 2001 online counseling.  FedEx moves for summary judgment on these claims because Lewis admitted in her deposition that the 2000 counseling letters were fair and not issued on account of her race or sex. *See* Lewis Depo. at 212-14.   FedEx contends that Lewis does not have any evidence that the 2001 online counseling was discriminatory, and in any event, that the counseling does not constitute an "adverse employment action."

Lewis' opposition does not identify or describe what discipline she claims was discriminatory, nor does she advance any specific argument or evidence in support of her claims.  Instead, without citing any evidence or responding directly to FedEx's arguments, Lewis simply asserts that summary judgment on her discipline claims would be improper given the Court certification of the class action in *Satchell*.  For the reasons set forth *supra*, the fact that the *Satchell* case has been certified does not bar summary judgment on Lewis' discipline claims.  More importantly, Lewis has not advanced any specific evidence or argument in support of her discipline claims, and accordingly the Court GRANTS summary judgment to defendant.

### C.   Termination

The Court notes that although FedEx has moved for summary judgment on Lewis' termination "claim," and plaintiffs' opposition addressed her termination "claim," at the hearing plaintiffs' counsel stated that Lewis does not assert an independent challenge to her termination.  Instead, Lewis alleges that FedEx terminated her in retaliation for filing this lawsuit.  Accordingly, the Court analyzes Lewis' termination within the rubric of her retaliation claim.

### D.   Disability Discrimination/Failure to Accommodate

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    In her opposition, Lewis describes her claims for disability-based discrimination and failure to

2    provide reasonable accommodations under FEHA.  FedEx contends that because Lewis did not allege

3    any disability discrimination claims in the complaint, these claims are not a part of this lawsuit.  Lewis

4    implicitly concedes that she did not specifically allege any such claims in the complaint.  Opposition

5    at 19-20.  Nevertheless, she argues that she can maintain these claims because she alleged disability-

6    based discrimination in her administrative complaints with the DFEH, and thus FedEx was put on notice

7    of these claims.

8    The Court concludes that regardless of whether Lewis alleged disability-based discrimination

9    in her administrative complaints, she did not allege any disability claims under FEHA in the operative

10   complaint in this lawsuit.  The Court will not permit Lewis to assert these claims for the first time in her

11   opposition to defendant's motion for summary judgment, after the close of discovery.  *See Coleman*

12   *v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) (holding plaintiffs could not raise disparate

13   impact theory not pled in complaint for first time at summary judgment after close of discovery).  The

14   Court also rejects plaintiff's arguments that FedEx was on notice of these claims due to the

15   administrative complaints, and that FedEx will not be prejudiced by allowing these claims to proceed.

16   To the contrary, the Court finds that if Lewis were allowed to assert these disability claims for the first

17   time at this late stage in the litigation, discovery would necessarily need to be reopened so that FedEx

18   could conduct discovery and motion practice on, *inter alia*, (1) whether Lewis' carpal tunnel condition

19   limits a major life activity under FEHA; (2) the circumstances surrounding each Lewis' requests for a

20   "reasonable accommodation;" and (3) whether the accommodations that Lewis sought were reasonable.

21   This is unreasonable at this stage of the litigation..  For all of these reasons, the Court hereby concludes

22   that Lewis has not alleged any disability-based discrimination claims in the Complaint, and that these

23   claims are not a part of this case.

24

25   **E.    Hostile Work Environment**

26   Lewis contends that she was subject to a racially and sexually hostile work environment.  Lewis

27   testified at her deposition that a supervisor, Jack Jordan, made sexually offensive comments and jokes

28   on a daily basis; that he played sexually explicit music despite her requests for him to play different

music; that he said to her, after she asked him to change the sexually explicit music, "Why don't you like this song, what does it make you think of?;" that he referred to her truck as the "girly truck"; that he repeatedly made comments about what she as a woman could and could not do with respect to job duties; and that he on at least one occasion made a comment about Lewis' body, pointing to a model on a calendar and saying "if you keep working out . . . you could look like this."  Lewis Depo. at 156-61, 337-43.  Lewis testified that Jordan favored the male employees by allowing them to "pull" their routes, choose which stations they were going to go to, and select which trucks they wanted to drive; in contrast, Lewis testified that if she wanted a truck she "would get trashed every single time."  *Id.* at 155.  Lewis also testified that she and another female worker were repeatedly verbally harassed by a co-worker who was a "team leader," sometimes to the point of tears, and that this co-worker did not treat male employees the same way.  *Id.* at 343-45.  Lewis filed a complaint regarding this individual to her manager, Jordan.  McCoy Decl. Ex. I.

Lewis testified that her senior manager Robert Montez treated her differently on account of race and sex by preventing her from earning overtime while male and Caucasian drivers were allowed to earn overtime, *id.* at 286-87, and assigning her the oldest truck and ignoring her repeated requests to get the truck serviced.  *Id.* at 293.  Lewis also testified that Montez "confronted [her] every day," and that she eventually complained about his behavior but no action was taken.  *Id.* at 278, 187.

Viewing the evidence in the light most favorable to Lewis, as the Court is required to do on summary judgment, the Court concludes that Lewis has raised a triable issue of fact on her hostile work environment claim.  *See Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027 (9th Cir. 2005).  FedEx argues that Lewis has only identified a few, isolated comments of a sexual nature; however, Lewis testified that Jordan make sexual comments on a frequent, sometimes daily basis.  Under the totality of the circumstances, this testimony, combined with Lewis' other evidence, is sufficient to withstand summary judgment.  The Court further holds that Lewis' claims are not time-barred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Accordingly, the Court DENIES defendant's motion for summary judgment on the hostile work environment claim.

1    ///

2        **F.    Retaliation**

3        Lewis alleges that FedEx retaliated against her by terminating her employment on February 23,

4    2004, a little over a month after she filed the instant lawsuit.  FedEx moves for summary judgment on

5    the retaliation claim, contending that Lewis cannot show a "causal link" between the filing of her

6    lawsuit and her termination because she has not submitted evidence that the person who fired her was

7    aware of the lawsuit.  FedEx also argues that even if Lewis can establish a "causal link," she has not

8    submitted evidence to show that FedEx's legitimate, non-discriminatory reason for the termination is

9    a pretext for retaliation.

10        The Court concludes that Lewis has raised a triable issue of fact regarding whether her

11    termination was retaliatory.  Lewis testified that she went out on medical leave in order to have surgery

12    due to carpal tunnel syndrome.  Lewis testified that after she had her surgery, she sought to return to a

13    desk position that she had held immediately prior to going out on leave.  Lewis Depo. at 239-40.  Lewis

14    testified that this desk position was open.  *Id.*  Lewis also testified that she was aware of Caucasian and

15    male employees who were out on leave for longer than 90 days and who were not terminated, but

16    instead were given jobs that they did not formally need to apply for, with or without medical restrictions.

17

18        FedEx's motion contends that Lewis was terminated because she did not apply for any positions

19    with her lifting restrictions while out on leave.  However, for purposes of summary judgment, the Court

20    must accept Lewis' testimony as true.  Accordingly, the Court DENIES defendant's motion for

21    summary judgment on Lewis' retaliation claim.

22

23        **G.    Disparate Impact**

24        Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  The Court

25    notes that although the complaint alleges disparate impact claims with respect to promotion,

26    compensation and discipline, these claims have never been litigated in any meaningful way.  Instead,

27    the focus of this litigation has been plaintiffs' claims for disparate treatment.

28        Lewis' opposition largely consists of conclusory allegations and is devoid of any discussion of

United States District Court

For the Northern District of California

9

the specific facts of this case.  The only "evidence" Lewis relies on is three paragraphs contained in the statistical report prepared by Dr. Richard Drogin in connection with the plaintiffs' motion for class certification in *Satchell*.   The Court concludes that Lewis' citation of Dr. Drogin's report is inappropriate because plaintiffs have not properly designated Dr. Drogin as an expert in this case. Moreover, the Court notes that the three paragraphs Lewis cites relate to discipline, and apparently thus Lewis has not even attempted to introduce any evidence in support of her disparate impact claims concerning compensation and promotion.

