1

2

3

4

5                         IN THE UNITED STATES DISTRICT COURT

6                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    EDWARD ALVARADO, et al.,                    No. C 04-00098 SI
                                                 (Related Cases C 03-2659 SI and C 04-0099
9              Plaintiffs,                       SI)
        v.
10                                               **ORDER RE: DEFENDANT'S MOTION**
     FEDEX CORPORATION,                          **FOR SUMMARY JUDGMENT AS TO**
11                                               **LASONIA WALKER, TANDA BROWN,**
               Defendant.                        **PERNELL EVANS AND KEVIN NEELY**
12   _____/

13

14

15          On October 25, 2005, the Court heard oral argument on defendant's motions for summary

16   judgment as to plaintiffs Lasonia Walker, Tanda Brown, Pernell Evans and Kevin Neely.  Having

17   carefully considered the papers submitted and the arguments of counsel, the Court hereby enters the

     following order.
18

19
                                             **BACKGROUND**
20
            On April 8, 2005, defendant FedEx Corporation ("FedEx") filed motions for summary judgment
21
     as to four plaintiffs in the Operations Manager Group: Lasonia Walker, Tanda Brown, Pernell Evans,
22
     and Kevin Neely.  Plaintiffs filed oppositions on April 25, 2005; FedEx filed replies on April 29, 2005;
23
     plaintiffs filed supplemental oppositions on June 13, 2005; FedEx filed supplemental replies on June
24
     16, 2005; and plaintiffs filed amended oppositions on October 6, 2005.  FedEx did not file replies to the
25
     October 6, 2005 oppositions.  Defendants' motions for summary judgment have been twice continued
26
     pursuant to Federal Rule of Civil Procedure 56(f).
27
            On the afternoon of October 20, 2005, five days (and three court days) before the hearing,
28

United States District Court
For the Northern District of California

1    plaintiffs filed a third Rule 56(f) motion as to all pending motions for summary judgment.[1]

2

3                               **LEGAL STANDARD**

4           Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

5    and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

6    material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

7    56(c).

8           In a motion for summary judgment, "[if] the moving party for summary judgment meets its

9    initial burden of identifying for the court those portions of the materials on file that it believes

10   demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so

11   that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts

12   showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors*

13   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  In

14   judging evidence at the summary judgment stage, the Court does not make credibility determinations

15   or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving

16   party.  *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

17   *Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence

18   presented by the parties must be admissible. Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony

19   in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary

20   judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

21

22                                **DISCUSSION**

23          Defendant has filed summary judgment motions against four of the manager plaintiffs in this

24   case: Lasonia Walker, Tanda Brown, Kevin Neely and Pernell Evans.  Each of these plaintiffs asserts

25   claims for disparate impact and disparate treatment under Title VII of the Civil Rights Act of 1964, 42

26   ───────────────────

27          [1]   By letter filed November 7, 2005, the Special Master denied plaintiffs' Rule 56(f) motion,
     concluding that plaintiffs had failed to make the requisite showing that outstanding discovery would
28   defeat summary judgment.  The Special Master also concluded that plaintiffs' motion was untimely.

U.S.C. § 2000e, and the California Fair Housing and Employment Act ("FEHA"), Cal. Gov. Code § 12940, and claims under 42 U.S.C. § 1981.

As a general matter, the Court observes that plaintiffs' opposition briefs contain fairly long statements of facts, and argument sections that are often devoid of specific details and/or citations to evidence. Plaintiffs submitted numerous declarations with voluminous exhibits, yet for the most part the opposition briefs do not contain any citations to these documents. Moreover, on several occasions when plaintiffs actually provide citations to evidence, plaintiffs did not actually submit the evidence cited. However, it is not the Court's task to "scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996), and "it need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could be conveniently found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

All of the plaintiffs contend that summary judgment on any of their claims would be inappropriate in light of the fact that the Court has certified a class action in *Satchell et al. v. FedEx Corp.*, 03-2659 SI ("*Satchell*"). Plaintiffs contend that if the Court grants summary judgment in favor of FedEx on any of plaintiffs' claims, this would result in "inconsistent" judgments. Because FedEx did not file any replies to plaintiffs' October 6, 2005 amended oppositions, FedEx has not addressed this issue.

Plaintiffs Walker, Brown, Evans and Neely were originally part of the *Satchell* case, and after defendants removed *Satchell* to this Court, plaintiffs made the choice to pursue their individual actions outside of the class context. The language plaintiffs refer to regarding "inconsistent judgments" is from Federal Rule of Civil Procedure 23(b)(1)(A), which provides that a class action may be maintained if, *inter alia*, "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . . ." Fed. R. Civ. P. 23(b)(1)(A).

This Rule does not require that defendant's motions for summary judgment be denied, because a finding that any of the plaintiffs has not raised a triable issue of fact with respect to his or her claims

**United States District Court**
For the Northern District of California

1  would not "establish incompatible standards of conduct" for FedEx. The Court's conclusion in this case

2  that some of the plaintiffs' claims are time-barred, or that plaintiffs have failed to submit sufficient

3  evidence to survive summary judgment, has no consequence whatsoever for the class claims in *Satchell.*

4  Conversely, plaintiffs suggest that the Court's certification of the *Satchell* case somehow

5  precludes an adverse ruling in this case. However, as plaintiffs well know (particularly since counsel

6  for plaintiffs are also class counsel in the *Satchell* case), the Court's certification of a class in the

7  *Satchell* case was *not* a ruling on the merits of the class claims. Simply put, the certification of the

8  *Satchell* case has no bearing on whether summary adjudication is appropriate on plaintiffs' claims in

9  this case.

10

11  **I.     Summary Judgment as to Lasonia Walker**

12  Lasonia Walker began working for FedEx on September 13, 1993, as a courier handler at the

13  Oakland Party Avenue Station. She was promoted into various positions and eventually to Operations

14  Manager at the Oakland Hub/Ramp on March 1, 1998.

15

16  **A.     Hostile Work Environment**

17  FedEx seeks summary judgment on Walker's hostile work environment claim on grounds that,

18  based on her deposition testimony, Walker cannot show a genuine question of material fact regarding

19  (1) whether a reasonable person of plaintiff's race or sex would find the workplace so objectively and

20  subjectively hostile as to create an abusive working environment; and (2) whether the defendant failed

21  to take adequate remedial and disciplinary action. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

22  1112 (9th Cir. 2004).

23  Plaintiff does not allege that any racial comments were directed at her or made by other

24  managers. Instead, plaintiff alleges that managers Dave Perry and Paul Ferrey made racially harassing

25  comments about other employees. Plaintiff testified that Dave Perry made racially discriminatory

26  comments about a Latino employee by talking about the employee's "work ethics" and describing the

27  employee as "a little slow." Walker Depo. 29-30. Walker testified that she learned through the "rumor

28  mill" that Perry made other racial comments, although she did not hear any such comments directly.

4

*Id.* at 30:16-17.

Walker also testified that Paul Ferrey made racial comments in the form of a statement that an employee "probably couldn't do the job because he's too big or too fat." *Id.* at 29-30, 45.  Walker testified that she could not recall any specific explicit racial comments made by Ferrey. *Id.* at. 44:15-18 ("It's just a little overwhelming.  I can't recall everything right now.  It's just – I'm sure he said, but exactly what and when, I can't – I just can't recall right now.").  Walker also testified that Ferrey "harassed me about missed packages, he harassed me about reviews, he harassed me coming into work, what – asking me what time did I get here.  He didn't do that with everybody else." *Id.* at 151:10-13.  Walker testified that Ferrey held African-American employees accountable, and that he did not hold non-African-American people accountable.  *Id.* at 190:6-17.

In addition to these statements, Walker also testified that she knew from her conversations with her co-worker Tanda Brown that Brown felt that she was subjected to a racially hostile environment. *Id.* at 218:1-219:1.[2]  Walker's summary judgment opposition papers also contend, without providing any specific citations to the record, that "Walker testified that she was aware that her managers, both direct and indirect, made racially offensive comments, including but not limited to the 'n word.'" Amended Opposition at 11.

In support of this claim, Walker testified that manager Mark McAuliffe made sexist comments "in regards to females not being able to do jobs."  Walker Depo. at 36:8-10.  Walker could not recall any specific details regarding comments made by McAuliffe, "just, you know, females being able to do jobs around there.  That seemed to be the ongoing thing with all the seniors." *Id.* at 37:10-17.

