1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   EDWARD ALVARADO, et al.                    No. C 04-00098 SI

9              Plaintiffs,                      **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANT'S**
10     v.                                       **MOTION FOR SUMMARY JUDGMENT
                                                AS TO EDWARD ALVARADO AND**
11  FEDEX CORPORATION,                          **GRANTING DEFENDANT'S MOTION
                                                FOR SUMMARY JUDGMENT AS TO**
12             Defendant.                       **MARIA MUNOZ**
                                      /
13

14

15         On November 11, 2005, the Court heard oral argument on defendant's motions for summary

16   judgment as to plaintiffs Edward Alvarado and Maria Munoz.  Having carefully considered the

17   arguments of counsel and the papers submitted,[1] the Court hereby GRANTS in part and DENIES in part

18   defendant's motion as to plaintiff Edward Alvarado (Docket # 224), and GRANTS defendant's motion

19   as to plaintiff Maria Munoz (Docket # 223).

20

21                              **LEGAL STANDARD**

22         Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

23

24         [1] The Court notes that on December 16, 2005, at the oral argument on defendants' motions for
     summary judgment as to plaintiffs White and Rivera in *White et al. v. FedEx Corp. et al.*, 04-0099 SI,
25   plaintiffs' counsel attempted to file the "Declaration of Kay McKenzie Parker of 12-15-05 with
     Attached Affidavit of Devon Butler in Support of Gary White's Opposition to All Motions for Summary
26   Judgment." That document discusses plaintiff Edward Alvarado. The Court rejected the untimely filing
     of the declaration with respect to the White summary judgment motions.  This declaration is also
27   untimely with respect to the instant motions, and thus the Court will not consider this declaration in
     connection with defendant's motion for summary judgment against Mr. Alvarado. *See* Civil Local Rule
28   7-3(a), (d).

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Defendant FedEx has filed summary judgment motions against plaintiffs Edward Alvarado and Maria Munoz. Both of these plaintiffs assert claims for disparate impact and disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the California Fair Housing and Employment Act ("FEHA"), Cal. Gov. Code § 12940, as well as claims for intentional discrimination under 42 U.S.C. § 1981.

As a general matter, the Court observes that plaintiffs' opposition briefs contain fairly long statements of facts, and argument sections that are often devoid of specific details and/or citations to evidence. Plaintiffs submitted numerous declarations with voluminous exhibits, yet for the most part the opposition briefs do not contain any citations to these documents. Moreover, on several occasions

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

when plaintiffs actually provide citations to evidence, plaintiffs did not actually submit the evidence cited.[2]  However, it is not the Court's task to "scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996), and "it need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could be conveniently found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

As a general matter, plaintiffs contend that summary judgment on many of their claims would be inappropriate in light of the fact that the Court has certified a class action in *Satchell et al. v. FedEx Corp.*, 03-2659 SI ("*Satchell*").  Plaintiffs contend that if the Court grants summary judgment in favor of FedEx on any of plaintiffs' claims, this would result in "inconsistent" judgments.

The Court disagrees.  Both Alvarado and Munoz were originally listed as plaintiffs in the *Satchell* action, and they decided to sever their claims and file the instant individual actions while the class case was pending.  Thus, they made the decision to pursue their individual claims outside the class context.  The language plaintiffs refer to regarding "inconsistent judgments" is from Federal Rule of Civil Procedure 23(b)(1)(A), which provides that a class action may be maintained if, *inter alia*, "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . . ."  Fed. R. Civ. P. 23(b)(1)(A).

This Rule does not require that defendant's motions for summary judgment be denied, because a finding that any of the plaintiffs has not raised a triable issue of fact with respect to his or her claims would not "establish incompatible standards of conduct" for FedEx.  The Court's conclusion in this case that some of the plaintiffs' claims are time-barred, or that plaintiffs have failed to submit sufficient evidence to survive summary judgment would have no consequence whatsoever for the class claims in *Satchell*.

Conversely, plaintiffs suggest that the Court's certification of the *Satchell* case somehow

---

[2] For example, on page 13 of his opposition, plaintiff Alvarado cited pages 26, 93, 167, and 228 of his deposition.  However, none of these pages were attached to the McCoy Declaration.

United States District Court

For the Northern District of California

precludes an adverse ruling in this case.  However, as plaintiffs well know (particularly since counsel for plaintiffs are also class counsel in the *Satchell* case), the Court's certification of a class in the *Satchell* case was *not* a ruling on the merits of the class claims.  Simply put, the certification of the *Satchell* case has no bearing on whether summary adjudication is appropriate in this case.

## I.      Summary Judgment as to Edward Alvarado

Plaintiff Edward Alvarado is Mexican-American.  Alvarado was hired by FedEx in 1994 as a part-time handler at the Sunnyvale station.  He held that position until January 4, 1998, when he became a full-time shuttle driver.  Alvarado is currently working at FedEx as a full-time shuttle driver.

Alvarado alleges that FedEx has discriminated against him on the basis of his race with respect to promotions, work assignments, and discipline, and that he has been subjected to a racially hostile work environment.  Alvarado also alleges that FedEx has retaliated against him for making complaints.  Finally, Alvarado contends in his briefing that FedEx discriminated against him on the basis of his age and disabilities, and that FedEx failed to reasonably accommodate his disabilities; the parties dispute whether he has alleged either age or disability discrimination claims in the First Amended Complaint.

Alvarado filed a complaint with the DFEH on May 16, 2001 alleging that FedEx failed to accommodate a disability (enlarged prostate).  McCoy Decl. Ex. E.  On June 11, 2002, Alvarado filed a second complaint with the DFEH alleging discrimination based on age and race/color.  *Id.* Ex. F.  On December 10, 2002, Alvarado filed a third complaint with the DFEH claiming that he was harassed on account of his age, race/color, and national origin/ancestry.  *Id.* Ex. G.  On September 23, 2004, Alvarado filed a fourth and amended complaint with the DFEH alleging he was denied an accommodation and retaliated against on account of an investigation (retaliation), and his age and race/color.  *Id.* Ex. H.  Alvarado filed a charge with the EEOC in 2003 alleging retaliation and race-based discrimination with respect to compensation, promotions and the terms and conditions of his employment.  *Id.*[3]

---

[3]  Alvarado's EEOC charge is dated February 12, 2003, but it is unclear from the record when the charge was actually filed with the EEOC.

