IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALVARADO et al., | No. C 04-0098 SI and No. C 04-0099 SI |
| Plaintiffs, | Related Case No. C 03-2659 SI |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' UNTIMELY EXPERT DISCLOSURES AND TO PRECLUDE TESTIMONY THEREON** |
| FEDEX CORPORATION, | |
| Defendant. | |

This order addresses several motions filed by defendant regarding plaintiffs' expert disclosures. (Docket Nos. 358 & 360 in 04-0098 SI; Docket Nos. 218 & 222 in 04-0099 SI).[1] As explained in this order, the Court GRANTS defendant's motions as to plaintiffs' experts Craig Pratt, Carlene Young, Stanley Stephenson and David MacPherson.

**DISCUSSION**

By way of procedural background, the Court notes that pursuant to the case management order filed October 22, 2004, the discovery cut-off in this case was July 29, 2005; the deadline for expert disclosures was October 31, 2005; and the deadline for expert discovery was December 2, 2005. Due to a number of discovery disputes between the parties, some fact discovery took place after July 29, 2005; however, except for the resolution of outstanding discovery disputes, the discovery cut-off was never changed. By letter order filed November 9, 2005, the Special Master, after consultation with the Court, extended the expert disclosure deadline to November 30, 2005, and the deadline for expert

---

[1] The same expert reports were filed in both cases. For the sake of simplicity, when referring to the expert reports and other pleadings, this Order cites the docket numbers of 04-0098 SI.

discovery to December 30, 2005.

Plaintiffs disclosed four expert witnesses on November 30, 2005: Craig Pratt, Carlene Young, Stanley Stephenson and David MacPherson. Upon receipt of the expert disclosure information from plaintiffs, FedEx noticed expert depositions for the week of December 12, 2005. Plaintiffs objected to the scheduling of these depositions, necessitating a conference with the Special Master. Over defendant's objections, the Special Master revised the deposition schedule as follows: Stephenson – December 20, 2005; Pratt – December 29, 2005; Young – December 30, 2005, and MacPherson – December 30, 2005. Pursuant to plaintiffs' request, Mr. Pratt's deposition was rescheduled to December 30, 2005.

**1.  Craig Pratt**

On November 30, 2005, plaintiffs filed a document entitled "Preliminary Report of Craig E. Pratt, SPHR Human Resources Consultant." That report states, *inter alia*, that:

> The opinions expressed in this report are based upon my preliminary analysis of the documents listed in Section II, above, that I have had the opportunity to review to date. It is my understanding that discovery in this matter is continuing[2] and also that additional documents and reports will be forthcoming. I also intend to complete my review of those deposition transcripts that I will receive pursuant to my requests to counsel for plaintiffs. Accordingly, the opinions described below may be augmented or modified as further information becomes available.

*See* Docket No. 329, Pratt Report at 5. The "Preliminary Report" also states, under a section titled "Preliminary Opinions" that "[t]o the extent possible given the time constraints within my preliminary analysis, I have reviewed all documents created by or submitted in support of filings by defense counsel for FedEx . . . As I continue my review of documents and deposition testimony in the case, I will be looking for . . . ." *Id.* at 7-8. The only specific plaintiff mentioned in Mr. Pratt's report is Bertha Duenas, in a single sentence. *See id.* at 14 ("My preliminary analysis of the materials I have been given relative to Plaintiff Duenas does not reflect that she was a participant in an interactive process using the above-referenced criteria.").

On December 30, 2005, defendant deposed Mr. Pratt. During that deposition, Mr. Pratt testified,

---

[2] As noted above, the discovery cut-off in this case was July 29, 2005, and by November 30, 2005, virtually all discovery disputes had been resolved.

2

*inter alia*, that he did not know whether he would submit a supplemental report, and that whether he intended to specifically analyze each plaintiffs' situation, other than Ms. Duenas, was "going to depend a little bit on my discussions with plaintiff['s] counsel following up today." Def's Supp. Oppo., Ex. B at 69.

On January 2, 2006, plaintiffs filed the Affidavit of Craig Pratt. *See* Docket No. 353. In the affidavit, Mr. Pratt states:

> I have recently had the opportunity to conduct additional analysis of material regarding plaintiff Maria Munoz. These materials included documents related to Ms. Munoz' case that I received on the morning of November 30, 2005, after my preliminary report had already been prepared and submitted to plaintiffs' counsel.