Lewis also contends that the Court should deny summary judgment on her disparate impact claims in light of the Court's certification of the *Satchell* case.  However, as stated *supra*, the Court's conclusion that Lewis has failed to submit any evidence or advance any argument whatsoever in support of her disparate impact claims concerning promotion and compensation, and that she has failed to submit any admissible evidence in support of her disparate impact claim concerning discipline, has no effect whatsoever on the class claims in *Satchell*.  In light of Lewis' complete failure of proof, the Court GRANTS summary judgment to FedEx on this claim.  (Docket # 213)

## II.        Summary Judgment as to Bertha Duenas

Plaintiff Bertha Duenas is a Hispanic woman.  Duenas began working for FedEx at the Oakland facility on or about July 17, 1997 as permanent part-time handler.  Duenas was promoted to part-time input auditor on September 18, 1997.  Duenas was next promoted to full-time input auditor, and then to a team leader position in the control room for the Recon team.[4]

After the Recon team was eliminated, Duenas transferred to the position of team leader for Slide 4.  In April 2001, while working in this position, Duenas injured her back.  On May 23, 2002, Duenas received a functional capacity test/evaluation that determined that she could not lift over 50 pounds. Duenas' doctor also informed her that she could not lift over 50 pounds.  In June 2002, a manager informed Duenas that she could not longer perform the duties of a team leader, who must be able to lift 70 pounds.

_____

[4]  Recon was a system that FedEx used to reconcile all the freight.

United States District Court

For the Northern District of California

1    Duenas was given 90 days to find an alternate position within FedEx that would comply with

2    her work restrictions.  During this 90 day period, FedEx posted a full-time hub control ramp agent

3    position, for which Duenas applied.  FedEx then informed Duenas that the full-time position should

4    have been posted as a part-time position because management had not approved a full-time position.

5    Duenas did not obtain a job within this 90 day period, and FedEx terminated her employment on

6    September 9, 2002.

7    After her termination, Duenas filed internal GFTP/EEO complaints over her termination.  In

8    September 2002, several weeks after her termination, Duenas was offered, and she accepted, a part-time

9    hub control ramp agent position.  She began working in this position on September 27, 2002, and she

10   is still employed in this position.

11   Duenas filed two complaints with the DFEH on October 15, 2002.  The complaints alleged that

12   FedEx and Senior Manager Paul Ferrey discriminated against Duenas by firing her, demoting her,

13   harassing her, denying her employment, and denying accommodations, on the basis of sex, race/color,

14   national origin/ethnicity, and physical disability.  McCoy Decl. Ex. Q.  Duenas filed a charge with the

15   EEOC on February 18, 2003 alleging race-based discrimination and retaliation.  *Id.* at Ex. R.

16

17   **A.**    **Hostile Work Environment**

18   Duenas alleges she was subject to a racially hostile work environment.  Duenas' declaration

19   states, "[w]hile working at FedEx, starting in the year 1998 until [the] present, my managers have been

20   present at pre-work meetings and have listen[ed] to communications over the radio when my co-workers

21   and managers have mimicked my Hispanic accent.  The mimicking of my Hispanic accent occurs on

22   a daily basis when I am at work and has been that way since 1998. . . . Again, my managers were present

23   and did nothing about this disparate treatment of me."  Duenas Decl. ¶ 3; *see also* Duenas Depo. at 268-

24   74.  Duenas contends that given the longevity and frequency of this harassment, she has raised a triable

25   issue of fact on her hostile work environment claim.

26   FedEx argues that Duenas' hostile work environment claim fails because she never heard anyone

27   use a racially offensive term, she received excellent performance evaluations and thus any harassment

28   did not interfere with her work, and the alleged conduct is neither severe nor threatening.  FedEx also

United States District Court

For the Northern District of California

1   argues that summary judgment is appropriate because Duenas never reported the harassment to anyone.

2       The Court concludes that Duenas has raised a triable issue of fact on her hostile work

3   environment claim.  Duenas has submitted evidence that her co-workers and managers have ridiculed

4   and mimicked her accent since 1998 on a daily basis.  Such conduct is objectively and subjectively

5   offensive, and frequent enough to raise a triable issue of fact as to the existence of a hostile work

6   environment.  *See EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 847 (9th Cir. 2005) ("The rule is

7   that the required showing of severity or seriousness of the harassing conduct varies inversely with the

8   pervasiveness or frequency of the conduct.") (internal citations omitted); *see also Manatt v. Bank of*

9   *America*, 339 F.3d 792, 799 (9th Cir. 2003) (noting that if single instance of ridicule for mispronouncing

10  word and single racially offensive gesture had occurred repeatedly, plaintiff may have had actionable

11  hostile work environment claim).

12      The Court also holds that the fact Duenas did not complain about the ridicule does require

13  granting summary judgment in FedEx's favor.  An employer is vicariously liable for a hostile work

14  environment created by supervisors, and is also liable for harassment by co-workers if management

15  level employees knew or should have known about the harassment.  *See McGinest v. GTE Serv. Corp.*,

16  360 F.3d 1103, 1119-20 (9th Cir. 2004).  Here, Duenas alleges that managers participated in the ridicule,

17  and that managers were present when co-workers mimicked her.  *See* Duenas Decl. ¶ 3.  FedEx can raise

18  the affirmative defense that it exercised reasonable care to prevent and promptly correct any harassment,

19  and that the employee unreasonably failed to take advantage of corrective or preventive measures.  *See*

20  *McGinest*, 260 F.3d at 1119-20.  However, the fact that Duenas did not complain of harassment of which

21  managers allegedly knew and participated in, does not shield FedEx from liability.  Accordingly, the

22  Court DENIES defendant's motion for summary judgment on Duenas' hostile work environment claim.

23

24      **B.     Disability Discrimination/Reasonable Accommodation/Disability Harassment**

25      In her opposition, Duenas asserts that she has claims for disability-based discrimination and

26  harassment, as well as failure to provide reasonable accommodations under FEHA.  Duenas contends

27  that paragraphs 130-136 of her complaint allege these claims, and further that because she alleged

28  disability-based discrimination in her administrative complaints with the DFEH, FedEx was put on

notice of these claims.     FedEx contends that because Duenas did not allege any disability discrimination claims in the complaint, these claims are not a part of this lawsuit.

The Court concludes that  Duenas  did not allege any disability claims under FEHA in this lawsuit. Paragraphs 130 through 136 of the complaint contain allegations regarding Duenas' back injury and her requests for accommodations, but these allegations are framed as part of Duenas' race discrimination claims.  For example, paragraph 133 provides:

> Defendant discriminated against plaintiff by failing to assist her in securing a suitable position.  Plaintiff was required to locate and apply for an accommodation on her own. *By contrast, defendant has routinely assisted non-minority employees* who have suffered permanent and temporary disabilities to find suitable accommodation.  Defendant further discriminated against plaintiff by strictly enforcing the 90-day period for plaintiff to secure an alternate position.  *Defendant has not enforced the 90-day period with respect to non-minority employees*, allowing them additional time or placing no time restrictions at all to secure accommodation.