Walker also testified that Dave Perry said "something along the lines that females couldn't do a job that males could do," (*Id*. at 32:22-23), and "something along the lines of, the reason I got the job is because I was a female." *Id.* at 33:16-18.  Walker testified that Paul Ferrey told her that "depending on what area you're hiring for," make sure you hire "females [who are] able to actually physically do the job at FedEx." *Id.* at 47:23-48:3.  Walker acknowledged in her testimony that FedEx has lifting

---

[2]  Plaintiff did not provide the Court with page 219 of Walker's deposition.  Indeed, it is often the case that plaintiffs provided the Court with some, but not all, of the deposition pages cited in the oppositions.

requirements for certain jobs and that it is important to hire people who can lift up to 75 pounds. *Id.* at 48, 51.  Walker testified that Ferrey asked her if she was having a relationship with another female employee. *Id.* at 46:11-47:1.

Walker also extensively cites the deposition testimony of Michael Snyder regarding derogatory comments that FedEx managers allegedly made about women.  However, Walker has not offered any evidence that she had any knowledge of the derogatory comments allegedly made by FedEx managers as described in Snyder's deposition.

In the Ninth Circuit, courts employ a totality of the circumstances test in determining whether a plaintiff has established a hostile work environment, considering factors such as: "[the] frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters.Corp.*, 256 F.3d 864, 872 (9th Cir. 2001).  To constitute harassment, the workplace must be both subjectively and objectively abusive.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

FedEx argues, and the Court agrees, that Walker's deposition testimony requires a grant of summary judgment on her hostile work environment claim.  No one at FedEx made a racial slur or offensive remark to plaintiff.  The two derogatory comments plaintiff could recall were directed at other employees, and plaintiff has not provided any evidence to suggest that these comments were racially discriminatory.

Plaintiff contends that it does not matter whether harassing comments were made directly to her, because she and other employees heard of and discussed racially derogatory comments made by other managers, including the use of the "n" word by a high-ranking manager.  However, Walker does not offer support for this contention; instead, she cites deposition testimony in which she testified that she heard through the "rumor mill" that Perry made unspecified racial comments.  Walker Depo. at 30:13-17.  The only evidence Walker cites for the proposition that FedEx managers used the "n" word is from the deposition of Michael Snyder.  However, Walker has not offered any evidence that she had any knowledge of the derogatory comments allegedly made by FedEx managers as described in Snyder's deposition.

Further, plaintiff has not provided any support for her claim that Ferrey harassed her about missed packages, reviews, and arrival time at work on account of her race.  Walker offers no evidence of racial animus towards her by Ferrey, and she testifies only about her subjective belief that he treated her and other African-Americans differently on account of race.  Similarly, Walker's testimony that she was aware that her co-worker Tanda Brown felt she was subject to a racially hostile work environment is insufficient to raise a material issue of fact that Walker was subject to a racially hostile work environment.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642-43 (9th Cir. 2003); *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990).

*Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), is also instructive.  In *Kortan*, the Ninth Circuit determined there was no hostile work environment when a supervisor called female employees "castrating bitches," "Madonna," or "Regina" on several occasions in the plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor.  *Id.* at 1107.  The court held that while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment.  *Id.* at 1111.

Here, Walker's evidence of sexual harassment is much weaker than that presented by the plaintiff in *Kortan*.  Walker's testimony about the offensive comments made by McAuliffe and Perry was vague at best.  Ferrey's comment that "depending on what area you're hiring for," make sure you hire "females [who are] able to actually physically do the job at FedEx" is not a patently sexist or offensive comment.  As discussed above, Walker has not submitted any evidence that she was aware of the offensive comments discussed in the Snyder deposition.  Accordingly, the Court hereby GRANTS defendant's motion for summary judgment on Walker's hostile environment claim.

**B.    Compensation**

Defendant contends that Walker's Title VII , FEHA and § 1981 compensation claims are barred by the statute of limitations because these claims are based on her compensation level when she was promoted into the Operations Manager position in March of 1998, well before Walker filed her complaints with the DFEH in 2002 or the EEOC in 2003, and before the § 1981 liability period of

1  December 12, 1998.[3]  Walker's opposition does not address this contention.

2        The Court concludes that Walker's compensation claims are untimely.  Discrete discriminatory

3  acts such as termination, failure to promote, denial of transfer, or refusal to hire constitute separate

4  actionable employment practices, and the limitations period on each begins to run when the practice

5  occurs.  *See Lyons v. England*, 307 F.3d 1092, 1106 (9th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp.*

6  *v. Morgan*, 536 U.S. 101, 113 (2002)).  Here, Walker's compensation claim challenges the "discrete

7  discriminatory act" of setting her compensation at a Grade 25 in March 1998, and thus her claim is time-

8  barred.  Accordingly, the Court GRANTS summary judgment on this claim.

9

10      **C.**    **Retaliation**

11        In order to establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged

12  in protected activity; (2) her employer subjected her to an adverse employment action; and (3) there is

13  a causal link between the protected activity and the adverse action.  *See Ray v. Henderson*, 217 F.3d

14  1234, 1239 (9th Cir. 2000).  Plaintiff's retaliation claim is based on disciplinary memoranda and emails

15  she received from her supervisor Paul Ferrey on August 27,  July 31, and October 2, 2001, and March

16  20, April 25, and July 29, 2002.  Defendant notes that all but one of these emails and memoranda

17  predate Walker's DFEH claims on June 25 and July 3, 2002, and her EEOC charge on February 14,

18  2003, and thus as a matter of law plaintiff cannot show that any causal link between Ferrey's

19  memoranda and emails and plaintiff's filing of her DFEH and EEOC charges.

20  _____

21      [3]  Plaintiffs filed the original complaint in state court on December 12, 2002, alleging claims
under state law.  After defendant removed the complaint to this Court, and after plaintiffs severed their

22  claims from the *Satchell* case, they filed an amended complaint in January 2004 alleging a claim under
42 U.S.C. § 1981.  The Court concludes that plaintiffs' claims under Section 1981 relate back to the date

23  the original complaint was filed because the claims asserted "arose out of the conduct, transaction, or
occurrence set forth" in the original state complaint. Fed. R. Civ. Proc. 15(c)(2); *see also Martell v.*

24  *Trilogy, Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989).  Defendant's reliance on *Johnson v. Railway Express*
*Agency*, 421 U.S. 454 (1975), to argue that the amended complaint should not relate back is unavailing

25  because *Johnson* simply held that the statute of limitations for a Section 1981 claim is not tolled while
a plaintiff is exhausting administrative remedies prior to filing suit.  *Id.* at 461-66.

26      The Court directed the parties to brief whether the November 2003 stipulation in *Satchell*, which
allowed, *inter alia*, the plaintiffs in *Alvarado* and *White* to sever their cases and file amended

27  complaints, had any effect on the Section 1981 liability period in *Alvarado* and *White*.  The Court
concludes that the stipulation has no bearing on the Section 1981 liability period in these cases, and

28  rejects plaintiffs' arguments to the contrary.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Although plaintiff stated in her deposition that the "hostile environment" and "corrective actions" she experienced did not come about "until after the lawsuit was filed" (Walker Dep. 218:1-5), her summary judgment opposition also contends that defendant retaliated against her after she made internal complaints to supervisors about the fact that she received her evaluations, and consequently her raises, late.   *See id.* at 1240 (holding that making informal complaints to a supervisor is protected activity under Title VII).   Walker testified at her deposition that she complained about the lack of timeliness of her reviews to Mark McCauliffe, Dave Perry, Paul Ferrey, Sharon McNeal and Tamara Green. Walker Dep. 38:2-41:17. It is unclear from the deposition testimony when Walker made these complaints, but Walker does state "Well, from '98, when I became a manager, all of my reviews had been late." *Id.* at 40:23-24.

Defendant also contends that Ferrey's emails and memoranda were performance counselings that did not constitute a "materially adverse employment action," because they were mere criticisms of job performance that did not lead to job consequences. Plaintiff contends that memoranda criticizing her work did rise to the level of adverse employment actions, because the Ninth Circuit broadly defines that term to include "a wide array of disadvantageous changes in the workplace." *See id.* at 1241; *see also Fonseca v. Sysco Food Servs. of Arizona, Inc.,* 374 F.3d 840, 847 (9th Cir. 2004) ("A warning letter or negative review can also be considered an adverse employment action."). According to plaintiff, she received the critical memoranda after she complained about receiving her evaluations and raises late, a practice she considered discriminatory in and of itself, and accruing multiple memoranda like this increased the likelihood that she would receive a reminder letter.

Plaintiff has raised a triable issue of fact regarding whether FedEx retaliated against her after she made complaints to supervisors about her late evaluations. Although the time line is somewhat attenuated, Walker has submitted evidence that she complained to Ferrey about her late reviews, and that subsequently Ferrey issued disciplinary memoranda and emails. Whether Walker's evidence of retaliation is persuasive is a question for the jury.