**A.     Hostile Work Environment**

Alvarado contends that he was subjected to a racially hostile work environment.  Alvarado's hostile work environment claim is based on the following: (1) in 1994 a manager, Aaron Holstein, called a Latino employee a "lazy wetback" and (2) Alvarado was repeatedly assigned the more laborious "top deck" work with other African-American and Latino employees, while Caucasian co-workers with less seniority were allegedly assigned slow paced and less dangerous tasks.[4]  Alvarado has submitted excerpts from his deposition in which he testified that he and other African-American and Latino employees were assigned to the "top deck"; that he had more seniority than the other employees assigned to the "top deck"; that some Caucasian employees were required to work on the "top deck"; and that some Caucasian employees with less seniority were not required to work on the "top deck".

In the Ninth Circuit, courts employ a totality of the circumstances test in determining whether a plaintiff has established a hostile work environment, considering factors such as: "[the] frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001).  To constitute harassment, the workplace must be both subjectively and objectively abusive.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

The Court concludes that despite the unpleasant nature of the "top deck" working conditions, the Court cannot find a genuine question of material fact regarding whether a reasonable person of plaintiff's race or national origin would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment.  *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).  Alvarado has only testified to a single racially offensive comment that was allegedly made in 1994.  The Ninth Circuit has concluded that similar allegations do not rise to the level of creating a hostile work environment.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003); *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990).  Accordingly, the

---

[4] Alvarado also describes other incidents in his statement of facts, but the argument section of his brief only mentions the 1994 comment and the "top deck" job assignments.

United States District Court

For the Northern District of California

1    Court GRANTS defendant's motion for summary judgment on this claim.

2

3        **B.    Retaliation**

4        FedEx contends that Alvarado cannot establish a *prima facie* claim of retaliation because he

5    cannot show that he was subjected to an adverse employment action, and he cannot demonstrate a causal

6    link between any protected activity and any allegedly retaliatory actions. In order to establish a prima

7    facie case of retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) his employer

8    subjected him to an adverse employment action; and (3) there is a causal link between the protected

9    activity and the adverse action. *See Ray v. Henderson*, 217 F.3d 1234, 1239 (9th Cir. 2000).

10        The Court concludes that Alvarado has established a *prima facie* case sufficient to withstand

11   summary judgment.  Alvarado contends he engaged in protected activity by filing internal complaints

12   at FedEx as early as 1999 complaining of race discrimination, administrative complaints with the DFEH

13   and EEOC from 2001 through 2004, and this lawsuit in 2002.  The Court agrees that these complaints

14   are protected activity which might provide the predicate for claims of retaliation as to actions which

15   occurred after his internal FedEx complaints.

16        The Court also concludes that Alvarado has raised a triable issue of fact with regard to whether

17   he was subjected to adverse employment actions.   The Ninth Circuit broadly defines "adverse

18   employment action" to include "a wide array of disadvantageous changes in the workplace." *See Ray*,

19   217 F.3d at 1241.  Alvarado contends that as a result of his complaints he was subjected to a variety of

20   retaliatory actions, including being assigned disadvantageous and high risk jobs, receiving an unfair job

21   evaluation, not being allowed reasonable lunch breaks, having his schedule changed without

22   notification, and not being allowed various accommodations for his prostate condition and back

23   problems.

24        FedEx argues that Alvarado has only been required to perform duties that fall within his job

25   description.  Even if this is true, however, Alvarado contends that FedEx intentionally gave him the

26   most laborious and physically demanding duties, despite the fact that management was aware of his

27   back problems and prostate condition.  Accordingly, the Court hereby DENIES summary judgment on

28   Alvarado's retaliation claim.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

**C.    Promotion**

FedEx moves for summary judgment on Alvarado's promotion claim based on Alvarado's deposition testimony (1) that there are no hourly positions for which he sought a promotion that he did not receive, and (2) that he has never applied for a management position. *See* Alvarado Depo. at 9, 29. FedEx contends that Alvarado cannot establish a *prima facie* case.

The Court agrees.  In order to establish a *prima facie* case on his promotion claim, Alvarado must show that (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was denied the promotion; and (4) individuals outside of the protected class were promoted.  *See Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 671 (9th Cir. 1988).  Alvarado's opposition states that his promotion claim "rests in part upon his understanding that under FedEx's policy, applying for a promotion requires risking that you lose your present position. . . . Plaintiff's inability to apply for a job since becoming a Shuttle Driver is the result of FedEx policies that effectively allow managers excessive discretion and room for discrimination and retaliation in job selection."  Opposition at 20.  Thus, Alvarado concedes that he has not applied for any promotions since he became a shuttle driver.

Alvarado's opposition does not state whether his promotion claim challenges events that occurred before he became a shuttle driver.  Even if this is the case, these claims are time-barred under FEHA, Title VII and § 1981.  Alvarado became a full-time shuttle driver on January 4, 1998.  Alvarado Depo. Ex. 3.  Alvarado's earliest administrative charge was filed on May 16, 2001 with the DFEH, and that complaint did not even allege discrimination with respect to promotions.  Alvarado Decl. Ex. E. The earliest date for § 1981 liability is December 12, 1998,[5] well after Alvarado became a full-time

---

[5]  Alvarado filed his original complaint in state court on December 12, 2002, alleging claims under state law.  After defendant removed the complaint to this Court, and after Alvarado severed his claims from the *Satchell* case, he filed an amended complaint in January 2004 alleging a claim under 42 U.S.C. § 1981.  Alvarado's claims under Section 1981 relate back to the date the original complaint was filed because the claims asserted "arose out of the conduct, transaction, or occurrence set forth" in the original state complaint. Fed. R. Civ. Proc. 15(c)(2); *see also Martell v. Trilogy, Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989).  Defendant's reliance on *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975), to argue that the amended complaint should not relate back is unavailing because *Johnson* simply held that the statute of limitations for a Section 1981 claim is not tolled while a plaintiff is exhausting administrative remedies prior to filing suit.  *Id.* at 461-66.