Pratt Affidavit ¶ 3. Mr. Pratt proceeds to provide specific opinions regarding "potentially deficient human resource management practices resulting in the termination of Munoz' employment from FedEx." *See id.* at ¶ 3(A)-(C).

Mr. Pratt's January 2, 2006 affidavit also provides additional opinions regarding plaintiff Charlotte Boswell, based on materials provided to him on November 30, 2005. *See id.* at ¶ 4. The affidavit states that "applicable human resources management principles may have been ignored in relation to the handling of Boswell's employment status," and further that Mr. Pratt "intends to supplement my preliminary expert report to include a discussion of Ms. Bowell's claims." *Id.*

Defendant moves to strike Pratt's November 30, 2005 expert disclosure as incomplete, and Mr. Pratt's January 2, 2006 affidavit as improper. Plaintiffs assert that (1) the initial expert disclosure was complete and complied with Rule 26; (2) the January 2, 2006 affidavit did not contain any "new" opinions because the subject matters covered fall within the scope of the initial expert report; (3) defendant will suffer no prejudice; and (4) plaintiffs' conduct was justified because the summary judgment schedule was repeatedly changed and plaintiffs believed it would have been cost prohibitive to pay Mr. Pratt to conduct an in-depth analysis of each plaintiff's case without the benefit of the Court's ruling on the summary judgment motions.

The Court concludes that plaintiffs have violated the Federal Rules, and that Mr. Pratt should not be permitted to testify as an expert in this case. As an initial matter, the Court notes that the expert disclosure and discovery deadlines were extended once. If plaintiffs wished to avoid potentially

3

unnecessary expert witness costs, and believed that they needed the Court's rulings on the pending summary judgment motions in order to accomplish that goal, plaintiffs could have sought a further extension of these deadlines.[3] They did not. Having made the choice not to seek a further extension of these pretrial deadlines, plaintiffs were obligated to comply with these deadlines.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert witness to submit a written report that "shall contain a *complete* statement of all opinions to be expressed and the basis and reasons therefor. . . ." (emphasis added). An expert report is to be a detailed and complete statement of the testimony of the expert on direct examination. *See* Fed. R. Civ. P. 26 Advisory Committee's Note to 1993 Amendment; *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). Rule 37(c)(1) provides that if a party's expert witness, without substantial justification, fails to disclose such information, then the party "shall not, unless such failure is harmless, be permitted to use [such information] as evidence at a trial, at a hearing, or on a motion. . . ."

Despite plaintiffs' assertions to the contrary, Mr. Pratt's November 30, 2005 report did not comply with Rule 26. As noted above, Mr. Pratt's November 30, 2005 report repeatedly acknowledges that it is incomplete and "preliminary." *See* Docket No. 329, Pratt Report at 1 & n.1 ("The Subsequent Version of the Report will deal with factual matters pertinent to each plaintiff including the stated reasons for termination, if any."); 5 ("opinions expressed in this report are based upon my preliminary analysis"); 7 ("Preliminary Opinions," "To the extent possible given the time constraints within my preliminary analysis,"); 14 ("My analysis is continuing and I have informed plaintiffs' counsel that I may make revisions and/or additions to this report.").

In addition, the preliminary report is so general and lacking in detail that it does not provide a meaningful basis for determining the substance of Mr. Pratt's expert opinions, nor does it provide a fair basis for expert discovery. The bulk of the "Preliminary Opinions" consists of statements of general human resources principles without any specific application to FedEx. Further, the portions of the

---

[3] The Court further notes that the summary judgment motions were repeatedly rescheduled, in large part due to ongoing discovery disputes between the parties. As a result, in this case and the related action *White et al. v. FedEx*, 04-0099 SI, fifteen motions for summary judgment were argued and submitted in October and November 2005.

4

1 report that do mention FedEx are so equivocal as to be virtually meaningless. For example, Mr. Pratt's
2 report states, "To date, I have not seen discovery materials that provide evidence that FedEx did or did
3 not establish and implement an EEO complaint procedure consistent with these principles." *Id.* at 13;
4 *see also id.* at 10 ("To date, information from the discovery record has not been provided to me to
5 sufficiently establish a basis that FedEx does or doesn't conform to principles in selection process
6 components of testing and interviewing."); *see also id.* at 11 ("To date, I have not seen discovery
7 materials identifying the training received by FedEx managers in EEO or, if applicable, AAP.").