FAC ¶ 133 (emphasis added).  Similarly, paragraph 134 alleges that "defendant harassed plaintiff by requiring plaintiff to perform all her Lead Auditor responsibilities, including those from which she had been restricted . . . . *By contrast, defendant places non-minority employees with medical restrictions on disability leave or otherwise accommodate[s] their injuries . . . .*" FAC ¶ 134 (emphasis added).  These paragraphs and the others cited by Duenas do not allege disability-based discrimination claims under FEHA, but instead allege that Duenas was discriminated against on the basis of her race because FedEx allegedly treated non-minority employees with disabilities differently.[5]

The Court will not permit Duenas to assert disability-based discrimination claims for the first time in her opposition to defendant's motion for summary judgment, after the close of discovery.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) (holding plaintiffs could not raise disparate impact theory not pled in complaint for first time at summary judgment after close of discovery). The Court also rejects plaintiff's arguments that FedEx was on notice of these claims due to the administrative complaints, and that FedEx will not be prejudiced by allowing these claims to proceed.  To the contrary, the Court finds that if Duenas were allowed to assert these disability claims

---

[5]  In addition, the allegations contained under the FEHA cause of action do not mention any disability-based claims.  *See* FAC ¶¶ 306-19 (alleging racially hostile work environment, intentional discrimination on the basis of race and/or national origin, retaliation, wrongful termination with respect to certain plaintiffs, and sex/gender discrimination with respect to certain plaintiffs).

for the first time at this late stage in the litigation, discovery would necessarily need to be reopened so that FedEx could conduct discovery and motion practice on, *inter alia*, (1) whether Duenas' back injury limits a major life activity under FEHA; (2) the circumstances surrounding Duenas' requests for a "reasonable accommodation;" (3) whether the accommodations that Duenas sought were reasonable; and (4) whether Duenas was harassed on account of her disability. This is not reasonable at this stage of the litigation. For all of these reasons, the Court hereby concludes that Duenas has not alleged any disability-based discrimination claims in the Complaint, and that these claims are not a part of this case.

### C.    Retaliation

Duenas has submitted declaration testimony that after she injured her back and went on disability leave, she complained to her Senior Manager Paul Ferrey that she felt she was being treated differently because she was a Hispanic woman. *See* Duenas Decl. ¶ 1. After this conversation, a full-time hub control position was posted that fit within Duenas' physical limitations; however, Duenas alleges, once she applied for the job, it was eliminated and replaced with a part-time position. Duenas alleges that FedEx's elimination of the full-time posting was retaliatory, and that FedEx's reason for eliminating this job – that it was mistakenly posted as full-time – is pretextual. Duenas also alleges that her termination was retaliatory.

FedEx argues that Duenas has failed to establish a *prima facie* case of retaliation because (1) her conversation with Ferrey is not a "protected activity"; (2) the posting change of a full-time position to a part-time position is not an adverse employment action with respect to Duenas; and (3) there is no causal connection between her conversation with Ferrey and the job posting change. On the third element, FedEx argues that Duenas has not submitted any evidence showing Ferrey was responsible for the job posting change or that the full-time job posting was not actually in error as FedEx stated.

The Court concludes that Duenas has failed to establish a *prima facie* case of retaliation. The Court holds that the change of the job posting from a full-time position to a part-time position is not an "adverse employment action" with respect to Duenas. Duenas has not submitted any evidence to show that the job posting change was in any way related to her as opposed to the correction of a mistake. *Cf. Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (holding absent evidence of disparate

14

treatment or that plaintiff singled out in some way, fact that city took maximum allowable time in processing workers compensation claim and required plaintiff to attend company sexual harassment training not adverse employment actions).  The job posting change would have affected everyone interested in applying for that position in the same way.

Even if the job posting change is considered an adverse employment action, Duenas has not submitted any evidence of a causal connection between her conversation with Ferrey and the reposting of the job.  Instead, Duenas asserts, without any citation to evidence, that Ferrey and Dave Pigors made the decision to change the posting from full-time to part-time in order to prevent Duenas from obtaining the full-time job.  In fact, FedEx has submitted deposition testimony from Ferrey in which he states that Tanda Brown posted the job, that the posting of the job as a full-time position was in error, and that he neither posted the job nor was involved removing the posting.  *See* Ferrey Depo. 254-73.

Duenas has not submitted any evidence that Ferrey or Pigors was involved with the job posting change.  It is not evidence to simply assert that FedEx's explanation is "dubious," or that "[g]iven common sense and the kind of sexism" that allegedly permeated FedEx, "it is more probable that the position was removed in response to plaintiff's application than it is likely that there was a 'mistake.'"  Opposition at 12.  As FedEx notes, no one was hired in response to the full-time posting, and indeed Duenas was later hired for the part-time posting.

Accordingly, the Court GRANTS summary judgment on this claim.


**D.      Termination**

Duenas alleges that FedEx discriminated against her on the basis of her sex by terminating her employment in September 2002.  Duenas alleges that FedEx has made exceptions for male employees by extending the 90 day period to find a job within their job restrictions, but that FedEx refused to give Duenas such an extension.  For support, she cites her own deposition testimony and Janice Lewis' deposition testimony regarding other employees who were allegedly given extensions of time to find a position.  FedEx argues that these other individuals are not similarly situated to Duenas because they did not have lifting restrictions.  However, Janice Lewis testified that at least one of these individuals, Mike Kelly, had a "restriction" and that he was accommodated by being assigned light duty, and that

1   FedEx gave him an extension of the 90 day period.  This evidence is sufficient to raise a triable issue

2   of fact as to whether Duenas' termination was discriminatory.  *See McDonnell Douglas v. Green*, 411

3   U.S. 792, 802 (1973).  Accordingly, the Court DENIES FedEx's motion for summary judgment on this

4   claim.

5

6          **E.     Promotion**

7          Duenas' promotion claims are somewhat unclear because although her statement of facts

8   describes several positions for which she applied, Duenas does not address any specific promotions in

9   the argument section of her brief.  In her statement of facts, Duenas states she applied for the following

10  positions: (1) a team lead auditor position in 1997; (2) a hub control room agent position in 1997-1998;

11  (3) a team lead position in 1998; and (4) a ramp agent position between 2000 and 2002.[6]  FedEx moves

12  for summary judgment on the ground that some of Duenas' promotion claims are time-barred, and for

13  the other positions, FedEx contends Duenas has not established a *prima facie* case.

14         The Court concludes FedEx is entitled to summary judgment on Duenas' promotion claims.

15  Duenas does not address the statute of limitations issue, nor does she provide any argument or citations

16  to evidence with regard to how she has met her burden to defeat summary judgment on any particular

17  promotion.  Instead, as with her discipline and compensation claims, Duenas simply generally asserts

18  that summary judgment is inappropriate given the Court's certification of the *Satchell* case.  For all of

19  the reasons discussed *supra*, Duenas' contention is without merit.  It is not the role of the Court to

20  advance arguments on behalf of plaintiff, or to comb through the voluminous record searching for

21  evidence in support of these claims.  *See Carmen*, 237 F.3d at 1031; *Keenan*, 91 F.3d at 1278.  Duenas

22  has utterly failed to meet her burden to advance any argument or identify any evidence showing that

23  there is a triable issue of fact on her promotion claims, and accordingly the Court GRANTS summary

24

25

26  _____

27         [6] In addition to these positions, FedEx states that Duenas sought a team leader position in Slide 4, and a part-time hub control agent position in September 2002.  Duenas does not address either of these positions anywhere in her brief, and accordingly the Court concludes that Duenas has abandoned

28  any claim regarding these positions.

United States District Court

For the Northern District of California

1   judgment on these claims.[7]

3   **F.      Compensation**

4   Duenas does not define her compensation claims, nor does she advance any specific arguments

5   or cite any evidence in support of her compensation claims.[8]   Instead, as with her promotion and

6   discipline claims, Duenas simply asserts that the Court should deny summary judgment because of the

7   *Satchell* class action.   Because Duenas has completely failed to define her compensation claims and

8   submit any evidence in support of those claims, the Court hereby GRANTS defendant's motion for

9   summary judgment.