Further, the Ninth Circuit broadly defines "adverse employment action," holding that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243; *see also Hashimoto v. Dalton*, 118 F.3d 671,

United States District Court

For the Northern District of California

676 (9th Cir. 1997) (holding dissemination of unfavorable job reference was an adverse employment action "because it was a 'personnel action' motivated by retaliatory animus," even though poor job reference did not affect prospective employer's decision not to hire plaintiff). Accordingly, the Court hereby DENIES defendant's motion for summary judgment on Walker's retaliation claim.

### D.    Promotion

Walker's promotion claims are not very specific. Walker generally contends that FedEx discriminated against her from 1993 to 1998 because during that time period she inquired about and/or applied for several courier and management positions that she did not get. *See* Walker Depo. at 97-98. Walker could not remember specific details regarding when she applied for these positions, or how many positions she sought. *Id.* at 94:20-95:24 (stating she cannot recall how many applications she submitted or the specific month or year when she applied). Walker's most specific evidence is her testimony that she told every manager she had between 1993 and 1998 that she wanted a permanent route courier position (*Id.* at 97:22-98:2), and that a white male, Paul Kowalski, who was hired after her was able to secure a permanent route courier position before she did. *Id.* at 96:5-13. Walker could not remember when Paul Kowalski obtained the permanent route courier position. *Id.* at 96:12-13.

Walker's opposition papers also contend that "[w]ith respect to Sr. Management positions, Managing Directors had the discretion of hiring whomever they wanted and no monitoring of this discretion was done by FedEx." Walker contends that she has submitted evidence that "interview panels, when held, for selecting potential employees are created unfairly." Amended Opposition at 17:1. However, as FedEx correctly notes, Walker testified that she never sought a promotion into the Senior Management or Managing Director positions. Walker Depo. at 89:22-24 (never sought promotion to Senior Manager); 90:1-3 (never sought promotion to Managing Director). Walker states in her opposition, without any citation to specific evidence, that she was denied a Senior Manager position.

Defendant argues that to the extent Walker's promotion claims arise from the 1993-1998 time

United States District Court

For the Northern District of California

1   period, they are untimely.[4]  The Court agrees.  Plaintiff's DFEH complaints were filed on June 25, 2002

2   and July 3, 2002, and her EEOC charge was filed on February 14, 2003.  Plaintiff contends that under

3   a "continuing violation" theory, her promotion claims are timely.  However, the Supreme Court and the

4   Ninth Circuit have held that discrete discriminatory acts, such as denials of promotions, are not

5   actionable if time-barred, even when they are related to acts alleged in timely filed charges.  *See*

6   *Morgan*, 536 U.S. at 113; *Lyons*, 307 F.3d at 1106 (noting that *Morgan* "emphasized that discrete acts

7   such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify, . . . and

8   thereby concluded that each incident of discrimination . . . constitutes a separate actionable unlawful

9   employment practice.").  Similarly, to the extent plaintiff challenges promotion denials between 1993

10  and 1998 under 42 U.S.C. § 1981, these claims are time-barred as well.  *See Jones v. R.R. Donnelley*

11  *& Sons*, 541 U.S. 369, 382 (2004); *Sitgraves v. Allied-Signal, Inc.*, 953 F.2d 570 (9th Cir. 1992).; *see*

12  *also* 28 U.S.C. § 1658.

13      Walker has not submitted any evidence that she was denied a promotion after 1998.  As noted

14  above, Walker asserts in her opposition papers, without any support and indeed in contradiction of her

15  deposition testimony, that she was denied a promotion to a senior manager position.  However, unsworn

16  allegations in the pleadings are not facts that can be used to defeat summary judgment.  *See Thornhill*,

17  594 F.2d at 738.  Because the only evidence Walker has submitted shows that Walker was not denied

18  any promotion after 1998, and because plaintiff has not made any showing whatsoever that Walker was

19  denied a promotion after 1998, the Court hereby GRANTS defendant's motion for summary judgment

20  on Walker's promotion claims.

21

22      **E.      Discipline**

23      Defendant argues that Walker received no discipline that amounted to materially adverse

24  employment action, and in fact received only two reminder letters during her employment, one for break

25  violations and one for failure to pass a courier job knowledge test.  FedEx also contends that there is no

26  evidence that she received any of the counselings because of discrimination, rather than for legitimate

27  ─────────────────

28      [4] As stated *supra*, the earliest date for § 1981 liability period is December 12, 1998.  However, plaintiff has not submitted any evidence that she was denied a promotion after that date.

11

conduct issues.

The Court concludes that Walker has not submitted any evidence to raise a triable issue of fact that any of the warning letters and counselings were issued on account of race. Despite the fact that defendant's motion for summary judgment described Walker's disciplinary history in detail, none of Walker's three summary judgment oppositions addresses any specific instance of discipline. The only evidence Walker has submitted regarding her discipline claims consists of (1) her deposition testimony that Ferrey generally held African-American managers accountable for mistakes while not holding non-African-American managers responsible for the same mistakes, and (2) Tanda Brown's deposition testimony that she witnessed other minority employees receive discipline that she thought was unfair or unwarranted. Walker has not submitted any evidence that suggests any particular instance of discipline that she received was discriminatory. Accordingly, the Court concludes that Walker has failed to raise a triable issue of fact and GRANTS summary judgment on Walker's discipline claim.

### F.      Constructive Discharge

Walker took a medical leave of absence from FedEx in July 2002. By letter dated October 31, 2002, a FedEx representative notified her that she would be considered to have resigned unless she reported to work or provided a medical report. Plaintiff never returned to work at FedEx. Plaintiff argues that she was subjected to treatment that would lead a reasonable person to resign, including her awareness of racial epithets used by FedEx managers, disparaging remarks about women made by managers and other employees, questions about her and other employees' sexual orientation, and late performance reviews that delayed her eligibility for raises.

"Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions to intolerable that a reasonable person would leave the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). As set forth above, Walker has failed to establish that she was subject to a hostile work environment. Accordingly, the Court GRANTS defendant's motion for summary judgment on Walker's constructive discharge claim.

United States District Court

For the Northern District of California

### G.   Disparate Impact

Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  The Court notes that although the complaint alleges disparate impact claims with respect to promotion, compensation and discipline, these claims have never been litigated in any meaningful way.   Instead, the focus of this litigation has been plaintiffs' claims for disparate treatment.

Walker's opposition largely consists of conclusory allegations and is devoid of any discussion of the specific facts of this case.  The only "evidence" Walker relies on is three paragraphs contained in the statistical report prepared by Dr. Richard Drogin in connection with the plaintiffs' motion for class certification in *Satchell*.   The Court concludes that Walker's citation of Dr. Drogin's report is inappropriate because plaintiffs have not designated Dr. Drogin as an expert in this case.  Moreover, the Court notes that the three paragraphs Walker cites relate to discipline, and apparently Walker has abandoned her disparate impact claims concerning compensation and promotion.

Walker also contends that the Court should deny summary judgment on her disparate impact claims in light of the Court's certification of the *Satchell* case.  However, as stated *supra*, the Court's conclusion that Walker has failed to submit any evidence or advance any argument whatsoever in support of her disparate impact claims concerning promotion and compensation, and that she has failed to submit any admissible evidence in support of her disparate impact claim concerning discipline, has no effect whatsoever on the class claims in *Satchell*.  In light of Walker's complete failure of proof, the Court GRANTS summary judgment to FedEx on these claims.  (Docket # 94)

## II.   Summary Judgment as to Tanda Brown

Tanda Brown joined FedEx in 1988 as a part-time Cargo Handler in Chicago, and was promoted to Operations Manager in 1990 in the Domestic Ground Operations ("DGO") Division in San Francisco. In 1997, Brown transferred to a Ramp Manager position at the Oakland Ramp in the Air Ground Freight Division ("AGFS").   Between 1999 and 2004, Brown unsuccessfully applied for "three to four" promotions to other manager positions.

Plaintiff took a medical leave in July 2002.  On June 26, 2003, FedEx approved plaintiff's request for an ergonomically correct chair, and on July 3, 2003, it offered her a position as a full-time

United States District Court

For the Northern District of California

Operations Manager with permanent lifting restrictions to accommodate her injury. She returned to work on July 7, 2003, but felt physically unable to perform the job and went back on medical leave on July 10, 2003. On February 2, 2004, FedEx advised plaintiff that she had reached "maximum medical improvement" and was no longer capable of performing her positions. She was given 90 days to apply for another position. She applied for the position of Manager Overgoods, for which she was not selected; Jacqueline Dennis, an African American female candidate, was chosen instead. She filed an internal complaint alleging unfair treatment in this application process. Her employment was terminated on July 8, 2004.

Plaintiff submitted a DFEH complaint on July 3, 2002 alleging discrimination on the basis of race, sex, and sexual orientation, and an EEOC charge on April 22, 2003 alleging race discrimination. Plaintiff has attached as Exhibit A to her declaration a copy of a complaint filed with DFEH on April 28, 2005; this complaint alleges discrimination on the basis of race, sex, sexual orientation and physical disability. It is unclear what action, if any, the DFEH has taken on the April 2005 complaint.