The Court directed the parties to brief whether the November 2003 stipulation in *Satchell*, which allowed, *inter alia*, the plaintiffs in *Alvarado* and *White* to sever their cases and file amended complaints, had any effect on the Section 1981 liability period in *Alvarado* and *White*.  The Court

shuttle driver.

Accordingly, the Court hereby GRANTS defendant's motion for summary judgment on the promotion claim.

**D.      Discipline**

FedEx moves for summary judgment on Alvarado's discipline claims, contending that Alvarado cannot provide any evidence that he was disciplined on account of his race.  FedEx's motion for summary judgment identifies four disciplinary actions taken against Alvarado: (1) a November 19, 1999 documented counseling for "unacceptable conduct" based on Alvarado's comments in the workplace after another employee, Gary White, was suspended; (2) a July 16, 2001 performance reminder for being involved in 1 "preventable accident" and 1 "preventable occurrence" within the previous 18 months; (3) a meeting in March or April 2004 between Alvarado and a supervisor regarding his violation of the Department of Transportation's 10-hour rule requiring employees to have 10 hours off from work between shifts; and (4) an April 28, 2004 online counseling for exceeding the DOT's 14-hour rule prohibiting drivers from driving more than 14 hours after they have clocked in.  Motion at 13-14; Douglas Decl. Ex. 1, 5, 6. FedEx argues summary judgment is appropriate because Alvarado admitted in his deposition that he did not know if the 1999 documented counseling was discriminatory, because the 2001 performance reminder does not constitute an "adverse employment action," and because Alvarado does not dispute that he was in violation of the DOT's 10-hour and 14-hour rules in 2004.

Alvarado's opposition does not address any of these arguments, nor does it specifically address any particular instance of discipline.[6]  Instead, Alvarado contends that summary judgment is inappropriate because under a disparate impact theory, plaintiff need not prove an intent to discriminate, but rather need only show that the employment practice has an adverse impact on a protected class.

concludes that the stipulation has no bearing on the Section 1981 liability period in these cases, and rejects plaintiffs' arguments to the contrary.

[6]  In the "Statement of Facts" section of his opposition, Alvarado states that the 1999 performance reminder was unfair.  *See* Opposition at 9-10.  Alvarado also mentions the April 2004 discipline, although he does not state that it was unwarranted or discriminatory. *Id.* at 15.  Alvarado's brief does not mention the 2001 discipline.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

Alvarado also argues that summary judgment should be denied because of the Court's certification of a class in the *Satchell* case.

The Court concludes that Alvarado has failed to come forward with any evidence sufficient to withstand summary judgment on his discipline claims.  As a general matter, the fact that Alvarado has alleged a disparate impact theory does not relieve him of the requirement of showing, under a disparate treatment theory, that the discipline he received was discriminatory and/or unwarranted.  *See Fonseca v. Sysco Food Servs. of Arizona*, 374 F.3d 840, 847-48 (9th Cir. 2004).  Alvarado cannot escape summary judgment by completely failing to address the specifics of his discipline claim.

The Court concludes that Alvarado has not submitted any evidence to suggest that the 1999 documented counseling was discriminatory.  Alvarado does not dispute that he made the comments for which he was disciplined, nor has he submitted any evidence that non-minority employees have engaged in similar behavior without being disciplined.  *Id.* at 848.  With respect to the 2001 performance reminder, Alvarado has not addressed this discipline anywhere in his brief , and accordingly the Court concludes that Alvarado has abandoned any claim that the issuance of the performance reminder was discriminatory.  Finally, with respect to the incidents in 2004 regarding violations of DOT rules, Alvarado has not submitted any evidence to suggest that the disciplinary actions taken were discriminatory, nor does he dispute that he was in violation of those rules.  Indeed, Alvarado testified in his deposition that he was in violation of the 14-hour rule.  *See* Alvarado Depo. at 96-97.

Accordingly, the Court GRANTS defendant's motion for summary judgment on Alvarado's discipline claims.

### E.      Discrimination Regarding Assignments

Alvarado contends that he was repeatedly given the most demanding and physically challenging jobs at the facility, and that FedEx made such assignments on account of his race.  Alvarado contends that he was assigned to the "top deck" along with other African-Americans and Latinos, that he was given routes with heavier pickups, and that he was expected to perform unreasonably long stretches of work without a break.  Alvarado does not provide any citations to evidence in the argument portion of his brief.

United States District Court

For the Northern District of California

The Court concludes that Alvarado has raised a triable issue of fact with respect to whether his assignment to the "top deck" was discriminatory, and accordingly DENIES summary judgment on this claim.  With respect to Alvarado's allegation that he was given routes with heavier pick ups and that he was expected to work for long stretches without breaks, it is difficult to specifically identify the nature of these claims due to Alvarado's briefing.  The only evidence that Alvarado has submitted suggesting racial discrimination with respect to route assignments is the following:  Alvarado testified at his deposition that during 2000, he and a Caucasian co-worker were required to split an unusually heavy delivery route, and that his Caucasian co-worker routinely received help from management with the route while Alvarado did not receive help.  *See* Alvarado Depo. at 55-56.  The Court concludes that Alvarado has raised a triable issue of fact with respect to whether this assignment was discriminatory, and accordingly DENIES summary judgment on this claim.

However, because Alvarado has not identified any evidence suggesting that race played a part in other route assignments, or in the setting of his schedule, the Court hereby GRANTS summary judgment to the extent that Alvarado challenges these assignments as discriminatory.

### F.     Age Discrimination

FedEx contends that Alvarado did not allege a claim for age discrimination in the Complaint. Citing paragraphs 51, 55 and 58 of the Complaint, Alvarado maintains that he did plead an age discrimination claim under the ADEA and Title VII, and that summary judgment is not appropriate.  *See* Opposition at 23.