8 With respect to the January 2, 2006 affidavit, plaintiffs have utterly failed to provide any
9 justification for why Mr. Pratt filed this affidavit a mere three days after his deposition, setting forth new
10 opinions based on material he had been provided over a month earlier. (Remarkably, the affidavit also
11 states Mr. Pratt's intention to submit another supplemental report regarding plaintiff Boswell's claims.)
12 Plaintiffs also provide no explanation for why Mr. Pratt stated at his deposition that he did not know
13 whether he would be providing such a supplemental report, only to submit exactly such a report three
14 days later (following a holiday weekend).[4] The Court will not countenance such gamesmanship.

15 Plaintiffs contend that any error has been harmless. To the contrary, allowing plaintiffs to
16 proceed with Mr. Pratt would encourage parties to evade the expert-disclosure rules, and would require,
17 at a minimum, that defendant be permitted to re-depose Mr. Pratt. "It would disrupt the orderly process
18 of trial preparation to require a new round of expert reports and a new round of expert depositions. And
19 the Court does not have resources to spare in order to manage cases in which counsel create foreseeable
20 delay through violation of the rules." *Atmel Corp. v. Information Storage Devices Inc.*, 189 F.R.D. 410,
21 416 (N.D. Cal. 1999) (barring expert testimony when expert submitted inadequate initial report and then
22 attempted to cure deficiencies by submitting rebuttal report and conducting literature search after
23 deposition and after close of expert discovery).

24 Throughout this litigation, plaintiffs' counsel have repeatedly displayed a flagrant disregard for
25 the Federal Rules of Civil Procedure and the Local Rules of this Court. The Court will not permit such
26 behavior, and accordingly, the Court GRANTS defendant's motion to strike Mr. Pratt's expert
27
28 [4] The Court notes that Mr. Pratt's deposition was taken on Friday, December 30, 2005, and that his affidavit was filed on Monday, January 2, 2006.

5

designation and STRIKES Mr. Pratt's January 2, 2006 affidavit. Mr. Pratt shall not be permitted to testify as an expert in this matter. *See id.* at 416-17; *see also Salgado*, 150 F.3d at 743 (affirming district court's exclusion of expert witness due to incomplete, "preliminary" nature of initial report; deficiencies not cured by "supplemental" report based on information available before close of discovery).

### 2. Carlene Young

The history surrounding Ms. Young's expert disclosure is very similar to that of Mr. Pratt's report. On November 30, 2005, plaintiffs filed the "Report of Carlene Young." That report states that Ms. Young was hired to "investigate, review materials and documents, perform psychological assessments, and form an opinion(s) regarding the impact on employees of employment discrimination, retaliation, disparate treatment, unequal discipline, hostile environment, [and] selective and subjective enforcement of policies and procedures." Docket No. 329, Young Report at 3. The report sets forth several "Preliminary Opinions," and states, *inter alia*, that "[p]ending the motions for Summary Judgment by Judge Susan Illston, supplemental information with psychological testing and assessments will be provided in a timely manner for all those employees remaining in the cases." *See* Docket No. 329, Young Report at 3. Ms. Young's report states that she conducted individual interviews with the plaintiffs, and that based upon these interviews, she has reached a number of "preliminary opinions" regarding deficiencies concerning FedEx's policies, procedures, and environment. *Id.* at 6-8. The report does not provide any analysis or discussion of any specific plaintiffs.

After the resolution of the parties' dispute regarding scheduling of depositions, described *supra*, Ms. Young's deposition proceeded on December 29, 2005. At the beginning of the deposition, plaintiffs' counsel produced for the first time Ms. Young's 10 page "Supplemental Report" setting forth an "additional basis for preliminary opinions," consisting of 16 additional documents and 15 additional interviews that Ms. Young conducted with plaintiffs. *See* Docket No. 351-2 at 3-4. Of the 16 additional documents reviewed, 15 are depositions or pleadings that were all available well before the expert disclosure deadline of November 30, 2005; it is unclear when the final document, the Report of Edward

J. Hyman, was prepared.[5]  Of the 15 plaintiff interviews listed in the supplemental report, 9 occurred between November 28, 2005 - November 30, 2005; 2 occurred on December 19, 2005; 3 occurred on December 26, 2005; and 1 occurred on December 27, 2005.