11  **G.      Discipline**

12  According to FedEx, Duenas has received one online compliment/counseling ("OLCC") during

13  her employment.   Duenas testified during her deposition that she does not believe that sex or race played

[7]   Moreover, most, if not all, of Duenas' claims are time-barred.   The FEHA liability period began October 15, 2001, and thus any promotion sought before that date is time-barred.   The Title VII liability period began April 2002, and thus any promotion sought before that date is time-barred. Finally, the earliest possible § 1981 liability period began December 12, 1998, and thus plaintiffs' claims concerning the team lead position and the ramp control positions are time-barred. Plaintiffs filed the original complaint in state court on December 12, 2002, alleging claims under state law.   After defendant removed the complaint to this Court, and after plaintiffs severed their claims from the *Satchell* case, they filed an amended complaint in January 2004 alleging a claim under 42 U.S.C. § 1981.   The Court concludes that plaintiffs' claims under Section 1981 relate back to the date the original complaint was filed because the claims asserted "arose out of the conduct, transaction, or occurrence set forth" in the original state complaint.   Fed. R. Civ. Proc. 15(c)(2); *see also Martell v. Trilogy, Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989).   Defendant's reliance on *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975), to argue that the amended complaint should not relate back is unavailing because *Johnson* simply held that the statute of limitations for a Section 1981 claim is not tolled while a plaintiff is exhausting administrative remedies prior to filing suit.   *Id.* at 461-66.
The Court directed the parties to brief whether the November 2003 stipulation in *Satchell*, which allowed, *inter alia*, the plaintiffs in *Alvarado* and *White* to sever their cases and file amended complaints, had any effect on the Section 1981 liability period in *Alvarado* and *White*.   The Court concludes that the stipulation has no bearing on the Section 1981 liability period in these cases, and rejects plaintiffs' arguments to the contrary.

[8]   FedEx states that Duenas' compensation claim is based on her allegation that between 1998 and 2001, managers allegedly altered her time cards and shorted her for hours that she worked.   Duenas admitted in her deposition that she has received her pay for these shorted hours, and that this happened to everyone at the hub.   *See* Duenas Depo. at 172-76.   If these allegations form the basis of Duenas' compensation claim, they fail on the merits because Duenas has not submitted any evidence to suggest that she was discriminated against on the basis of race or sex.

17

1  any role in the OLCC.  *See* Duenas Depo. at 190.  FedEx moves for summary judgment on the ground

2  that Duenas has admitted she has no evidence of discriminatory treatment with respect to discipline.

3  In response, Duenas does not address this or any other instance of discipline.  Instead, Duenas simply

4  asserts, without any specific argument or citations to evidence, that the Court should deny summary

5  judgment because Duenas is a class member in the *Satchell* case.

6       The Court concludes that FedEx is entitled to summary judgment on Duenas' disparate treatment

7  discipline claim.  Duenas has failed to raise a triable issue of fact regarding the single disciplinary action

8  that FedEx has identified, and indeed Duenas has completely failed to address any specific instance of

9  discipline anywhere in her opposition brief.  As discussed *supra*, the fact that the Court has certified the

10  *Satchell* case does not prevent an entry of summary judgment on Duenas' individual claims because a

11  finding that Duenas has not met her burden on summary judgment has no effect whatsoever on the class

12  claims.  The Court hereby GRANTS defendant's motion for summary judgment.

13

14       **H.**    **Training**

15       Although FedEx moved for summary judgment on Duenas' claim that FedEx discriminated

16  against her with regard to training, Duenas does not address this issue anywhere in her brief.

17  Accordingly, the Court concludes that Duenas has abandoned these claims and GRANTS summary

18  judgment.

19

20       **I.**    **Disparate Impact**

21       Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  For all of

22  the same reasons as stated *supra*, and in light of Duenas' complete failure of proof, the Court GRANTS

23  summary judgment to FedEx on these claims.  (Docket # 220)

24

25  **III.**    **Summary Judgment as to Dyronn Theodore**

26       Plaintiff Dyronn Theodore is an African-American man.  Theodore began working for FedEx

27  on November 19, 1999 as a temporary part-time handler.  This assignment ended on December 22,

28  1999, and at that time Theodore was placed in casual status for consideration on the PM shift, which

meant that he would be recalled to work if FedEx had increased shipping volumes and needed additional staffing at the facility.

After Theodore's casual status ended, he continued to call FedEx to see if a permanent position was available. On March 17, 2000, Theodore was offered and accepted the position of permanent part-time handler. Theodore's employment was reinstated effective March 20, 2000. FedEx terminated Theodore's employment on May 23, 2002, for violating FedEx's Acceptable Conduct Policy.

Theodore filed five DFEH complaints on August 28, 2002.

### A. Promotion

Theodore's promotion claim concerns his attempts to obtain a material handler position for the PM shift. Theodore contends that he applied for two material handler positions for the PM shift, and that non-African-American co-workers named Julio and Melissa received those positions. Theodore testified he does not remember when he applied for those positions[9] or who the hiring managers were, and he does not know how he compared with the successful candidates. Theodore Depo. at 99-104. Theodore also states that he repeatedly asked his manager, Paul Ferrey, about promotional opportunities to the PM shift, but that he was never promoted to that shift.

In order to establish a *prima facie* case on his promotion claim, Theodore must show that (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was denied the promotion; and (4) individuals outside of the protected class were promoted. *See Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 671 (9th Cir. 1988). FedEx argues that it is entitled to summary judgment because Theodore has not identified the race of Julio and Melissa. However, Theodore testified in his deposition that Julio and Melissa are Hispanic. Theodore Depo. at 39. Although Theodore's evidence is not very specific, the Court concludes he has established a *prima facie* case because he is African-American, he testified that he applied on the computer for two material handler positions that non-African-Americans received, and he has submitted deposition and declaration

---

[9] Although Theodore's promotion claims may be untimely under FEHA, they are timely under § 1981 since he applied for material handler positions while working as a handler between 2000 and 2002, and the liability period for these (incremental) promotion claims began December 1998.

United States District Court

For the Northern District of California

testimony that he was qualified for the job sought.  (Indeed, the fact that FedEx offered him a material handler position on the AM shift is evidence that he was qualified.)

FedEx also argues that Theodore has not presented specific evidence of pretext with respect to the promotions decisions.  FedEx suggests, without evidentiary support,[10] that the individuals who were hired had higher CEV scores than Theodore.  However, because FedEx has not submitted any evidence that the successful applicants were more qualified than Theodore, the burden does not shift to Theodore to show pretext. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441-42 (9th Cir. 1995).  Accordingly, the Court DENIES summary judgment on Theodore's promotion claims.

## B.    Compensation

The precise nature of Theodore's compensation claim is unclear because Theodore does not address this claim in his opposition.  FedEx states that Theodore alleges that he did not receive a paycheck in March 2000 after being reinstated as a permanent part-time handler.  FedEx moves for summary judgment on this claim on the grounds that it is time-barred, and because Theodore admitted in his deposition that once the problem was corrected, he received his pay for this time. *See* Theodore Depo. at 33.[11]

Theodore does not address this issue in his opposition, and accordingly the Court concludes that he has abandoned any claim concerning the delayed paycheck after he was reinstated in March 2000.  Even if Theodore was pursuing this claim, the Court concludes that he has failed to submit any evidence to suggest that the computer mistake was racially motivated, and because Theodore admitted in his

---

[10]  FedEx cites the Declaration of Amanda Adams in support of its assertion that Theodore's CEV scores were lower than the scores of the successful applicants.  However, FedEx did not submit the Adams declaration or any evidence regarding Theodore's CEV scores.  In response to an inquiry from the Court regarding the Adams declaration, FedEx's counsel stated that the reference to the Adams declaration was a typographical error.

Moreover, even if there was evidence that Theodore's CEV scores were lower than those of the successful applicants, another plaintiff (Janice Lewis) has shown that CEV scores are not determinative and that FedEx has hired applicants who do not have the highest CEV score of all the applicants.

[11]  Theodore testified in his deposition that after he was reinstated, his name was "kicked out" of the computer, and that as a result he did not receive a paycheck for several weeks to a month and a half.  Theodore testified he did not know why his name was "kicked out," and that once the problem was corrected he received a paycheck. *See* Theodore Depo. 30-33.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   deposition that he eventually received the compensation to which he was entitled.