### A. Promotion

Brown's promotion claims concern "three to four" promotions for which she applied and was denied. *See* Brown's Summary Judgment Opposition at 5. Brown first applied for a Senior Manager position in 1999 when David Perry was her Managing Director. At the time, Brown was working as an Operations Manager. On November 8, 1999, Perry informed Brown that she had not been selected for this position and that Paul Ferrey had been chosen. *See* Douglas Decl. In Support of Brown Summary Judgment, Exh. 7 (November 8, 1999 letter to Brown).

Brown applied for another Senior Manager position in 1999 when Jymmye Smith, an African American female, was her Managing Director. On December 9, 1999, Smith informed Brown that she was not selected for the position and that Gary Hall had been hired. *See* Douglas Decl. In Support of Brown Summary Judgment, Exh. 7 (December 9, 1999 letter to Brown).

Brown states that she applied for a Senior Manager position in 2001 when Robin Van Galder was her Managing Director. Sammy Lynch, an African-American male, was hired. Brown Depo. at 153-156, 175; Brown Decl. ¶ 2. FedEx does not address this claim. Brown has not submitted any

14

1    evidence regarding the timing of this promotion denial.

2        Brown applied for a Manager Overgoods position in 2004.  On June 21, 2004, Senior Manager

3    Brian Bird informed Brown that Jacqueline Dennis, an African-American female, was the candidate

4    selected for this position.

5

6        **(1)    1999 Promotions**

7        Defendant contends that Brown's 1999 promotion claims are barred by the statute of limitations.

8    Brown filed a DFEH complaint on July 5, 2002, and an EEOC charge on April 22, 2003.  In order to

9    be actionable, a claim under FEHA must be filed with the DFEH within one year of the date on which

10   the allegedly unlawful practice occurred.  *See* Cal. Gov't Code § 12760.  Similarly, before an employee

11   may sue an employer under Title VII, she must file a charge with the EEOC within 300 days of the

12   alleged unlawful employment practice.  *See* 42 U.S.C. § 2000-5(e)(1).  Defendants are correct that the

13   promotion decisions in 1999 occurred more than one year before Walker's July 2002 DFEH complaint

14   and more than 300 days before Walker's April 2003 EEOC charge.  Accordingly, the Court concludes

15   that Walker's promotion claims concerning the 1999 promotions are time-barred under FEHA and Title

16   VII.  *See Lyons,* 307 F.3d at 1106.

17       Brown's 1999 promotion claims are timely under 42 U.S.C. § 1981.  Because Brown was

18   seeking a promotion from an operations manager to a senior manager position, the Court agrees with

19   plaintiff that the 4 year statute of limitations would apply.  *See Sitgraves,* 953 F.2d at 572.  As stated

20   *supra*, the beginning of the Section 1981 liability period is December 12, 1998.

21       Brown has raised a triable issue of fact to defeat summary judgment on her Section 1981 claims

22   concerning the 1999 promotion denials.  With respect to the November 1999 promotion denial, Brown

23   has cited Ferrey's deposition testimony in which he acknowledges that Brown had more managerial

24   experience than she did, and Brown testified that she was given a math test when she applied for this

25   position and Ferrey was not.[5]  With respect to the December 1999 promotion denial, although McNeal

26

27       [5]  The parties dispute Ferrey's ethnicity.  Brown testified that Ferrey is "mixed" but that he is

28   not African American.  Regardless of Ferrey's ethnicity, he is a man and Brown alleges that she did not
     receive the 1999 promotion because, in part, of her sex.

15

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   testified that Brown had a "courtesy" interview, McNeal also testified based on Brown's interview,

2   education, experience, etc., Brown "should have had a senior management job from that interview and

3   the whole thing that was going on there."  McNeal Depo. at 144:13-17.  Brown has also submitted

4   evidence suggesting that FedEx policy regarding the priority of interviewing applicants was not

5   consistently followed.  Accordingly, the Court concludes that Brown has raised a triable issue of fact

6   on her § 1981 claims concerning the 1999 promotion denials.

7

8             **(2)**      **2001 Promotion**

9        Plaintiff's deposition testimony and declaration state that she applied for a Senior Manager

10   position in 2001, and that Sammy Lynch was the successful candidate.  Defendant's papers do not

11   address this promotion at all.  Accordingly the Court DENIES WITHOUT PREJUDICE defendant's

12   motion for summary judgment to the extent Brown's promotion claim challenges the 2001 promotion.

13

14             **(3)**      **2004 Promotion**

15        The Court concludes defendant is entitled to summary judgment on this claim because Brown

16   cannot establish that an individual outside the protected class was promoted instead of her, since it is

17   undisputed that the employee who received the Manager Overgoods position was an African-American

18   female.  *See Pejic v. Hughes Helicopters Inc.*, 840 F.2d 667, 672 (9th Cir. 1988).

19        In sum, the Court hereby GRANTS defendant's motion for summary judgment on Brown's Title

20   VII and FEHA promotion claims to the extent she alleges discrimination in connection with the 1999

21   promotion denials, and GRANTS defendant's motion for summary judgment on Brown's Title VII,

22   FEHA and 42 U.S.C. § 1981 claims regarding the 2004 promotion denial. The Court DENIES summary

23   judgment with respect to plaintiffs' claims under 42 U.S.C. § 1981 regarding the 1999 promotion

24   denials. The Court DENIES WITHOUT PREJUDICE defendant's motion for summary judgment

25   regarding plaintiff's claim concerning a promotion denial in 2001 because defendant did not address this

26   claim in its papers.

27

28       **B.**       **Discipline**

United States District Court

For the Northern District of California

1    Defendant moves for summary judgment on Brown's "discipline claims," and defendant's

2    motion details Brown's disciplinary history.   However, although Brown's complaint alleges

3    discriminatory discipline, none of her three summary judgment oppositions addresses her discipline

4    claims, nor do the oppositions contend that these claims should survive summary judgment.  Instead,

5    Brown's oppositions discuss discipline in the context of her retaliation claim and her hostile work

6    environment claim.  Moreover, at the hearing on defendant's motion for summary judgment, plaintiffs'

7    counsel listed Brown's claims and did not mention discipline as being among them.   Accordingly,

8    because plaintiff  appears to have abandoned any discipline claims through the failure to address any

9    such claims in her three summary judgment oppositions or at oral argument, the Court hereby GRANTS

10   defendant's motion for summary judgment on these claims.

11

12       **C.       Termination**

13    Defendant contends that Brown cannot establish that she was terminated as a result of her race

14   or sex.  FedEx argues that Brown was terminated in July 2004 after she failed to secure a position within

15   the 90-day period she was provided.  FedEx argues that Brown cannot demonstrate that this legitimate,

16   non-discriminatory reason is a pretext for race or sex discrimination, and that this is especially true since

17   Brown chose to only apply for one position with FedEx during that time period, the Manager Overgoods

18   position.

19    As with her discipline claim, Brown does not specifically address the termination claim in the

20   any of her oppositions, nor did Brown contend at the hearing that she was bringing a claim based on her

21   termination.  Instead, Brown states that FedEx terminated her in retaliation for complaints that she filed

22   with the DFEH, EEOC, and internally, and that her termination violated FEHA because it was based on

23   her disability.  Indeed, even in the "facts" section of her brief, Brown does not specifically contend that

24   her termination was racially or sexually discriminatory.  Accordingly, the Court GRANTS defendant's

25   motion for summary judgment to the extent Brown challenges her termination as sex or race-based

26   discrimination because Brown has not put forth any evidence to suggest that her termination was on

27   account of race or sex.

28

**United States District Court**
For the Northern District of California

**D.     Compensation**

Although FedEx moved for summary judgment on Brown's compensation claim, none of Brown's three opposition briefs address any compensation claim, and at the summary judgment hearing plaintiffs' counsel did not include a compensation claim in his list of Brown's claims.  Accordingly, because plaintiff has not submitted any evidence to raise a triable issue of fact on this claim, the Court hereby GRANTS defendant's motion for summary judgment on her compensation claim.

**E.     Hostile Work Environment**

Brown contends that she has submitted evidence of a racially and sexually hostile work environment because (1) her managers made racist and sexist remarks in her presence and at meetings; (2) she was questioned on her sex life during an investigation on an entirely unrelated matter in violation of FedEx policy; (3) she was disciplined and questioned to a greater extent than any Caucasian male employee of similar position, and when the discipline was shown to be in error no remedial steps were taken to clean her record; (4) she was required to take a math test for a 1999 promotion while a Caucasian male was not required to take such a test; (5) she witnessed other African-Americans being verbally attacked by management;[6] (6) white males were approached and encouraged to apply for management positions, and that she was never approached in this way; and (7) in 1989 or 1990, when she submitted applications to begin the management process in 1989 or 1990, her former manager would not process that paperwork in a timely fashion.