As an initial matter, the Court notes that Alvarado did not plead a claim under the Age Discrimination Employment Act; the First Amended Complaint only contains claims under Title VII, 42 U.S.C. § 1981, and FEHA.  In addition, as a matter of law, Alvarado cannot plead a claim for age discrimination under Title VII.  *See* 42 U.S.C. § 2000e-2 (prohibiting discrimination on the basis of race, color, religion, sex, or national origin).

Moreover, upon review of the First Amended Complaint, the Court concludes that Alvarado has not pled an age discrimination claim under any cause of action, and thus this claim is not part of this case.  The three paragraphs of the Complaint upon which Alvarado relies do not allege an age

discrimination claim.  Paragraph 51 makes no reference whatsoever to Alvarado's age or any age discrimination.  Paragraph 55 does reference Alvarado's age, but does so in the context of his race discrimination and retaliation claims:

> Upon arrival of supervisors Motter and Meek at the Sunnyvale facility, defendant stopped rotating Shuttle Drivers through the facility.  Moreover, defendant, in retaliation for his FEHA claim and in order to harass plaintiff, frequently assigned plaintiff Alvarado to duties on the "Soup Can," the most demanding station at Topside. Defendant has not assigned any non-minority Shuttle Drivers to Topside, instead assigning them to light duties at Dock Sort or slow stations on the Line.  Defendant has assigned plaintiff to Topside despite the fact that many of the non-minority Shuttle Drivers are much younger, stronger and more vigorous than he is.  Plaintiff is one of the older and more senior employees at the Sunnyvale Facility.

FAC ¶ 55.  Similarly, paragraph 58 mentions Alvarado's age in the context of his race discrimination claim:

> In June 2000, plaintiff suffered a work-related injury to his lower back and shoulder from the heavy lifting at Topside.  Plaintiff suffered the injury after having complained to supervisor Meek of feeling a slight strain in his shoulder.  On occasions when non-minority employees have complained of feeling at risk of injury, defendant has assigned them to lighter duty in other areas of the Facility to avoid injury.  Supervisor Meek ignored plaintiff's complaints even though his age and physical limits would have favored exercising caution on defendant's part.

FAC ¶ 58.  The Court concludes that there is no language in Paragraphs 51, 55 or 58 that would put defendant on notice that Alvarado was alleging a separate age discrimination claim.  Indeed, there is not a single age discrimination allegation with respect to Alvarado anywhere in the complaint.

The Court concludes that Alvarado has not pled an age discrimination claim, and that this claim is not a part of this case.  The Court will not permit Alvarado to assert this claim for the first time in his opposition to defendant's motion for summary judgment, after the close of discovery.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) (holding plaintiffs could not raise disparate impact theory not pled in complaint for first time at summary judgment after close of discovery).

Plaintiff contends that defendant will not be prejudiced by his age discrimination "claim" because FedEx was put on notice of that claim through Alvarado's administrative complaints with the DFEH.   Although it is true that Alvarado alleged age-based discrimination in several of his administrative complaints, that does not excuse his failure to allege any age discrimination claims in his complaint.  It is often the case that individuals allege multiple claims in the administrative context and then, for whatever reason, do not pursue certain claims in court.  FedEx was not put on notice of

United States District Court

For the Northern District of California

1  plaintiff's age discrimination claims by the language of the complaint, and indeed this is made clear by

2  the fact that FedEx's motion for summary judgment did not address any age discrimination claim.  For

3  all of the foregoing reasons, the Court concludes that Alvarado has not pled an age discrimination claim

4  in this case.[7]

6  ### G.    Disability Discrimination/Failure to Accommodate

7  As with the age discrimination claim, FedEx contends that Alvarado did not plead any disability

8  discrimination claims in the complaint.  Citing paragraphs 51-53 and 58-59 of the Complaint, Alvarado

9  claims that he did plead disability discrimination and failure to accommodate claims under FEHA, and

10  that summary judgment is inappropriate.

11  The Court concludes that Alvarado did not allege a separate disability discrimination claim in

12  the Complaint, and thus that these claims are not a part of this case.  Although paragraphs 51-53 and 58-

13  59 state that FedEx failed to reasonably accommodate plaintiff's back injuries and prostate condition,

14  these factual allegations are framed within the context of racial discrimination and retaliation.  For

15  example, paragraph 51 alleges:

> After the arrival of supervisor Meeks as an Operations Manager at the Sunnyvale Facility, defendant's *racially discriminatory* practices intensified.  In December 2000, defendant discriminated against plaintiff by refusing to reasonably accommodate plaintiff's prostate condition.  Defendant did so, despite its routine practice of readily accommodating *non-minority* workers with physical disabilities and workplace injuries.
> . . .

FAC ¶ 51 (emphasis added).  Similarly, paragraph 58, quoted in full *supra*, alleges that "when non-minority employees have complained of feeling at risk of injury, defendant has assigned them to lighter duty in other areas of the Facility to avoid injury."  FAC ¶ 58.  Paragraph 59 likewise alleges:

> Plaintiff received a physician's restriction to light work upon examination the next day.  Though defendant agreed to accommodate plaintiff's work restrictions by providing him

---

[7] Moreover, the Court concludes that even if Alvarado had alleged an age discrimination claim, summary judgment would be appropriate because Alvarado only relies on  (1) inadmissible hearsay within hearsay in the form of his deposition testimony that a co-worker told him that a manager said in 1994 that he was "going to get rid of a lot of these old people here, the people that have been here a long time," (Alvarado Depo. at 125:4-18); and (2) his deposition testimony that in 2002 and 2004 two managers (neither of whom allegedly made the 1994 comment) allegedly prevented Alvarado's assistant from helping him.  Alvarado did not submit any evidence to suggest that these actions in 2002 or 2004 were on account of his age.

with a Handler to ride his routes with him to manage packages and by temporarily reassigning him to Dock Sort, defendant forced plaintiff to use four of the five days he is given as an employee.  Defendant treated plaintiff in a *racially discriminatory* fashion by failing to provide him with work accommodations immediately.  Defendant routinely provides *non-minority* employees with immediate work accommodations to help avoid the necessity of using sick days when they are physically capable of coming to work.