Ms. Young's supplemental report provides, for the first time, "Summary Opinions for Employees."  The following excerpt is typical of Ms. Young's "Summary Opinions":

> **EDWARD ALVARADO** – Latino Male (Retaliation/Harassment)
> Currently working at FedEx – since 1994
>
> Mr. Alvarado feels like management (Aaron Hoelstein, Craig Diggle, Robert Motter and Gary Meek) have tried and are still trying to destroy his physical health, to humiliate him, and debilitate him to the point where he is not able to work and thereby force him to resign.  They deliberately put him on a split shift to aggravate his health conditions and act intentionally with knowledge of his prostate cancer and high blood pressure by giving him the hardest jobs.  This all started after he testified for Gary White at the DFEH.
>
> Opinion – Depression – nightmares; sleep disturbance; emotional distress; anxiety; physical pain, loss of enjoyment of life; loss of income, humiliation.

*Id.* at 5.  Ms. Young's Supplemental Report provides "Summary Opinions" of similar length and depth of detail for 12 other plaintiffs.[6]

Defendant states, and plaintiffs do not deny, that prior to Ms. Young's deposition, plaintiffs did not contact defendant and alert FedEx to the fact that Ms. Young would be submitting a supplemental report.  Defendant also asserts, and plaintiffs provide no response whatsoever on this point, that at Ms. Young's deposition, Ms. Young failed to produce any documents from her file in this case; at the deposition, Ms. Young and her counsel stated that they had not seen the Notice of Deposition and Request for Production of Documents which required Ms. Young to produce all documents that she relied upon in formulating her opinions.  According to defendant's reply brief, as of January 27, 2006, plaintiffs still had not produced any documents contained in Ms. Young's file concerning this matter.

Plaintiffs raise all of the same arguments with respect to Ms. Young as they did with respect to

---

[5] For example, Ms. Young's supplemental report states that she reviewed Docket Nos. 284 and 285 (both filed October 5, 2005); Docket No. 295 (filed October 17, 2005); and Docket No. 305 (filed October 19, 2005).

[6] On December 30, 2005, plaintiffs also filed the "Affidavit of Carlene Young, Psychologist."  *See* Docket No. 352.  That affidavit references the fact that Ms. Young submitted a supplemental expert report, and states that she was prepared to discuss all of her opinions, including those contained in the supplemental report, at her deposition.

7

Mr. Pratt. For the reasons described *supra*, these contentions lack merit. Moreover, the Court finds it inexcusable that plaintiffs failed to provide any advance notice whatsoever to defendant's counsel of the fact that Ms. Young would be submitting a substantive supplemental report on the day of her deposition. The Court finds that defendant would be prejudiced by allowing Ms. Young to testify, and that plaintiffs have failed to provide sufficient justification for the incomplete initial report, or for the supplemental report. Accordingly, the Court GRANTS defendant's motion to strike Ms. Young's expert designation.

### 3.     Stanley Stephenson and David MacPherson

On November 30, 2005, plaintiffs filed economic loss analyses prepared by Messrs. Stephenson and MacPherson for each of the plaintiffs. Each economic loss analysis contains the following "DISCLAIMER:"

> DISCLAIMER: In this report we have approximated economic damages to plaintiff minority members arising from defendant's failure to promote them as readily as white employees because we do not have employment records showing the promotion histories of all FedEx employees in the Western Region during the period January 1, 1999 through February 5, 2004. Our references to Dr. Richard Drogin's report do not replace the need to obtain these employment records. Once this data is made available, any assumptions made herein based directly or indirectly on Dr. Drogin's data will no longer be required. In the final version of our report done independently with this data, we will not reference Dr. Drogin's report as forming any basis for our opinion. The same lack of data also prevents our final analyses of differential disciplinary actions, test score differentials, performance ratings and other factors likely to impact wages and hours of the plaintiffs as a minority group compared to non-minority employees.