2      FedEx also moves for summary judgment on Theodore's compensation claim to the extent

3   Theodore alleges that on several occasions his time cards reflected fewer hours than he had actually

4   worked. FedEx contends that summary judgment is appropriate on this claim because Theodore has not

5   alleged that he was never paid for these allegedly shorted hours. Although Theodore mentions the

6   alleged problems with his paycheck in the Statement of Facts, he does not address this issue in the

7   argument section of his brief. Accordingly, the Court concludes that Theodore has abandoned any claim

8   that the problems with his paychecks were due to race discrimination.

9      The only compensation claim Theodore addresses in his opposition brief is the following:

10  Theodore contends that FedEx reserves the more desirable and higher paying positions for non-African-

11  Americans. Citing his deposition testimony as evidence, Theodore asserts that only 2 out of 12 or 13

12  dangerous material handlers on the PM shift were African-Americans, and that handlers (like himself)

13  made approximately $10.50 an hour while dangerous material handlers made "at least" $15.00 an hour.

14  *See* Theodore Depo. at 99-102.

15     To establish a claim for discrimination in compensation, a plaintiff must show that the employer

16  paid members of a protected group less than non-minorities for performing substantially equal work

17  measured in time, effort and responsibility. *See Chapman. v. Pacific Tel. & Tel. Co.*, 456 F. Supp. 65,

18  68-69 (N.D. Cal. 1978). Here, Theodore has not offered any evidence that he or other African-American

19  employees (material handlers or handlers) were paid less than their white counterparts for doing the

20  same work. The case relied on by Theodore does not provide otherwise. *See Stephens v. Montgomery

21  Ward*, 193 Cal. App. 3d 411, 416 (1987) (noting, in context of review of denial of class certification,

22  that EEOC found that because women managers were not recruited for "big ticket" departments, they

23  received less compensation "*for work equal or comparable* to that performed by male department

24  managers") (emphasis added). Accordingly, the Court concludes that Theodore has failed to raise a

25  triable issue of fact on his disparate treatment compensation claim, and hereby GRANTS summary

26  judgment on this claim.

27

28

**United States District Court**
For the Northern District of California

### C.    Discipline

According to FedEx, Theodore received five negative online counselings during his employment.  FedEx contends that summary judgment is appropriate because Theodore has not submitted any evidence suggesting that any instance of discipline was issued on account of his race, or that FedEx's legitimate, non-discriminatory reasons for his discipline were a pretext for discrimination. FedEx's motion addresses each of the five counselings in detail.

Theodore only addresses one of these online counselings in his brief.  Without any citation to evidence, Theodore asserts that "plaintiff was disciplined for petty, trivial matters, like working too many days in one week.  It flies in the face of sound logic, however, to argue that an employee should refuse to work days that he is assigned to work by his employer."  Opposition at 13.  It appears that Theodore is referring to an online counseling issued on November 20, 2000.  That counseling states, "You were notified in the past that you were not allowed to work 7 days a week.  You blatantly failed to follow a directive, and work[ed] 7 days without authorization."  Douglas Decl. Ex.4 to Theodore Depo.  Thus, the language of the counseling contradicts Theodore's unsupported assertion that he was assigned to work the days for which he was disciplined.  Theodore has failed to raise any triable issue of fact with respect to the November 20, 2000 counseling, or any other counseling that he received.

Theodore was also suspended and ultimately terminated for a violation of FedEx's Acceptable Conduct Policy regarding a May 9, 2002, incident with two of his managers, Ortiz and Ferrey.  FedEx and Theodore provide differing accounts of this incident, and Theodore himself has provided slightly differing, though not necessarily inconsistent, accounts of the incident in a May 13, 2002 written statement and in his deposition.  However, for purposes of summary judgment, the Court is required to take Theodore's version of events as true.

Briefly, Theodore states that he was in a meeting with a manager, Leslie Ortiz, regarding his time card and/or paycheck, and that he requested to speak with Ferrey.  Ortiz told Theodore that he could not speak to Ferrey, at which point Theodore tried to leave the room and Ortiz blocked his exit. Theodore managed to leave the room and locate Ferrey.  Theodore states that he complained to Ferrey that Ortiz was harassing him, and he requested an EEO complaint form. Ferrey refused to help him, and so he requested the phone number of Ferrey's manager, Bob Willis.  When Ferrey refused to give

Theodore Willis' number, Theodore announced he was going to Willis' office to speak to him directly. At that point, Theodore claims Ferrey grabbed his arm and said, "Nigger, get your ass in my office." Theodore states several witnesses heard Ferrey make the racial slur.  Upset by Ferrey's behavior and language, Theodore states he left the office and hit and/or kicked a trash can.  *See* Theodore Decl. ¶¶ 3, 5; Douglas Decl. Ex. 7 to Theodore Depo.; Theodore Depo. at 41-45.  Theodore was suspended and ultimately terminated based on this incident.  The termination letter states that Theodore was "very aggressive" and that he verbally threatened a manager, and that his behavior violated FedEx's Acceptable Conduct Policy.  Douglas Decl. Ex. 6 to Theodore Depo.

FedEx contends that because Theodore has admitted that he engaged in most of the conduct for which he was suspended and terminated, the evidence establishes that FedEx was not discriminating against Theodore.  However, the Court concludes that, viewing Theodore's evidence in the light most favorable to him, that Theodore has raised a triable issue of fact regarding whether the suspension and termination were discriminatory.  Under Theodore's version of events, which the Court is required to accept as true for purposes of summary judgment, a reasonable jury could conclude that discipline he received was unwarranted.  *See  Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 848-49 (9th Cir. 2004).

Accordingly, the Court GRANTS defendant's motion for summary judgment to the extent Theodore challenges any online counseling as discriminatory, and DENIES defendant's motion to the extent Theodore challenges his suspension and termination as discriminatory.

### D.   Hostile Work Environment

Theodore claims he was subject to a racially hostile work environment because (1) Ortiz allegedly harassed him by telling him he was too slow and fat to work for FedEx, assigning him demeaning work, and criticizing him "for every little thing," and (2) Ferrey called him a "nigger" on one occasion.  Theodore asserts, without a citation to evidence, that Ortiz did not make similarly humiliating comments to Caucasian employees.  FedEx contends that Theodore's evidence is insufficient to raise a triable issue of fact regarding the existence of a hostile work environment.

In the Ninth Circuit, courts employ a totality of the circumstances test in determining whether

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

a plaintiff has established a hostile work environment, considering factors such as: "[the] frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters. Corp.*, 256 F.3d 864, 872 (9th Cir. 2001). To constitute harassment, the workplace must be both subjectively and objectively abusive. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

The Court concludes that Theodore's evidence falls short of raising a triable issue of fact regarding whether he was subjected to a racially hostile work environment. The Court finds *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003), instructive. In *Vasquez*, the plaintiff claimed that a supervisor harassed him on account of his race. The Ninth Circuit stated,

> Vasquez claimed that Berglund continually harassed him, but provides specific factual allegations regarding only a few incidents. The primary basis of Vasquez's claim arises from statements by Berglund that Vasquez had 'a typical Hispanic macho attitude' and that he should consider transferring to the field because 'Hispanics do good in the field.' These statements were made more than six months apart. Concerning Vasquez's allegation that Berglund yelled at him in front of the youth, Vasquez provides evidence of only two instances when this occurred. . . . Finally, regarding the allegation that Berglund made continual, false complaints about Vasquez to Leeds, Vasquez offers two memos . . . . All of these incidents occurred over the course of more than one year.

*Id.* at 642-43. The Ninth Circuit concluded that the events Vasquez complained of were not severe or pervasive enough to violate Title VII because the events occurred over the course of one year, and only two incidents involved racially-related epithets. *Id.* at 644.

The same is true here. Theodore asserts that Ortiz repeatedly harassed him, but like the plaintiff in *Vasquez*, provides very little detail regarding specific incidents. None of the incidents involving Ortiz were racially-related, and Theodore has not submitted any evidence suggesting that Ortiz singled him out on account of his race. Instead, Theodore testified in his deposition that "I didn't see her messing with or bothering or picking at *anyone* else, telling them to speed it up." Theodore Depo. at 49:4-6 (emphasis added). Theodore has submitted evidence of a single racial slur used against him; although clearly offensive, the use of a single racial slur does not create a hostile work environment. *See id.*; *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990).