Brown's evidence of racist and sexist comments in the workplace is as follows.  Brown testified that her supervisor Dave Perry told other employees that he would not hire a female for certain

---

[6]  Brown testified that she witnessed a Caucasian manager verbally attack another African-American employee on the sort.  Brown testified that "the noncon area was backed up or becoming backed up.  And Guy was just pointing at Victor [African-American employee] and telling him, 'Get this shit together right now,' and you know, 'What kind of idiot would run an operation like this,' and just things along that line. . . . 'This is fucking ridiculous.  You don't know what the fuck you're dong.'" Brown Depo. at 56:16-57:10.

18

positions.  Brown Depo. at 135:16-22.[7]  Brown also testified in her deposition that supervisor Francis Miller "made references to females – pretty much females being home.  And for some reason, he was making reference to Polynesians . . . . he made some improper remarks with regards to Polynesians and minorities in general.  I can't remember exactly what it was."  Brown Depo. at 36:20-37:6.  Brown testified that Miller made those comments at a managers' meeting.  *Id.*  Brown testified that another manager, Sam Minnis, told her sometime between June of 1988 and October of 1989 that a woman's place was in the home.  *Id.* at 190:16-23.

Brown testified that two senior managers, Guy Capriulo and Paul Ferrey, habitually pointed out that someone was "black" when referring to that person for any reason, but that they did not note when an employee was Caucasian.  *Id.* at 42:1-15.

Brown also testified that she asked Michael Pigors during a group meeting in 1991 why more minorities and women were not in senior management positions, and Pigors stated that the company was trying to improve day care benefits.  This comment offended plaintiff because she felt it implied that all women have young children.  Plaintiff also alleges that a diversity committee was established in 1992 or 1993 to determine why minorities were not pursuing senior management positions, but the committee was disbanded the following year.  Brown's amended opposition asserts that she "witnessed race discrimination by Mike Pigors, Dave Perry and Mike Kaufman"; however, the deposition citation to support this assertion simply states that Brown's claim of race discrimination is "based upon precedents that have been set by Mike Pigors, Dave Perry, and Mike Kaufman, pretty much centering around how other employees of the same ethnicity and/or sex or sexual orientation were and had been treated."  Brown Depo. at 279:8-12.

Finally, as with Walker (and all of the plaintiffs), Brown cites extensively from the Snyder deposition regarding racist and sexist comments that were allegedly made at FedEx.  However, Brown

---

[7]  Although Brown cites her deposition and declaration for her assertion that "Perry made [sexist and racist] comments throughout the entire time he was Brown's supervisor," (Amended Opposition at 2), the deposition and declaration do not actually support that assertion.  Brown's declaration simply states that Perry became her supervisor in 1999 (Decl. ¶ 4), and the deposition testimony is "I don't recall, again, verbatim what [Dave Perry] said.  I recall what it was in reference to.  Dave was known for – his reputation was known for not promoting females. . . ."  Brown Depo. 35:14-17.  Indeed, later in her deposition Brown testified that she could not recall anything specific Perry said.  *Id.* at 36:13-16.

United States District Court

For the Northern District of California

has not submitted any evidence that she was personally aware of any of these comments.

The Court concludes that under the totality of the circumstances test, Brown has not raised a triable issue of fact regarding whether her workplace was "permeated with discriminatory intimidation that was severe or pervasive enough to alter the conditions of her employment and create an abusive working environment." *Brooks*, 229 F.3d at 923 (internal quotations omitted).  No one at FedEx made a racial slur or offensive remark to Brown.  At most, Brown has testified that Miller made "some improper remarks with regards to Polynesians and minorities in general.  I can't remember exactly what it was," and that two managers referred to African American individuals as "black" but would not also note when someone was Caucasian.  Brown has testified that two FedEx managers made overtly sexist comments, and one of these managers allegedly made the sexist comment in 1988 or 1989.  Although Brown was offended by Pigor's comment in 1991 regarding day care benefits, such a comment is not patently sexist.  As noted *supra*, Brown has not submitted any evidence that she was aware of the derogatory comments described in the Snyder deposition.

Aside from the comments, Brown's evidence of a hostile work environment generally consists of her subjective belief that FedEx managers treated her and other African Americans differently on account of race.  Considering all of the evidence together, Brown has not submitted evidence that raises a triable issue of fact regarding a hostile work environment. *See Kortan*, 217 F.3d at 1107; *see also Vasquez*, 349 F.3d at 642-43.  Accordingly, the Court GRANTS defendant's motion for summary judgment on this claim.

**F.     Retaliation**

**(1)     Pre July 2002 Promotions**

Defendant argues that Brown cannot establish a prima facie case of retaliation because the adverse employment actions – which FedEx identifies as the 1999 promotion decisions – occurred prior to the filing of Brown's DFEH or EEOC charges.  Brown does not address FedEx's argument regarding the 1999 promotions, and the Court agrees with FedEx that to the extent Brown is alleging that the denials of *any* promotions (the two 1999 promotions and the other, unspecified promotion in  2001) prior to the filing of her DFEH complaint in July 2002, Brown has failed to establish a prima facie case

United States District Court

For the Northern District of California

1   of retaliation.  *See Manatt*, 339 F.3d at 800 (stating that plaintiff must show causal link between

2   protected activity and adverse employment action).

3

4                    **(2)     Post July 2002 "Adverse Employment Actions"**

5          Brown's amended opposition filed October 6, 2005 – to which FedEx did not file a reply –

6   contends that her retaliation claim is based on adverse employment actions that occurred after her DFEH

7   complaints were filed in 2002.  In addition to the 2002 DFEH complaints, Brown states that the

8   protected activity she engaged in consists of her EEOC charge filed in 2003; an internal "GFT"

9   complaint filed on June 2, 2004; a June 21, 2004 letter of discrimination to executive management; and

10  a DFEH complaint in 2005.  Brown identifies the following adverse employment actions that occurred

11  after her DFEH and EEOC charges: (1) a July 23, 2002 disciplinary letter; (2) a Calendar Audit on

12  September 6, 2002; (3) when Brown returned from disability leave in early 2003 she was placed in a

13  non-sedentary position in direct violation of her doctor's orders; (4) Brown was forced back on

14  disability leave "per FedEx's complete failure to offer an accommodating position"; (5) FedEx refused

15  to pay disability to which Brown was entitled and thereafter issued her a 90 day warning to either find

16  another suitable job within the company or be terminated; (6) the June 2004 denial of the promotion to

17  the Manager Overgoods position; and (7) Brown's termination on July 9, 2004.

18         FedEx only addresses two of the above alleged adverse employment actions: the July 23, 2002

19  disciplinary letter and the 2004 promotion denial.  FedEx argues that Brown cannot show a causal link

20  between Brown's protected activity and these employment actions because there is no evidence that the

21  decisionmakers at issue (Paul Ferrey, who issued the July 23, 2002 letter, and Bryan Bird, who made

22  the 2004 promotion decision) had any knowledge of Brown's complaints.  The Court concludes that

23  Brown has submitted sufficient evidence for purposes of defeating summary judgment on these claims.

24         Accordingly, the Court hereby GRANTS defendant's motion for summary judgment on Brown's

25  retaliation claim to the extent her retaliation claim is based on the denial of any promotion.  The Court

26  hereby DENIES defendant's motion for summary judgment with respect to the remainder of Brown's

27  retaliation claim.

28

                                                    21

**G.     Disability Discrimination**

Brown's second amended opposition, filed October 6, 2005,  contends that summary judgment is not appropriate on any of her "disability discrimination claims."  FedEx's motion for summary judgment, reply, and supplemental reply were all filed before the amended opposition; none of these briefs address any alleged disability discrimination claims. FedEx did not file a reply to Brown's second amended opposition. Prior to her October 6, 2005 second amended opposition, Brown had not asserted, through the complaint or any pleadings, any "disability discrimination claims."

Anticipating a likely objection from FedEx and the Court, Brown contends that her disability discrimination and failure to accommodate claims, which she brings under FEHA, are not barred because (1) her complaint alleges a violation of FEHA Cal. Gov't Code § 12940 *et seq.*, and (2) defendant has been placed on notice of these claims by a complaint Brown filed on April 28, 2005 with the DFEH alleging disability-based discrimination, as well as by Brown's deposition testimony.