*Id.* ¶ 59 (emphasis added).  Moreover, none of the FEHA allegations mention a disability-based discrimination claim on behalf of Alvarado.  *See id.* ¶¶ 306-19.

The Court concludes that Alvarado has not pled any disability discrimination/failure to accommodate claims, and that these claims are not a part of this case.  The Court will not permit Alvarado to assert these claims for the first time in his opposition to defendant's motion for summary judgment, after the close of discovery and less than two months before trial.  *See Coleman*, 232 F.3d at 1292-93.  The Court also rejects plaintiff's arguments that FedEx was on notice of these claims due to the administrative complaints, and that FedEx will not be prejudiced by allowing these claims to proceed.  To the contrary, the Court finds that if Alvarado were allowed to assert these disability claims for the first time at this late stage in the litigation, discovery would necessarily need to be reopened so that FedEx could conduct discovery and motion practice on, *inter alia*, (1) whether Alvarado's back injuries and prostate condition limit a major life activity under FEHA; (2) the circumstances surrounding each of Alvarado's "requests" for a "reasonable accommodation;" and (3) whether the accommodations that Alvarado sought were reasonable.  This is not reasonable at this stage of the litigation.

For all of these reasons, the Court hereby concludes that Alvarado has not alleged any disability-based discrimination claims in the Complaint, and that these claims are not a part of this case.

### H.    Disparate Impact

Defendant has moved for summary judgment on plaintiffs' disparate impact claims.  The Court notes that although the complaint alleges disparate impact claims with respect to promotion, compensation and discipline, these claims have never been litigated in any meaningful way.  Instead, the focus of this litigation has been plaintiffs' claims for disparate treatment.

Indeed, Alvarado devotes a total of three paragraphs of his opposition to his disparate impact claims; these paragraphs consist of conclusory allegations and are devoid of any analysis or discussion

of the facts of this case.  In a footnote, again without any analysis whatsoever, Alvarado refers the Court

to three paragraphs contained in the statistical report prepared by Dr. Richard Drogin in connection with

the plaintiffs' motion for class certification in *Satchell*.  The Court concludes that Alvarado's citation

of Dr. Drogin's report is inappropriate because plaintiffs have not designated Dr. Drogin as an expert

in this case.  Moreover, the Court notes that the three paragraphs Alvarado cites relate to discipline, and

apparently Alvarado has abandoned his disparate impact claims concerning compensation and

promotion.

Alvarado also contends that the Court should deny summary judgment on his disparate impact

claims in light of the Court's certification of the *Satchell* case.  However, as stated *supra*, the Court's

conclusion that Alvarado has failed to submit any evidence or advance any argument whatsoever in

support of his disparate impact claims concerning promotion and compensation, and that he has failed

to submit any admissible evidence in support of his disparate impact claim concerning discipline, has

no effect whatsoever on the class claims in *Satchell*.  The claims in *Satchell* will be determined at the

appropriate time based on the evidence submitted by the litigants in that case.  Alvarado's failure of

proof in this case is independent of *Satchell*, and, based on that failure of proof, the Court GRANTS

summary judgment to FedEx on Alvarado's disparate impact claim.

## II.      Motion to Strike Defendant's Motion for Summary Judgment as to Maria Munoz

Plaintiff has filed a motion to strike FedEx's motion for summary judgment as untimely and on

the ground that FedEx did not seek leave of the Court to file the untimely motion.  FedEx responds that

Munoz's deposition was not concluded until August 31, 2005, and that FedEx filed the motion soon

thereafter on September 2, 2005.

The Court concludes that plaintiff has not been prejudiced by the fact that FedEx's motion was

not filed earlier, and that FedEx has shown good cause for the untimely filing.   Moreover, the Court

notes that the schedule for filing dispositive motions has been repeatedly modified, and that most of the

motions for summary judgment in this case were not filed and argued according to the original schedule.

Accordingly, the Court DENIES plaintiff's motion to strike.

14

United States District Court

For the Northern District of California

### III.     Summary Judgment as to Maria Munoz

Plaintiff Maria Munoz began her employment with FedEx on or about December 7, 1988, in the position of part-time customer service agent ("CSA") at a business service center on Park Avenue in San Jose, California.  Munoz was promoted in 1991 to a full-time senior agent position in the San Jose station.  Chris Matthews was Munoz's Senior Manager from approximately November 2000 until approximately July 2002.  When Matthews was transferred in 2002, Angela Suazo became the Senior Manager.  Munoz alleges that Matthews sexually harassed her and retaliated against her, and that Suazo also retaliated against her.

From 1991 until 2002, Munoz worked in a FedEx warehouse.  In 2002, Munoz became a trace agent by replacing an employee who went on disability leave.  The trace agent position was an "inside" office position which was not located in the warehouse.

On May 13, 2003, FedEx suspended Munoz's employment. FedEx ultimately terminated Munoz as a result of this suspension on the grounds that she had received three written warnings in a 12 month period.

Munoz filed a complaint with the DFEH on June 6, 2002, stating that Senior Manager Chris Matthew discriminated against her on the basis of her sex and race.  Munoz Decl. Ex. F.  Munoz filed another complaint with the DFEH on July 18, 2002, stating that Senior Manager Angela Suazo harassed her and retaliated against her.  *Id.*  Munoz filed a third complaint with the DFEH on March 17, 2003, again stating that Souza was retaliating against her.  *Id.* at Ex. H.  Munoz filed a charge with the EEOC in March or April of 2003, alleging race-based discrimination with regard to promotions, compensation, and the terms and conditions of her employment, as well as retaliation.  *Id.*

### A.     Promotion

Munoz alleges that FedEx discriminated against her from 1990 to 2002 by failing to "promote" her out of the warehouse to a customer service agent position in the front office.  Munoz contends that although the salary is the same for a warehouse job and a customer service agent position, the CSA position "is considered a promotion because of the undesirability of the warehouse position – i.e., it is a promotion in stature and working conditions."  Opposition at 9.  Munoz cites her declaration to

United States District Court

For the Northern District of California

1  support her assertion that "she constantly requested a job change out of the warehouse to an inside job,

2  at the counter or elsewhere, as a trace agent or otherwise," *id.* Munoz's declaration does not actually

3  state that she requested any such "promotions."  *See* Munoz Decl. ¶ 3.