Docket No. 329-2 at 1. On December 23, 2005, the Court issued an order which stated, *inter alia*, that because the plaintiffs in this case and case No. 04-0099 SI had not designated Dr. Drogin as an expert, "they cannot seek to use Dr. Drogin's report in any fashion."[7]

During Mr. MacPherson's deposition on December 30, 2005, plaintiffs' counsel produced revised economic loss analyses for each plaintiff. The revised economic loss analyses do not reference or rely on Dr. Drogin's report; Dr. Drogin's report has been deleted from the "References Read or Used

---

[7] In that order, the Court granted plaintiffs' motion to quash defendant's subpoena of Dr. Drogin. The Court noted that plaintiffs unfairly sought to prevent defendant from taking Dr. Drogin's deposition while at the same time using his report as a basis for their experts' analysis. *See* Docket No. 346.

8

in Forming Opinions" section of each report, and a new reference has been added, "U.S. Social Security Administration, 2005 Social Securities Trustees Report, Table II.C.I. Intermediate Forecast of Real Wage Growth." Docket No. 350-2 at 7. The revised analyses no longer contain the "DISCLAIMER," but do include the following language:

> The economic loss analysis included in this report is preliminary and likely to understate measured damages because it does [not?] account for racial differentials in rates of promotion. Until detailed individual work histories on all FedEx Western Region employees for the period 1999 to 2004 are obtained and analyzed we are unable to measure the degree of this underestimate.

*Id.* at 6.

For every plaintiff, the economic loss figures contained in the initial economic loss analyses differ from those contained in the revised analyses, often significantly so. The most extreme example is that of plaintiff Kevin Neely. The initial loss analysis estimated economic damages at $54,384, while the revised analysis estimated those damages at $3,967,846. Similarly, the initial analysis for plaintiff Pernell Evans stated an economic loss of $38,030, while in the revised analysis his economic loss was estimated at $1,920,066.

Plaintiffs attempt to justify the revised economic loss analyses on the same grounds that have been rejected *supra*. Plaintiffs also contend that the revised analyses were justified because of this Court's December 23, 2005 order precluding plaintiffs from relying on Dr. Drogin's report. Plaintiffs' argument lacks merit for several reasons. First, in the initial analyses Messrs. Stephenson and MacPherson explicitly stated that they did not intend to rely on Dr. Drogin's report for their "final" conclusions, and that the economic loss analyses should only be considered "preliminary." Accordingly, it appears that plaintiffs always intended to revise these reports to eliminate any reliance on Dr. Drogin's report.

Second, both the initial and revised analyses state that *both* versions are preliminary and incomplete because they do not take account of "employment records showing the promotion histories of all FedEx employees in the Western Region during the period January 1, 1999 through February 5, 2004." Docket No. 329-2 at 1 (initial report); *see also* Docket No. 350-2 at 6 (revised report). Thus, even accepting plaintiffs' assertion that they were "forced" to revise these analyses as a result of the Court's December 23, 2005 order (an assertion belied by the record), even plaintiffs' revised economic

9

loss analyses are "preliminary" in violation of Rule 26.

Finally, although it is unclear what, precisely, constitutes the "complete" employment records and work histories that Messrs. Stephenson and MacPherson state are lacking, based upon the history of discovery in this case, it appears that plaintiffs do not – and will never – have this data. The Court notes that plaintiffs unsuccessfully sought "complete," District-wide data before the Special Master, and then from this Court. In a detailed decision issued December 16, 2005, the Special Master denied plaintiffs' motion to compel production of such information. *See* Docket No. 337. Plaintiffs then sought review of the Special Master's decision in this Court. By order filed January 5, 2006, the Court denied plaintiffs' objections to the Special Master's decision. *See* Docket No. 356.

In sum, plaintiffs' excuses for revising the economic loss analyses ring hollow. The initial economic loss analyses make clear that plaintiffs always intended to revise the analyses to exclude any reliance on Dr. Drogin's report; this Court's December 23, 2005 order only prompted plaintiffs to do this sooner rather than later. Even plaintiffs' revised loss analyses are, by their very terms, "preliminary," and the data necessary to make them "final" is not forthcoming. Accordingly, the Court GRANTS defendant's motion to strike and precludes Messrs. Stephenson and MacPherson from testifying at trial.

**IT IS SO ORDERED.**

Dated: June 27, 2006

SUSAN ILLSTON
United States District Judge

10