Accordingly, the Court GRANTS summary judgment on the hostile work environment claim.

United States District Court

For the Northern District of California

**E.    Termination**

Theodore's challenge to his termination rests on the same arguments and evidence as his challenge to the discipline which ultimately led to his termination.  For the reasons set forth in subsection C *supra*, the Court concludes that because it is required to assume the truth of Theodore's evidence at the summary judgment phase, Theodore has submitted evidence sufficient to defeat summary judgment.  Accordingly, the Court DENIES defendant's motion for summary judgment on this claim.

**F.    Retaliation**

Theodore claims that FedEx, through managers Ortiz and Ferrey, retaliated against him by suspending and terminating him after he complained to Ferrey that Ortiz was harassing him.  FedEx contends that Theodore has failed to establish a *prima facie* case of retaliation because making an informal complaint about generalized harassment is not protected activity, and because Theodore cannot show a causal connection between his complaints and his suspension and termination.  Finally, FedEx argues that even if Theodore has made out a *prima facie* case, he cannot show that FedEx's legitimate, non-discriminatory reason for the suspension and termination is pretext for discrimination.

In order to establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.  *See Ray v. Henderson*, 217 F.3d 1234, 1239 (9th Cir. 2000).  The Court concludes that Theodore has established a *prima facie* case.  Theodore engaged in protected activity because he complained to Ferrey that Ortiz was harassing him, and he requested an EEO complaint form from Ferrey.  *See id.* at 1240.  Although FedEx argues that Theodore did not specifically complain that Ortiz was harassing him on account of his race, the fact that Theodore requested an EEO form suggests that he believed Ortiz was harassing him in violation of company policy and/or the law.

The Court also concludes that Theodore has submitted evidence of a causal link between the protected activity and the suspension and termination.  Theodore was suspended the same day that he made the complaint to Ferrey, and Ferrey and Ortiz were involved in Theodore's suspension, and at least Ortiz was involved in his termination.  Finally, for the reasons set forth *supra* in subsection C, the Court

1  concludes that Theodore has raised a triable issue of fact with regard to whether his suspension and

2  termination was justified.

3          Accordingly, the Court hereby DENIES summary judgment on Theodore's retaliation claim.

4

5      **G.      Disparate Impact**

6          Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  For all of

7  the same reasons as stated *supra*, and in light of Theodore's complete failure of proof, the Court

8  GRANTS summary judgment to FedEx on these claims.  (Docket # 217)

9

10 **IV.    Summary Judgment as to Charlotte Boswell**

11         Plaintiff Charlotte Boswell is an African-American woman.  Boswell began her employment

12 with FedEx on February 2, 1990 as a casual handler.  Boswell was later promoted to part-time courier,

13 full-time courier, and part-time dispatcher.  In January 2000, Boswell became a full-time dispatcher.

14 Most of Boswell's claims concern alleged sexual harassment by one of her managers, Norman Stites.

15 Stites was Boswell's Operations Manager at the District Transportation Center in Oakland from 1998

16 until Boswell resigned her employment on September 18, 2001.

17         Boswell filed a complaint with the DFEH on August 5, 2002, alleging discrimination on the

18 basis of race and sex, as well as retaliation.

19

20     **A.      Hostile Work Environment**

21         Boswell alleges that while he was her manager, Stites repeatedly sexually harassed her and other

22 female employees, and that when she rejected his advances, Stites retaliated against her by assigning

23 her fewer hours, changing her shift, and denying her leave.  Boswell has submitted evidence in the form

24 of her own deposition and declaration testimony, the declaration of a female co-worker who was also

25 allegedly harassed by Stites and who witnessed his harassment of Boswell, and emails and notes

26 authored by Boswell, Stites, and other co-workers.  Boswell testified that Stites repeatedly hugged her

27 and rubbed against her, that he repeatedly tried to kiss her, and that Stites sent her a note that said, "Here

28 is the info you needed.  I look forward to a date with you and enjoying your company."  McCoy Decl.

Ex. E. Boswell testified that she rejected Stites' advances and complained to him and Human Resources about his behavior. Boswell also testified that she refused to make calls for him, perform clerical tasks expected of Stites, and perform other work that was assigned to Stites.

Boswell and another co-worker, Ingrahm, testified that Stites sexually harassed numerous women he managed, and that those who did not object to his harassment were favored in the workplace by being allowed to record unearned hours, working as much overtime as they wanted, being assigned preferential shifts, and having their leave requests honored. In contrast, Boswell testified that after she rebuffed Stites' advances, he denied her request for a day off to attend a funeral and repeatedly allowed other co-workers to yell at her in the workplace without reprimand. Boswell also testified that she began having problems with her paycheck, and that Stites delayed in remedying the problem. Finally, Boswell testified that toward the end of 2001, her shift was unexpectedly changed to include weekends, a shift reserved for more junior employees. Boswell was the only employee whose schedule changed, and Boswell testified that the schedule change imposed a hardship on her because of her child care needs.

The Court concludes that Boswell has submitted sufficient evidence to raise a triable issue of fact regarding the existence of a hostile work environment. Boswell has submitted evidence of repeated incidents of a sexual nature, and a reasonable jury could conclude that Boswell was subjected to a hostile work environment. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108-09 (9th Cir. 1998). The Court rejects FedEx's argument that Boswell's claim is time-barred because Boswell has submitted evidence that the hostile work environment continued into 2001 because, *inter alia*, Stites tried to kiss her at a work meeting, allowed her co-workers to treat her abusively, and may have been involved in her shift change.[12] *See id.* The fact that FedEx disputes that these events actually occurred

---

[12] FedEx argues that Stites was not involved in the decision to change Boswell's shift, and cites Boswell's deposition testimony in which she states that Stites told her that a Senior Manager made the decision. FedEx also cites Stites' deposition testimony for the proposition that a Senior Manager made the decision to change Boswell's shift. However, in the deposition excerpt provided, Stites does not actually say that he was not involved in the decision to change Boswell's shift, or that this decision was made by another manager. Instead, Stites simply says that when the new Senior Manager took over, a restructuring took place which resulted in new shifts being assigned. *See* Douglas Reply Decl. Ex. B. The Court concludes there is a triable issue of fact as to whether Stites, as Boswell's direct manager, was involved in the decision to change her shift.

United States District Court

For the Northern District of California

only establishes that there is a triable issue of fact sufficient to defeat summary judgment. *See id.*

FedEx also argues that Boswell cannot establish that Stites' alleged conduct unreasonably interfered with her work performance because she received high performance evaluations and was not disciplined. However, courts employ a totality of the circumstances test in analyzing hostile work environment claims, and whether allegedly abusive conduct interferes with a plaintiff's work performance is only one of the factors to be considered. *See Nichols*, 256 F.3d at 872.

Accordingly, the Court DENIES summary judgment on Boswell's hostile work environment claim.

**B.     Quid Pro Quo Sexual Harassment**

Boswell's quid pro quo sexual harassment claim is largely based on the same events described *supra*. In order to establish a *prima facie* case of quid pro quo sexual harassment, a plaintiff must show "that an individual explicitly or implicitly conditioned a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir. 1995) (internal quotations omitted).

The Court concludes that Boswell has established a *prima facie* case and that FedEx is not entitled to summary judgment on this claim. FedEx generally argues that Boswell cannot "prove" that the various conditions of her employment were affected or changed by her rejection of Stites' alleged advances. However, it is not Boswell's burden to prove her case at summary judgment, but merely to show that there is the existence of a dispute of material fact regarding her claim, which she has done. Accordingly, the Court DENIES summary judgment on Boswell's claim of quid pro quo sexual harassment.