Brown provides no authority whatsoever for her contention that because her complaint alleges a violation of California Government Code § 12940 for discrimination based on race, national origin, and "sex/gender," this Court has subject matter jurisdiction over disability-based discrimination claims. *See* First Amended Complaint ¶¶ 301-19.  None of the allegations in the First Amended Complaint allege disability-based discrimination with respect to Brown.  It is undisputed that Brown's 2002 DFEH complaints allege discrimination on the basis of "race, gender, sexual orientation," and her 2003 EEOC charge alleges "race-based discrimination." McCoy Decl. Exhs. B, E.  Brown does not contend that these complaints and charges allege disability-based discrimination, and indeed a review of these complaints demonstrates that they do not mention anything remotely connected to failure to accommodate or disability-based discrimination.  These are the charges and complaints that were exhausted prior to filing the instant lawsuit, and neither provides a basis for including disability based claims in the complaint. *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).

Brown's contention that her deposition testimony put defendant on notice of her disability-based claims is similarly unavailing.  Exhaustion of administrative remedies is a prerequisite to filing suit on discrimination charges, and a plaintiff may not skip these remedies by mentioning additional, unexhausted claims in a deposition. *Cf. id.*  Thus, the only potential basis for this Court to review

22

United States District Court

For the Northern District of California

1  Brown's disability-based discrimination claims is her April 28, 2005 DFEH charge.

2          As the complaint currently stands, however, Brown has neither alleged disability-based claims

3  nor has she alleged that she has exhausted her administrative remedies with respect to those claims.

4  Moreover, plaintiff has not sought leave to amend the complaint to allege any disability-based claims.

5  Instead, plaintiff has attempted to add these claims into this case in a manner the Court considers

6  disingenuous and improper.  Accordingly, the Court holds that Brown's "disability discrimination

7  claims" are not a part of this lawsuit.[8]  *Cf. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th

8  Cir. 2000) (holding plaintiffs could not raise disparate impact theory not pled in complaint for first time

9  at summary judgment after close of discovery).

10

11          **H.      Disparate Impact**

12          Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  For all of

13  the same reasons as stated *supra*, and in light of Brown's complete failure of proof, the Court GRANTS

14  summary judgment to FedEx on these claims.  (Docket # 97)

15

16  **III.    Summary Judgment as to Kevin Neely**

17          Plaintiff Kevin Neely began his employment with FedEx on October 7, 1991 as a part-time

18  Casual Handler.  During his career with FedEx, he has been promoted to permanent part-time Senior

19  Handler, Team Leader of the p.m. shift, part-time Courier, full-time Courier, and full-time Ramp

20  Transport Driver.  On April 14, 1999, Neely was promoted into management as an Operations Manager,

21  and he holds that position currently.

22          Neely filed a complaint with the DFEH on July 5, 2002, and a complaint with the EEOC on April

23  16, 2003.

24

25

26          [8]  If plaintiff Brown wishes to pursue her disability discrimination claims, she must do so by
   filing a separate lawsuit, as the Court will not grant her leave to amend the complaint at this late date
27  in the litigation.  *Cf. Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)
   (affirming denial of leave to amend on grounds of prejudice and delay where motion filed days before
28  discovery cut-off and less than three months before trial).

**A.      Hostile Work Environment**

Neely contends he was subject to a racially hostile work environment because he and the other African-American managers were "publicly degraded" with racial innuendos such as Dave Perry saying "Those people are stupid," when referring to the people who worked at FedEx's Oakland site, or Guy Capriulo telling Neely "You are OBC," (meaning "Oakland by choice," which according to plaintiff was shorthand for "If you don't like it, look for another position").  Neely also testified that he heard manager Mike Kelly refer to Steve SooHoo as a "chink," and to Lee Chung as "rice eater."  Neely also quotes extensively from the Snyder deposition regarding racist comments allegedly made by FedEx managers; however, as with the other plaintiffs, Neely has not submitted any evidence that he was personally aware of any of these comments.

Neely also contends that he was subjected to a hostile work environment because he was discriminated against with respect to promotional opportunities, compensation, and discipline.  Neely asserts that he and the other African American operations managers are not allowed to sit in on interview panels to help select new employees; however, the evidence Neely submits to support that assertion, Evans' deposition testimony, simply states that "when senior management positions come up, no one is allowed to participate in those meetings, except the hiring manager and the two individuals that he pick to sit with him are allowed in that interviews."  Evans Depo. at 195:3-8.  Neely has also submitted evidence that he and plaintiff Evans and Kalini Boykin, a class representative in the *Satchell* case, are not allowed to hire employees, but that a white  manager, Carl Bowersmith, has been given such authority.  Evans Depo. at 40, 43; Bowersmith Depo. 30-31.  Neely has also introduced evidence that he and Evans have not been allowed to work as "acting Senior Managers" when the Senior Managers go on vacation, but that the white operations managers are appointed to that role.

Neely has also submitted deposition evidence that he and Evans complained about what they perceived as unfair practices to FedEx management, and that the managers in question did not agree with their complaints.

The Court concludes that Neely has failed to raise a triable issue of fact regarding the existence of a racially hostile work environment.  "To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual

United States District Court

For the Northern District of California

nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment." *Vasquez*, 349 F.3d at 642. Neely has not submitted any evidence that racial slurs were made against him or any other African American individual; instead, the two comments that Neely found offensive ("Those people are stupid" and "You are OBC"), were not racial. Neely has submitted evidence that a manager made racist comments regarding two Asian American employees. While these comments are offensive and racist, they do not rise to the level of creating a work environment permeated with racism. *See Sanchez*, 936 F.2d at 1031, 1036 (affirming grant of summary judgment on hostile work environment claim where plaintiff alleged employer posted racially offensive cartoon, made racially offensive slurs, and targeted Latinos when enforcing rules).

Neely's remaining evidence in support of his hostile work environment claim does not show that he was "subjected to verbal or physical conduct of a racial nature," nor does it raise a question as to whether the conduct was "sufficiently severe or pervasive enough to alter the conditions" of his employment. *Vasquez*, 349 F.3d at 642. Accordingly, the Court GRANTS defendant's motion for summary judgment on Neely's hostile work environment claim.

**B.      Discipline**

Neely challenges three disciplinary actions as discriminatory: (1) a Performance Reminder on March 31, 1994; (2) a Documented Counseling on October 8, 1999; and (3) a Documented Counseling on July 26, 2002.

**(1)      1994 Performance Reminder**

FedEx argues that any challenge to the 1994 Performance Reminder is time-barred. The Court agrees. Neely argues that this claim is not time-barred because it is part of a continuing violation. As discussed *supra*, this continuing violations theory is unavailing because *Morgan* makes clear that claims based on discrete acts are only timely where such acts occurred within the limitations period. *See Morgan*, 536 U.S. at 122; *see also Lyons*, 307 F.3d at 1107 ("[Plaintiff's] assertion that this series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in

25

1    establishing the employer's liability for acts occurring outside the limitations period because the

2    Supreme Court has determined that each incident of discrimination constitutes a separate actionable

3    unlawful employment practice.").

4

5                    **(2)      1999 Documented Counseling**

6          Although this claim is time-barred under Title VII and FEHA, this claim is timely under § 1981.

7    However, despite the fact that FedEx moved for summary judgment on this claim, none of Neely's

8    oppositions address this documented counseling.  Instead, Neely asserts, without any legal support, that

9    his discipline claims should survive summary judgment because the Drogin report shows that minority

10   employees are more likely to be disciplined.  Neely's reliance on the Drogin report is both inappropriate

11   for the reasons discussed *supra*, and unavailing, because Neely must establish a *prima facie* case of

12   discrimination for his disparate treatment claim.  *See Fonseca v. Sysco Food Servs. of Arizona*, 374 F.3d

13   840, 847-48 (9th Cir. 2004).  Because Neely has failed to advance any argument or cite any evidence

14   whatsoever concerning the 1999 documented counseling, the Court concludes FedEx is entitled to

15   summary judgment.

16

17                   **(3)      2002 Documented Counseling**

18         With respect to Documented Counseling Neely received on July 26, 2002, Neely does not

19   specifically respond regarding this counseling in his amended opposition.  Based on the testimony

20   submitted and the copy of the July 26, 2002 counseling, it appears Neely was disciplined for his failure

21   to cooperate in an investigation by refusing to provide information in response to a complaint that Neely

22   filed.  While this may raise a triable issue of fact regarding whether the 2002 Documented Counseling

23   was retaliatory, plaintiff has not submitted any evidence to suggest that the 2002 counseling was issued

24   on account of his race.  Accordingly, the Court GRANTS defendant's motion for summary judgment

25   on Neely's discipline claim.

26

27   **C.      Compensation**

28         Neely challenges the fact that he started at Pay Grade 25 when he was promoted to Operations

United States District Court

For the Northern District of California

1   Manager in April 1999.  Neely's DFEH complaint was filed on July 5, 2002, and his EEOC charge was

2   filed on  April 16, 2003.  In order to be actionable, a claim under FEHA must be filed with the DFEH

3   within one year of the date on which the allegedly unlawful practice occurred.  *See* Cal. Gov't Code §

4   12760.  Similarly, before an employee may sue an employer under Title VII, he must file a charge with

5   the EEOC within 300 days of the alleged unlawful employment practice.  *See* 42 U.S.C. § 2000-5(e)(1).