4  　　　FedEx has moved for summary judgment on Munoz's promotion claims on the grounds that they

5  are untimely and that Munoz has failed to make out a *prima facie* case.  The Court concludes that even

6  if Munoz's claims are timely, she has failed to submit any evidence that she applied for a "promotion."

7  Munoz's opposition acknowledges that the warehouse and office positions paid the same salary and had

8  the same job title.  *See* Opposition at 9, 12.  Munoz contends that the transfer is a "promotion" because

9  the job conditions inside the office were more desirable.  Munoz has not cited any authority for this

10  proposition.  The Court concludes that such a transfer does not constitute a "promotion" because it does

11  not involve an increase in pay, benefits, or job responsibilities, and accordingly GRANTS summary

12  judgment on Munoz's promotion claim.

13

14  **B.     Discipline**

15  　　　FedEx moves for summary judgment on Munoz's discipline claims, contending that she cannot

16  show that she was disciplined on account of her race or sex.  FedEx addresses various types of discipline

17  that Munoz received, including performance reminders, online counselings, and discipline related to

18  customer complaints.  Munoz's opposition narrowly responds that the discipline she received due to

19  customer complaints was racially motivated.  Thus, the Court concludes that Munoz has abandoned her

20  challenge that any discipline was issued on account of her sex, and that any discipline other than that

21  connected to the customer complaints was issued on account of her race.  (Munoz's opposition does

22  contend that much of the discipline she received was retaliatory; those claims are discussed in Section

23  III.D *infra.*)

24  　　　According to FedEx, Munoz was disciplined on at least 5 occasions due to customer complaints.

25  Defendant's moving brief describes in detail each of the customer complaints that was filed regarding

26  Munoz, as well as the discipline that Munoz received, either in the form of a online counseling or a

27  warning letter.  *See* Defendant's Motion at 7-10.  Munoz was terminated in May 2003 because she

28  received 3 disciplinary warnings within 12 months, and one of those warnings was related to customer

1    complaints.  *See* Munoz Decl. Ex. A (termination letter).

2         Munoz's sole response in her opposition is contained in seven lines of text.  Munoz asserts that

3    summary judgment is inappropriate because (1) she knew customer complaints had been lodged against

4    non-Latino "comparator" employees, and to her knowledge non-Latino CSAs were not terminated for

5    customer complaints, and (2) FedEx policy allowed for manager discretion in how to deal with any

6    customer complaint against a CSA.  *See* Opposition at 15:17-24.  Munoz does not address the specifics

7    of any particular instance of discipline, either with regard to herself or the "comparator" employees.

8         Munoz has failed to establish a *prima facie* case that the discipline she received as a result of

9    customer complaints was discriminatory.  Although Munoz asserts that non-Latino CSA *were not*

10   *terminated* as a result of customer complaints, an assertion the Court addresses below, Munoz does not

11   assert, or submit any evidence showing, that non-Latino CSA *were not disciplined* in connection with

12   customer complaints.  Munoz testified at her deposition that she was aware that customers had made

13   complaints against non-Latino CSAs.  However, Munoz has not submitted evidence that the other CSAs

14   were not disciplined as a result of the customer complaints.  Thus, to the extent Munoz challenges the

15   issuance of warning letters or counselings in connection with the customer complaints, her claim fails.

16   *Cf. Fonseca*, 374 F.3d at 847-48 (holding Hispanic plaintiff established *prima facie* case by submitting

17   evidence that he was disciplined for dropping pallet while two Caucasian employees who caused similar

18   or worse damage to warehouse goods were not disciplined).

19        Munoz contends that although customer complaints were made against non-Latino CSAs, none

20   of these CSAs were terminated.  However, it is undisputed that Munoz was terminated because she

21   received three disciplinary actions (including some related to the customer complaints) within a 12

22   month period.  *See* Munoz Decl. Ex. A.  Munoz has not submitted any evidence suggesting that the non-

23   Latino CSAs either (1) did not receive disciplinary letters or counselings, despite the fact that customers

24   complained about them, or (2) were not terminated, despite having received 3 disciplinary actions within

25   a 12 month period.  Accordingly, the Court concludes that Munoz has failed to establish a *prima facie*

26   case that the discipline she received as a result of customer complaints, including the resulting

27   termination, was racially discriminatory.  The Court hereby GRANTS defendant's motion for summary

28   judgment on Munoz's discipline claims.

United States District Court
For the Northern District of California

17

**United States District Court**
For the Northern District of California

### C.    Hostile Work Environment/Quid Pro Quo Sexual Harassment

FedEx moves for summary judgment on Munoz's hostile work environment claim and her "quid pro quo" sexual harassment claim. Munoz's opposition contends she is only asserting a quid pro quo sexual harassment claim, and thus Munoz has apparently abandoned her hostile work environment claim based on race and sex.

With respect to her quid pro quo sexual harassment claim, Munoz alleges that Senior Manager Chris Matthew made sexual advances to her during the 1 ½ year period that he was her supervisor, and that she reported those incidents to her Operations Manager, Claudia Miller. Munoz alleges that Matthew retaliated against her for rejecting him by subjecting her to "unwarranted scrutiny" and on-line counselings. Munoz cites her declaration as the evidence in support of this claim. Paragraph 20 of Munoz's declaration states:

> Chris Matthew had made sexual advances towards me shortly after he arrived in San Jose. He sat on my desk and leaned over to me, asking me if I had a boyfriend. He was speaking in a sexy tone. I responded immediately, telling him that I was not interested in his sexual advances and that I did not feel he was being appropriate. By my tone I let him know unequivocally that I was rejecting him. He was clearly offended and abruptly left my office. I knew then that he was going to retaliate against me and he did. Shortly thereafter, he started asking my manager to keep up with my time of arrival and to document any tardiness. However, throughout my career with FedEx, I have always arrived at work on time or early and always had high scores for punctuality. Therefore, all of his efforts in that regard did not work and I believe he succeeded in having only report [sic] made to him on that issue. He started other methods of retaliating, constantly trying to find fault with my work. . . .