**C.     Retaliation**

Boswell testified that she both rejected Stites' advances and that she and another co-worker met with Stites and complained about his behavior. Boswell also testified that she complained about Stites to another manager and that no action was taken. Boswell alleges that after she made these various complaints and rejected Stites' advances, she was retaliated against in numerous ways as described

United States District Court

For the Northern District of California

*supra.*

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Manatt*, 339 F.3d at 800. FedEx argues that Boswell cannot show any of the three elements.

The Court disagrees. The Court concludes that Boswell's complaint to Stites and another manager about Stites' behavior constitutes protected activity. *See Ray*, 217 F.3d at 1240 (holding that making informal complaints to a supervisor is protected activity under Title VII). Similarly, the Ninth Circuit broadly defines "adverse employment action" to include "a wide array of disadvantageous changes in the workplace." *Id.* at 1241; *see also Fonseca*, 374 F.3d at 847. Here, Boswell alleges that she was assigned a weekend shift that was normally reserved for junior employees and that imposed a hardship on her because of her child care situation; that she was denied a one day funeral leave; that Stites allowed her co-workers to yell at and belittle her with impunity; that she received little overtime while the employees who did not object to Stites' advances received more overtime hours; and that Stites did not help her address a problem with her paycheck. These allegations, if proven, would be sufficient to demonstrate adverse employment actions. *See Strother v. Southern California Permanente Med. Gp.*, 79 F.3d 859, 869 (9th Cir 1996) (finding adverse employment actions where employee was excluded from meetings, seminars and positions that would have made her eligible for salary increases, was denied secretarial support, given a more burdensome work schedule, and subject to verbal and physical abuse from other employees).

Finally, Boswell has raised a triable issue of fact regarding whether there is a causal link between her protected activity and the adverse actions she experienced, both due to temporal proximity and the fact that many of the adverse actions directly or indirectly involve Stites. Accordingly, the Court DENIES summary judgment on Boswell's retaliation claim.

### D.    Constructive Discharge

Under California law, the test for constructive discharge is whether conditions were so "intolerable or aggravated" that a reasonable employee would have resigned, and whether the employer

29

knew about the conditions and their effect on the employee and could have remedied them but did not. *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1245 (1994). For all of the same reasons set forth above, the Court concludes that Boswell has raised a triable issue of fact regarding whether conditions were so intolerable that a reasonable employee would have resigned. Further, Boswell has testified that management was aware of Stites' behavior and that they failed to take any action.

FedEx's arguments in opposition to Boswell's constructive discharge claim largely rest on FedEx's assertion that Boswell's version of the facts is incorrect. As stated *supra*, however, the Court is required to assume the truth of Boswell's testimony and evidence at the summary judgment phase. Accordingly, the Court DENIES summary judgment on the constructive discharge claim.

### E.    Promotions

FedEx moves for summary judgment on the ground that Boswell cannot point to any position at FedEx for which she applied but did not receive. Boswell does not address any promotion claim in her opposition, and thus it appears that Boswell is not asserting any promotion claim. Accordingly, the Court GRANTS summary judgment in favor of FedEx on this claim.

### F.    Discipline

According to FedEx, Boswell was disciplined once in 1991 when she received a performance reminder. FedEx moves for summary judgment on the ground that any claim regarding this performance reminder is time-barred, and also that the performance reminder did not constitute an adverse employment action. Boswell does not address the 1991 performance reminder in her opposition, and thus it appears that Boswell has either abandoned this claim or was never asserting it in the first place. In any event, the Court agrees that any challenge to the 1991 performance reminder is time-barred.

Accordingly, to the extent that Boswell challenges the 1991 performance reminder as discriminatory, the Court hereby GRANTS summary judgment on this claim.

### G.    Disparate Impact

Although FedEx has moved for summary judgment on Boswell's disparate impact claims,

Boswell's opposition does not address these claims at all.  The Court concludes that Boswell has apparently abandoned these claims.  In light of Boswell's complete failure to advance any argument or submit any evidence in support of these claims, the Court hereby GRANTS summary judgment in favor of FedEx on these claims.  (Docket # 215)

## V.        Summary Judgment as to Charles Gibbs

Plaintiff Charles Gibbs is an African-American man of Jamaican descent.  Gibbs began his employment with FedEx in April 1994 as a cargo handler.  Gibbs was promoted in 1995 to a courier position, and in February 2000, Gibbs was promoted to a Ramp Transport Driver position.  Gibbs left the Bay Metro District in February 2004, and currently works for FedEx in Atlanta, Georgia.

Gibbs filed a charge with the EEOC on April 15, 2003, which was referred to the DFEH on May 13, 2003.

### A.        Promotion

According to Gibbs, he applied for approximately 28 manager positions between 2000 and 2004.[13]  At the time he applied for these positions Gibbs was not working in a management role.  Gibbs Decl. ¶ 3.  FedEx moves for summary judgment on all of Gibbs' promotion claims arguing that (1) many of the claims are untimely, and (2) Gibbs has failed to establish a *prima facie* case of discrimination because he has not submitted specific evidence regarding each of the promotions or shown that individuals outside of the protected class were promoted.

FedEx contends that any promotion decisions before June 2002 are untimely under Title VII, any promotion decisions before May 13, 2002 are untimely under FEHA, and any promotion decisions before January 1, 2002 are untimely under § 1981.  Gibbs argues that all of his promotions claims are

_____

[13]  The evidence submitted shows Gibbs was denied management positions on January 17, 2001; February 16, 2001; February 20, 2001; February 27, 2001; August 6, 2002; November 11, 2003; and November 19, 2003.  Parker Decl. Ex. 2 to Gibbs Depo.  In addition, Gibbs has submitted a list identifying 13 positions he applied for in 2000, 3 additional positions he applied for in 2001, 9 additional positions he applied for in 2002, 1 additional position in 2003, and 1 position in 2004.  Gibbs Decl. at 4-5.  Finally, Gibbs states in that he has "been on four interviews at the following locations: James Hackley - OAKA, Craig Fovel - SJCA, John Six – RVHA and Aaron Holstein – SRUA."  *Id.*

United States District Court

For the Northern District of California

timely under Title VII and FEHA under a continuing violations theory, and that all of his claims are timely under § 1981 because the 4 year "catch all" statute of limitations governs.

The Court concludes that many of Gibbs' promotion claims are untimely. In order to be actionable, a claim under FEHA must be filed with the DFEH within one year of the date on which the allegedly unlawful practice occurred. *See* Cal. Gov't Code § 12760. Similarly, before an employee may sue an employer under Title VII, he must file a charge with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000-5(e)(1). Discrete discriminatory acts such as the failure to promote constitute separate actionable employment practices, and the limitations period on each begins to run when the practice occurs. *See Lyons v. England*, 307 F.3d 1092, 1106 (9th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Gibbs' reliance on a continuing violations theory with regard to his promotions claims lacks merit. Accordingly, the Court concludes that promotions claims arising before June 2002 are untimely under Title VII, and claims arising before May 13, 2002 are untimely under FEHA.

With respect to § 1981, FedEx is correct that because Gibbs was working in a non-management position when he applied for all of the management jobs, the promotion denials would have been actionable prior to the 1991 Civil Rights Act, and thus are subject to the applicable state statute of limitations. *See Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 382 (2004); *Sitgraves v. Allied-Signal, Inc.*, 953 F.2d 570 (9th Cir. 1992). The applicable state statute of limitations was one year for claims arising in 2000 and 2001, and thus any promotion denials during these years are time-barred. *See* Cal. Code Civ. Proc. § 335.1; *Krupnick v. Duke Energy Morro Bay, LLC*, 115 Cal. App. 4th 1026, 1029-30 (2004) (holding new two-year statute of limitations did not revive claims that were time-barred under previous one-year statute).

The Court concludes that all promotions denials occurring prior to December 12, 2002, two years prior to the filing of Gibbs' complaint in state court, are time-barred under § 1981.