6   Accordingly, the Court concludes that Neely's compensation claim is time-barred under Title VII and

7   FEHA.

8          Although Neely's compensation claim is timely under § 1981, Neely has failed to cite any

9   evidence in support of this claim.  Neely asserts in his opposition, without any specific citations to the

10  record, that he has testified that "he and other blacks started at Pay Grade 25 when they began their

11  employment as Operations Managers at FedEx," but that "Leslie Ortiz, Steve Pearson and other

12  Caucasian Operations Managers started off at Pay Grade 26."  For support, Neely does not cite his

13  deposition testimony, and instead generally refers the Court to the deposition of Lasonia Walker,

14  without any specific citation.  Similarly, Neely's opposition asserts that he testified that a white co-

15  worker Mike Kelly received an increase to Pay Grade 26 immediately at the time of his review.

16  However, Neely has not provided the Court with the deposition page cited.  Moreover, even if he had

17  provided the Court with such testimony, the fact that a white co-worker received an "immediate" pay

18  increase while Neely's pay increase was delayed does not, on its own, establish a *prima facie* case of

19  discrimination.  Neely has not submitted any evidence showing that he and Kelly were similarly

20  situated.  *See Fonseca*, 374 F.3d at 846.  Accordingly, the Court GRANTS summary judgment in favor

21  of FedEx.[9]

22

23

24          [9]  Neely's amended opposition also suggests that his compensation claim is based on the
    following theory: "Plaintiff Neely's clear subjection to defendant's systematic pattern and practice of
25  race discrimination against African American managers has a natural adverse impact on terms and
    conditions of plaintiff's employment that has imposed an unequal burden on him in order to work in this
26  racially hostile environment.  Therefore, in fairness, his pay compensation should be greater than those
    who do not have to work in these unlawful conditions.  Based on expert economic evidence, it is
27  anticipated that an equalizer of pay could be at least 1-1/2 times his daily rate since 1998 plus interest
    for his pay compensation claim alone."  8:18-25.  Plaintiff has provided no authority for such a theory,
28  and indeed the Court is unaware of any statute or case law recognizing such a compensation claim.

**United States District Court**

For the Northern District of California

**D.      Retaliation**

Defendant moves for summary judgment on Neely's retaliation claim to the extent that he alleges retaliation based on events that occurred prior to the filing of his DFEH complaint on July 5, 2002.  The Court agrees that to the extent Neely claims he was retaliated against prior to the filing of his DFEH complaint on July 5, 2002, he has failed to establish a causal link between such alleged retaliation and any protected activity.

Neely's second amended opposition does not contend that his retaliation claim is based on events prior to the filing of his DFEH complaint.  Instead, Neely contends that his retaliation claim is based on the following events that occurred after the filing of the July 5, 2002 DFEH complaint, namely (1) a two day suspension he received on July 23, 2002 issued by Robin Van Galder; (2) a July 26, 2002 Documented Counseling he received for refusing to discuss his lawsuit, and which appears to be related to the two day suspension; (3) the fact that Guy Capriulo threatened Neely with termination and gave him a performance reminder in July 2002.

FedEx only addresses one of these claims, the two day suspension issued by Robin Van Galder.[10] FedEx argues summary judgment is appropriate on this retaliation claim because Neely has not introduced any evidence to suggest that Van Galder was aware of Neely's DFEH complaint at the time that Van Galder issued the suspension.  However, Neely's deposition testimony and the July 26, 2002 Documented Counseling indicate that Neely was suspended and later given the Documented Counseling because he filed an internal complaint with FedEx, and then refused to discuss the matter with Van Galder without his attorney.  Neely Depo. 85-86.  Accordingly, the Court concludes that Neely has submitted sufficient evidence to raise a question of fact regarding whether these actions were retaliatory. The Court hereby GRANTS defendant's motion on Neely's retaliation claim to the extent that claim alleges retaliation occurring prior to July 5, 2002, and DENIES defendant's motion to the extent Neely alleges retaliation occurring after July 5, 2002.

**E.      Promotion**

_____

[10] The Court notes that defendant's papers refer to this suspension as occurring on July 26, 2002.

United States District Court

For the Northern District of California

Neely testified that he applied for three promotions at FedEx that he did not receive. First, Neely applied for a Ramp Agent position in 1992 or 1993. Neely Depo. at 118-19. Neely contends that a white employee, Steve Riordan, received that position. *Id.* at 118, 123. Second, Neely applied for the position of Manager of the Daysort Operations in 1999. Neely's then-manager, Angelique Williams, informed him that because of overwhelming response to the job posting, she would be interviewing existing managers only. *Id.* at 126, Exh. 2 (February 16, 1999 letter informing Neely about Manager of the Daysort position). Neely does not know who else applied for this position or who was hired for that position. *Id.* at 126.

Third, Neely testified that he applied for an Operations Manager position. *Id.* at 126. Neely has not submitted any evidence, testimonial or otherwise, regarding when he applied for this Operations Manager position. Neely does not know the identity of the successful candidate. Neely testified that he has never applied for a Senior Manager position. *Id.* at 31, 34-35.

In addition to these specific promotions, Neely contends that FedEx has failed to "groom" him for senior management. Neely's amended opposition asserts that the "failure to place Neely in an 'acting senior manager' position is a rejection of his request for promotion to that position." Amended Opposition at 14:16-18.

### (1)    1992 Promotion

Defendant argues that Neely's claim with respect to the 1992 Ramp Agent position is time-barred under FEHA, Title VII and 42 U.S.C. § 1981. The Court agrees. Neely filed his DFEH complaint on July 5, 2002, and his EEOC charge on April 16, 2003. Douglas Decl. Exh. 18 to Neely Depo. In order to be actionable, a claim under FEHA must be filed with the DFEH within one year of the date on which the allegedly unlawful practice occurred. *See* Cal. Gov't Code § 12760. Similarly, before an employee may sue an employer under Title VII, she must file a charge with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000-5(e)(1). Finally, the earliest possible date for § 1981 liability for this claim is December 12, 1998. Accordingly, this claim is time-barred under all statutes.

United States District Court

For the Northern District of California

**(2)      1999 Promotion**

For the same reasons, Neely's claim with respect to this promotion is time-barred under Title VII and FEHA. With respect to § 1981, at the time Neely applied for the Manager Overgoods position, he was working in a non-management position. Thus, the denial of this promotion was actionable prior to the 1991 Civil Rights Act, and is subject to the applicable state statute of limitations, Cal. Code Civ. Proc. 335.1. *See Sitgraves*, 953 F.2d at 572. The state statute of limitations is one or two years depending on the timing of the claim. *See* California Code of Civil Procedure § 335.1. Here, even if the two year statute of limitations applied, his claim regarding the Manager of the Daysort Operations position expired on February 16, 2001, and thus this claim is beyond the § 1981 statute of limitations.

**(3)      Operations Manager Position**

To the extent Neely alleges a promotion claim based upon the Operations Manager job he applied for, FedEx is entitled to summary judgment because Neely does not address this claim in his oppositions, and has failed to submit any specific evidence regarding this claim.

**(4)      "Grooming" for Senior Management/Acting Senior Manager**

Finally, Neely contends that even though it is undisputed that he has never applied for a Senior Manager position, he nevertheless can establish a claim for failure to promote because FedEx has not groomed him for a senior management role. Neely contends that such grooming includes being allowed to sit in on interview panels to help select new employees; being allowed to attend monthly Core meetings; being mentored by senior managers; and being appointed acting Senior Manager while the Senior Manager was on vacation.

Plaintiff does not provide any authority for his position that the failure to be "groomed" is actionable as a failure to promote. The Court concludes that the failure to be groomed is not actionable as a failure to promote because, *inter alia*, there is no "position" sought and it is unclear how a plaintiff would demonstrate that he or she was "qualified" to be groomed. *See Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 671 (9th Cir. 1988) (stating elements of *prima facie* case for failure to promote).

Similarly, Neely has not provided any authority for his contention that the failure to be appointed

30

United States District Court

For the Northern District of California

into a temporary, acting role is actionable as a failure to promote.  In a somewhat analogous situation, courts have held that denials of promotions into temporary, acting positions constitute "adverse employment actions" only if the temporary, acting position would result in a change in job position, grade, pay, or benefits.  *See Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002) (stating standard); *see also Patterson v. Johnson*, 391 F. Supp. 2d 140, 148 (D.D.C. 2005) (holding failure to select plaintiff as acting deputy director on single day is not adverse employment action).  Here, the acting positions were of limited duration (during the senior manager's vacation), and plaintiffs have not submitted evidence or even contended that the acting positions would lead to an increase in pay or benefits.