Munoz Decl. ¶ 20. Aside from the one incident described above during which Matthew allegedly sat on Munoz's desk and talked to her in a "sexy" voice, Munoz has not cited evidence of any other instances of sexual harassment.

FedEx contends that Munoz's quid pro quo sexual harassment claim fails because she has not referred the Court to any evidence showing that Matthew linked a request for sexual favors to either a job benefit or a job detriment. Instead, FedEx contends that Munoz is improperly conflating a quid pro quo sexual harassment claim with a retaliation claim, and moreover, that all of the alleged retaliation described by Munoz involved other managers, not Matthew.

The Court agrees. In order to establish a *prima facie* case of quid pro quo sexual harassment, a plaintiff must show "that an individual explicitly or implicitly conditioned a job, a job benefit, or the

United States District Court

For the Northern District of California

absence of a job detriment, upon an employee's acceptance of sexual conduct." *Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir. 1995) (internal quotations omitted).  In *Heyne*, the Ninth Circuit concluded that a plaintiff made out a *prima facie* showing of quid pro quo sexual harassment based on the plaintiff's testimony that she was propositioned for sex by the owner of the restaurant where she worked; that she rejected his proposition; and that she was fired the following day.  *Id.*  Here, Munoz has not submitted any evidence to raise a triable issue of fact that Matthew "explicitly or implicitly conditioned a job, a job benefit, or the absence of a job detriment" upon her acceptance of his alleged sexual advances.  Munoz contends that after she rejected Matthew's sexual advances, he began retaliating against her through "unwarranted scrutiny" and online counselings.  However, none of the online counselings Munoz received from November 2000 through July 2002 (the time period Matthew was Munoz's Senior Manager) were issued by Matthew.[8]  Munoz has not submitted any evidence to suggest that Matthew instigated these counselings, or that he was in any way involved with these counselings.  Munoz's assertions, unsupported by evidence, that Matthew "initiated a campaign of retaliation" against her, and that "the ole boys network" was used to retaliate against Munoz, are insufficient to make out a *prima facie* showing of quid pro quo sexual harassment.

Munoz also contends that after she rejected him, Matthew told her manager to "keep up with my time of arrival and document any tardiness."  Munoz Decl. ¶ 20.  However, such an instruction does not amount to "the absence of a job detriment" for purposes of establishing a *prima facie* case.  Finally, Munoz states in her opposition that Matthew "knew Munoz was trying to get promoted out of the unheated warehouse where she had been 'stored away' for more than 11 years" at the time that he allegedly made sexual advances towards her.  Opposition at 14.  Thus, plaintiff suggests that Matthew would have "promoted" her out of the warehouse if she accepted his sexual advances. However, Munoz does not support this assertion with any evidence.[9]

---

[8] The January 12, 2001 performance reminder was issued by Claudia Miller; the November 11, 2002 written counseling was issued by Rich Randall; 2 quality feedback forms on April 9, 2002 were issued by Robert Motter; and 2 quality feedback forms on April 11, 2002 were issued by Robert Motter.

[9] Moreover, the Court notes that Munoz is somewhat inconsistent on this point, stating at page 9 of her opposition that Matthew retaliated against her for rejecting his sexual advances only by imposing unwarranted scrutiny and the online counselings.  Munoz also states that the DFEH complaint

United States District Court

For the Northern District of California

1    Accordingly, the Court GRANTS defendant's motion for summary judgment on Munoz's hostile

2    work environment and quid pro quo sexual harassment claims.

3

4    **D.    Retaliation**

5    Munoz contends that various FedEx managers retaliated against her.  Specifically, Munoz

6    contends that (1) after she rejected Matthew's sexual advances, management started to closely monitor

7    her performance and Senior Manager Robert Motter issued unwarranted disciplinary actions against her

8    in April 2002; (2) a December 5, 2002 warning letter she received for a customer complaint was

9    retaliatory because FedEx "ignored the Bravo Zulu[10] for outstanding customer service that was emailed

10    from Toronto on December 20, 2002"; (3) after she filed a DFEH complaint in March 2003, she was

11    given a verbal online counseling regarding attendance later that month; and (4) after she filed her DFEH

12    complaints and filed the instant lawsuit,[11] she was suspended and ultimately terminated in May 2003.[12]

13    To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a

14    protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal link

15    exists between the protected activity and the adverse action.  *See Manatt v. Bank of America*, 339 F.3d

16    792, 800 (9th Cir. 2003).  FedEx contends that to the extent Munoz alleges retaliation based on rejecting

17    Matthew's sexual advances, she has not shown any "protected activity."

18    The Court concludes that even if rejecting a supervisor's sexual advances constitutes "protected

19    activity" within the meaning of the statutes, Munoz has failed to establish that she was subjected to an

20    ───────────────

21    she filed against Matthew in 2002 was "not based on the failure to promote her out of the warehouse but rather on sexual harassment by him in December, 2001."  Opposition at 5.

22    [10]  A "Bravo Zulu" is a company award that entitles the recipient to spend money at the FedEx

23    store.

24    [11]  Munoz was originally a plaintiff in the *Satchell* case, which was originally filed in state court in December 2002.

25    [12]   The Court notes that Munoz's opposition lists these specific incidents as "examples" of

26    retaliation.  However, the Court is not required to guess at what other incidents plaintiff may also claim as retaliatory.  *See Keenan*, 91 F.3d at 1278; *Carmen*, 237 F.3d at 1031.  In addition, the Court notes that

27    Munoz repeatedly states in her brief that Suazo retaliated against her but does not provide any specific details of such alleged retaliation.  The unsupported argument on this point is insufficient to withstand summary judgment.  Finally, to the extent that Munoz contends that FedEx's firing of Claudia Miller

28    was retaliatory, Munoz does not have standing to assert that claim.