In order to establish a *prima facie* case on his promotion claim, Alvarado must show that (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was denied the promotion; and (4) individuals outside of the protected class were promoted. *See Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 671 (9th Cir. 1988).

(1)     **November 11, 2003 Promotion**

Gibbs applied for a Southeast District Operations Manager position.  By letter dated November 11, 2003, Gibbs was informed that his application was being rejected because he "did not include all required information that was listed on the job posting."  Parker Decl. Ex. 2 to Gibbs Depo.  Gibbs does not address this promotion anywhere in his brief, nor has Gibbs submitted any evidence in support of this promotion claim.  The Court concludes that Gibbs has failed to establish a *prima facie* case because he has not shown that he was qualified for the position due to the incomplete application, and because he has not established that a person outside the protected class received the job.

(2)     **November 19, 2003 Promotion**

Gibbs applied for a position as an Operations Manager.  By letter dated November 19, 2003, Gibbs was informed that his application was denied.  *Id.*  Gibbs testified at his deposition that he does not know who else applied for the position, nor did he know the identity of the successful applicant for this position.  Gibbs Depo. at 103-04.  Accordingly, the Court concludes that Gibbs has failed to establish a *prima facie* claim because he has not established that someone outside the protected class received the job.

(3)     **Other Promotions**

In a list attached to his declaration, Gibbs alleges that he applied for 2 other management positions between November 2003 and January 2004.   However, aside from listing these positions in his declaration, and generally asserting in his opposition that he was qualified for all of the positions he applied for, Gibbs provides no detail and no evidence regarding either of these promotions.  As such, the Court concludes that Gibbs has failed to make out a *prima facie* case concerning these promotions.

Accordingly, the Court hereby GRANTS summary judgment on Gibbs' promotions claims.

**B.     Hostile Work Environment**

Gibbs alleges that the Bay Metro District where he worked is "racially hostile toward African

Americans [like himself] who aspire toward management."  Opposition at 13.  Gibbs hostile work environment claim is based on his allegations that he has repeatedly applied for and been denied promotions.  Gibbs has not introduced any direct evidence that any of the promotion denials was on account of his race; instead, as discussed *supra*, Gibbs asserts that his race must have played a part because he was qualified for the jobs in question, and he believes that non-minority employees are promoted faster and more often than minority employees.  Gibbs does not allege that anyone at FedEx verbally or physically harassed him or that he ever heard racial slurs in the workplace.

The Court concludes that Gibbs has failed to submit evidence raising a triable issue of fact regarding the existence of a hostile work environment.  The fact that Gibbs was repeatedly denied promotions, without more, does not constitute abusive conduct.[14]  *See Nichols*, 256 F.3d at 872 (holding courts evaluating hostile work environment claims should look at "[the] frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.").  The Court hereby GRANTS defendant's motion for summary judgment on Gibbs' hostile work environment claim.

### C.      Compensation

Gibbs does not address any compensation claim in his opposition, and accordingly the Court concludes he has abandoned this claim and GRANTS summary judgment.

### D.      Discipline

According to FedEx, Gibbs received several disciplinary letters in 1998, and a reminder letter in 2004.  FedEx argues that any challenge to the 1998 discipline is untimely.  For the reasons discussed in subsection A, *supra*, the Court agrees that this challenge is untimely under Title VII and FEHA.  *See Lyons v. England*, 307 F.3d at 1106.  With respect to § 1981, the 4 year statute of limitations would

---

[14]  The Court does not hold that repeated denials of promotions could never constitute a hostile work environment.  However, a plaintiff must submit some evidence to suggest that the conduct is discriminatory and abusive.  Here, Gibbs has failed to even make out a *prima facie* case with regard to his promotions claims, and for the most part does not address any specific promotions or cite to any evidence in his opposition.  Such general allegations, combined with Gibbs' paucity of evidence, falls far short of establishing a hostile work environment claim sufficient to defeat summary judgment.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    apply to this claim, and thus any discipline issued after December 12, 1998 is actionable.  Because the

2    disciplinary actions were issued in May and July of 1998, these claims are time-barred under § 1981 as

3    well.

4         Gibbs does not address the 2004 discipline anywhere in his brief.  FedEx cites Gibbs' deposition

5    testimony in which he admits that he was disciplined because he scraped the fender of his tractor-trailer,

6    and that he did not challenge this discipline because he was "guilty" of it.  Gibbs Depo. at 140-41.

7    Gibbs' opposition simply asserts that the Court should deny summary judgment on his discipline

8    "claims" because of the *Satchell* class action.  For the reasons set forth *supra*, the *Satchell* class action

9    does not relieve Gibbs of his burden on summary judgment to come forward with evidence to establish

10   a *prima facie* case of discrimination.  Because Gibbs has failed to establish a *prima facie* case, much

11   less rebut FedEx's legitimate, nondiscriminatory reason for issuing the discipline,  the Court hereby

12   GRANTS summary judgment on Gibbs' discipline claims.

13

14        **E.      Retaliation**

15        In order to establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged

16   in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is

17   a causal link between the protected activity and the adverse action.  *See Ray*, 217 F.3d at 1239.

18        Gibbs' retaliation claims are somewhat unclear.  Gibbs' opposition suggests that after he made

19   an informal complaint about being denied a promotion, FedEx retaliated against him by denying him

20   another promotion.  However, Gibbs does not cite any evidence in support of this assertion, nor does

21   he identify who he allegedly complained to or when the complaint was made.  Accordingly, the Court

22   concludes that Gibbs has failed to establish a *prima facie* case of retaliation based on alleged making

23   an informal complaint to a supervisor.  *Id.*

24        Gibbs also states in his opposition that he complained in his DFEH/EEOC charge that managing

25   Director Stephen Seymour and Human Resources personnel "failed to intercede to prevent the

26   discrimination, the harassment and the retaliation," and that a triable issue of fact exists "regarding

27   whether FedEx's managing agents ratified the discriminatory, harassing and/or retaliatory misconduct

28   by failing to intercede."  Opposition at 12.  It is unclear from this statement whether Gibbs believes he

United States District Court

For the Northern District of California

was retaliated against after he filed his DFEH/EEOC charge, and if so, what conduct Gibbs challenges as retaliatory.  Although the filing of an administrative complaint is protected conduct, Gibbs has failed to identify any adverse employment action that he contends he was subjected to as a result of his DFEH/EEOC charge.  Accordingly, the Court concludes Gibbs has failed to establish a *prima facie* case of retaliation based on the filing of his DFEH/EEOC charge.

The Court hereby GRANTS summary judgment on Gibbs' retaliation claim.

///

### F.    Disparate Impact

Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  The Court notes that although the complaint alleges disparate impact claims with respect to promotion, compensation and discipline, these claims have never been litigated in any meaningful way.   Instead, the focus of this litigation has been plaintiffs' claims for disparate treatment.

Gibbs argues that FedEx's motion for summary judgment on the disparate impact claims should be stricken because FedEx improperly incorporated arguments from other motions for summary judgment.  This contention lacks merit, and the Court DENIES Gibbs' request.  Gibbs also advances numerous assertions regarding FedEx's facially neutral policies that allegedly have a disparate impact on minority employees; however, the only evidence Gibbs cites consists of two pages from the deposition of Sharon McNeal in which McNeal testifies that hiring managers have discretion to decide whether to set up an interview panel when they are hiring for a position.  McNeal Depo. at 51-52.  This testimony alone does not meet plaintiffs' burden on summary judgment.  In light of Gibbs' failure of proof, the Court GRANTS summary judgment to FedEx on this claim.  (Docket # 219)

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendant's motion for summary judgment as to Janice Lewis (# 213), Bertha Duenas (#220), Dyronn Theodore (# 217), and Charlotte Boswell (#215), and GRANTS defendant's motion for summary judgment as to Charles Gibbs (# 219).

**IT IS SO ORDERED.**

Dated: March 10, 2006

_____
SUSAN ILLSTON
United States District Judge

United States District Court

For the Northern District of California