Accordingly, the Court hereby GRANTS defendant's motion for summary judgment all of Neely's promotion claims.


**F.      Disparate Impact**

Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  For all of the same reasons as stated *supra*, and in light of Neely's complete failure of proof, the Court GRANTS summary judgment to FedEx on these claims.  (Docket # 92)


**IV.   Summary Judgment as to Pernell Evans**

Plaintiff Evans began working for FedEx on January 24, 1990 as a part-time casual handler.  He was promoted to Courier Handler, Ramp Transport Driver, and then to Operations Manager on February 16, 1998.  Evans continues to work at FedEx.  According to plaintiff, he has the most seniority and experience of the Operations Managers at the San Leandro facility.  Plaintiffs Evans and Neely work at the same facility and they raise many of the same claims based on the same evidence.

Evans filed a complaint with the DFEH on July 6, 2002, and a charge with the EEOC on May 6, 2003.


**A.      Discipline**

Evans alleges that he was discriminated against in terms of discipline.  Defendant argues that the only written discipline Evans received was a performance reminder in October 1991 issued by an

United States District Court

For the Northern District of California

1   African American Operations Manager regarding a vehicle accident.  The Court agrees that to the extent

2   Evans' discipline claim is based on the 1991 discipline, his claim is time-barred.  *See Lyons*, 307 F.3d

3   at 1107.

4       FedEx argues that the other informal "counselings" (discussed in subsection B, *infra*), that Evans

5   received are not adverse employment actions, and that Evans has not shown that they were issued on

6   account of race.  However, as discussed in connection with plaintiff Walker's claims above, the Court

7   disagrees and holds that such informal disciplinary actions can be considered adverse employment

8   actions. *See Fonseca*, 374 F.3d at 847.  Moreover, Evans has submitted evidence showing that his white

9   counterparts were not disciplined for the same infractions.   Accordingly, the Court GRANTS

10  defendant's motion for summary judgment on Evans' discipline claim to the extent it is based on the

11  1991 discipline, and DENIES defendant's motion  with respect to the balance of Evans' claim.

12

13      **B.      Retaliation**

14      Evans filed a DFEH complaint on July 6, 2002 and an EEOC charge in May 2003.  Evans claims

15  that he was retaliated against because (1) in late 2002 and early 2003, he received an email from Van

16  Galder requiring him to take corrective action for allowing an employee to work over 50 hours a week;

17  (2) in February 2003, he received an email from Ev Ray regarding corrective action; (3) his shift was

18  changed in January 2004 to a different work group, thus resulting in Evans being evaluated by a

19  "foreign" group who gave him a deficient "SFA" score; and (4) he received a letter from Van Galder

20  in April 2004 requiring him to report quarterly on his performance after the deficient SFA score.

21  Plaintiff has provided citations to his deposition testimony in support of these contentions.

22      FedEx argues that counselings/corrective emails and the shift change do not constitute adverse

23  employment actions.  However, the Court finds that these disciplinary actions constitute adverse

24  employment actions.  *See Fonseca*, 374 F.3d at 847.

25      FedEx relies on *Wu v. Pacifica Hotel Company*, 2001 WL 492475 (N.D. Cal. Apr. 25, 2001),

26  for the proposition that a shift change cannot, as a matter of law, constitute an adverse employment

27  action.  However, *Wu* is distinguishable in that the plaintiff in *Wu* did not contend there were any

28  negative consequences associated with the shift change.  *Id.* at *7 ("Wu offers no other evidence to show

32

United States District Court

For the Northern District of California

how scheduling him later in the day affects the terms or benefits of his employment. . . . Standing alone, the shift change does not constitute adverse employment action.").  Here, Evans contends that the shift change  adversely affected him because he was moved to a different work group just before the SFA survey, and that as a result he received a lower SFA score than he would have if his shift had not been changed.  Evans also contends, without a citation to the record, that none of his Caucasian counterpart had their shifts changed prior to the SFA survey.

Defendant also argues that Evans cannot demonstrate a causal link for his retaliation claim because some of these events occurred before Evans filed his EEOC charge; however, FedEx ignores the fact that all of the alleged retaliatory events took place after Evans filed his DFEH complaint.

Relying on a Seventh Circuit case, *Salvato v. Illinois Department of Human Rights*, 155 F.3d 922 (7th Cir. 1998), FedEx argues that Evans cannot demonstrate a causal link because the allegedly retaliatory events occurred more than seven months after he filed his EEOC charge.  In *Salvato*, the court held that a six month gap between protected activity and the adverse employment action was too long to establish a causal link between the events.  *Id.* at 925.  However, the Ninth Circuit has not adopted the Seventh Circuit's approach.  *See, e.g., Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).  Accordingly, the Court hereby DENIES defendant's motion for summary judgment on Evans' retaliation claim.

### C.     Compensation

Evans contends that he and other African-Americans started at Pay Grade 25 when they began their employment as Operations Managers at FedEx, and that "Leslie Ortiz, Steve Pearson and other Caucasian Operations Managers started off at Pay Grade 26."  Evans provides no evidence in support of this contention.  Evans was promoted to Operations Manager on February 16, 1998.

The Court concludes that Evans' compensation claim is time-barred under Title VII, FEHA and § 1981.  Evans' DFEH was filed on July 6, 2002, and his EEOC charge was filed on May 6, 2003.  In order to be actionable, a claim under FEHA must be filed with the DFEH within one year of the date on which the allegedly unlawful practice occurred.  *See* Cal. Gov't Code § 12760.  Similarly, before an employee may sue an employer under Title VII, he must file a charge with the EEOC within 300 days

33

United States District Court

For the Northern District of California

of the alleged unlawful employment practice.  *See* 42 U.S.C. § 2000-5(e)(1).  Finally, the earliest possible date for § 1981 liability is December 12, 1998.  Accordingly, the Court concludes that Evans' compensation claim is time-barred under Title VII, FEHA and § 1981, and hereby GRANTS summary judgment to defendant on this claim.[11]

### D.    Promotion

Evans has never applied for any promotions.  Instead, his promotion claim is essentially identical to that raised by Neely, namely that he was not groomed for senior management, and relatedly, that he was not given an opportunity to serve as "acting Senior Manager" in the absence of his Senior Manager. Neely has submitted deposition testimony that he expressed his interest in working as an acting Senior Manager, but that his Caucasian supervisors have never appointed him to that role.  Evans does not contend, and has not submitted any evidence showing, that an appointment as acting Senior Manager while the Senior Manager is on vacation would result in an increase in pay or benefits.

For the reasons set forth above in Section III.E.3. *supra*, the Court concludes that these claims are not actionable and accordingly GRANTS defendant's motion for summary judgment on Evans' promotion claim.

### E.    Hostile Work Environment

Evans' hostile work environment claim is virtually identical to Neely's hostile work environment claim, and Evans and Neely rely on virtually identical evidence in support of their claims.[12]  For the

---

[11]  Evans' amended opposition also suggests that his compensation claim is based on the following theory: "Plaintiff Evans' clear subjection to defendant's systematic pattern and practice of race discrimination against African American managers has a natural adverse impact on terms and conditions of plaintiff's employment that has imposed an unequal burden on him in order to work in this racially hostile environment.  Therefore, in fairness, his pay compensation should be greater than those who do not have to work in these unlawful conditions.  Based on expert economic evidence, it is anticipated that an equalizer of pay could be at least 1-1/2 times his daily rate since 1998 plus interest for his pay compensation claim alone."  8-9.  Plaintiff has provided no authority for such a theory, and indeed the Court is unaware of any statute or case law recognizing such a compensation claim.

[12]  Evans has also submitted deposition testimony that Perry threatened to "kick the asses" of the managers (Evans Depo. 120-121), and Evans interpreted that comment to refer to himself and Neely. For the reasons set forth *supra*, even if this comment was referring to Evans and Neely, the Court

reasons set forth in Section IV.A., the Court hereby GRANTS defendant's motion for summary judgment on Evans' hostile work environment claim.

**F.      Disparate Impact**

Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  For all of the same reasons as stated *supra*, and in light of Evans' complete failure of proof, the Court GRANTS summary judgment to FedEx on these claims.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendant's motions for summary judgment against plaintiffs Walker, Brown, Neely and Evans [## 92, 94, 95, 98].

Dated: March 10, 2006

_____
SUSAN ILLSTON
United States District Judge

concludes that this comment, combined with the other evidence, is insufficient to raise a triable issue of fact regarding hostile work environment.
Evans also submitted the declaration of Daryl Adams, which states that in 2004, Mr. Adams (a FedEx employee) felt coerced into implicating Evans by signing a letter that Evans had failed to abide by FedEx policy. Evans has not submitted any evidence suggesting that this incident, which is described in vague and general terms in the Adams declaration, was racial. To the extent that Evans contends this incident was retaliatory, Evans may pursue this incident as part of his retaliation claim.