"adverse employment action" based on rejecting Matthew's sexual advances.  Munoz claims that after she rejected Matthew, he instructed her supervisor to monitor her arrival times to make sure she was not late.  The Court concludes that such an instruction does not amount to an "adverse employment action" because it is not "reasonably likely to deter employees from engaging in protected activity."  *Ray*, 217 F.3d at 1243.  All employees are presumably subject to having their arrival times monitored for punctuality.

With respect to the online counselings issued by Robert Motter, Munoz has not submitted any evidence suggesting that Motter was aware that Munoz rejected Matthew.  The incident with Matthew occurred in December 2001, Motter issued the counselings in April 2002, and Munoz told her manager Claudia Miller and other CSAs about the incident sometime "prior to filing the DFEH complaint" in June 2002.  Because Munoz has not submitted any evidence that Motter knew about the incident between Munoz and Matthew, she has failed to raise a triable issue of fact regarding whether the April 2002 online counselings were issued in retaliation for Munoz's rejection of Matthew or Munoz's complaints about Matthew.  *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (affirming grant of summary judgment on retaliation claim where plaintiff failed to show that individuals who allegedly retaliated were aware of protected activity).

The Court also concludes that Munoz has failed to make out a *prima facie* case that the December 5, 2002 warning letter was retaliatory.  Plaintiff's only argument with respect to that letter is that "defendant ignored the Bravo Zulu for outstanding customer service that was emailed from Toronto *on December 20, 2002*."  Opposition at 16 (emphasis added).  The fact that a subsequent email commended Munoz has no bearing whatsoever on whether the December 5, 2002 warning letter was retaliatory.  The only protected activity Munoz had engaged in prior to the December 5, 2002 warning letter was (1) complaining to Miller about Matthew's sexual advances, and (2) the June 2002 DFEH complaint filed against Matthew.[13]  Munoz has not introduced any evidence showing a causal link between the December 5, 2002 warning letter, which was issued in response to a customer complaint about Munoz, and the incidents involving Matthew.  Indeed, Munoz's opposition does not contend that

---

[13]  The *Satchell* case was filed on December 12, 2002 in state court.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

the two are related, and she does not identify any "protected activity" giving rise to the allegedly retaliatory December 5, 2002 warning letter.

Munoz also contends that after she filed a DFEH complaint in March 2003 stating that Manager Angela Suazo was retaliating against her, a different manager, Tim Moniz, issued a retaliatory "online compliment/counseling" regarding attendance. That online compliment/counseling stated, "Maria, you are currently at 97.3% for attendance, the Company goal is 96.9%. Thank you for being above goal, however if you accumulate another sick day on or before May 15, 2003 you will receive a written calendar notation. Your attention is required in this matter. If you do not understand this OLCC, please feel free to see me." Although the Court concludes that an online *counseling* can constitute an adverse employment action, this particular compliment/counseling does not. This counseling commends Munoz for being above the company goal, and simply put her on notice that if she had another sick day before May 15, 2003, she would fall below the goal and receive a "written calendar notation."

Finally, although the Court concludes that Munoz has established a *prima facie* retaliation claim with respect to the 2003 suspension and termination, Munoz has to raise a triable issue of fact that the suspension and termination was pretextual. Once a plaintiff has made out a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Manatt*, 339 F.3d at 800. FedEx has submitted evidence showing that Munoz was suspended and terminated because she had three active disciplinary actions within a 12 month period, and that under FedEx policy, this was grounds for termination.

Because FedEx has articulated a legitimate, non-discriminatory reason for Munoz's suspension and termination, the burden shifts back to her to show that the suspension and termination were on account of a discriminatory motive. *Id.* Munoz has not made any such showing. Munoz's entire argument with respect to why her suspension and termination was retaliatory consists of the following: she states that she received numerous Bravo Zulus and commendations for outstanding service until Matthew and Suazo became her managers, and she states that Operations Manager Claudia Miller was terminated after she transferred Munoz out of the warehouse. Neither of these facts has anything whatsoever to do with whether Munoz's suspension and termination in 2003 was retaliatory.

Accordingly, the Court GRANTS defendant's motion for summary judgment on Munoz's

retaliation claim.

### E.     Wrongful Termination

FedEx moves for summary judgment on Munoz's wrongful termination claim, contending that she cannot establish that her employment was terminated because of her race or sex.  Munoz does not directly respond to this argument, and her opposition instead contends that her termination was "based on continuing retaliation."  Thus, to the extent that Munoz has alleged wrongful termination as a separate claim, defendant's motion for summary judgment is GRANTED.  To the extent Munoz challenges her termination as retaliatory, the Court has analyzed this issue within the context of her retaliation claim, *supra*.

### F.     Compensation

Defendant moves for summary judgment on Munoz's compensation claim.  Munoz does not address any compensation claim in her opposition, and thus the Court concludes that Munoz has abandoned this claim and hereby GRANTS summary judgment in favor of defendant.

### G.     Disparate Impact

Although defendant has moved for summary judgment on Munoz's disparate impact claims, Munoz utterly fails to address these claims in her opposition except to state that (1) she will rely on the same evidence for both her disparate impact and disparate treatment claims concerning discipline, and (2) the Court should deny summary judgment due to the certification of *Satchell*.  For all of the reasons discussed *supra*, these arguments are unavailing.  The Court hereby GRANTS summary judgment in favor of FedEx on these claims.

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and denies in part defendant's motion for summary judgment as to plaintiff Alvarado (Docket No. 224), and GRANTS defendant's motion for summary judgment as to plaintiff   Munoz (Docket No. 223). Defendant's administrative motion to file is GRANTED.  (Docket No. 206)

**IT IS SO ORDERED.**

Dated: March 10, 2006

_____
SUSAN ILLSTON
United States District Judge