IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALVARADO, et al., | No. C 04-0098 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING AS MOOT DEFENDANT'S MOTION FOR NEW TRIAL** |
| v. | |
| FEDERAL EXPRESS CORPORATION, | |
| Defendant. | **RE: PERNELL EVANS** |

A jury trial was held from November 13, 2006 through November 21, 2006. The jury found in favor of plaintiff on his claims of retaliation and discrimination, and awarded $475,000 in compensatory damages and $475,000 in punitive damages. The Court entered final judgment on February 28, 2007. Now before the Court is defendant's renewed motion for judgment as a matter of law, as well as defendant's motion for a new trial.

**BACKGROUND**

Plaintiff's claims for retaliation and disparate treatment are based on the following four events: (1) on June 26, 2002, plaintiff received an e-mail from his supervisor Robin Van Galder requiring him to take "corrective action" against a driver who reported to him because the driver violated company policy by working in excess of 55 hours per week without management approval; (2) in February 2004, plaintiff received a one sentence e-mail from his supervisor Ev Rey asking him to take corrective action against a driver who failed to properly operate a scale trailer; (3) plaintiff's shift was changed in January 2004 to a different work group as a result of a reorganization; and (4) plaintiff received a form memo from Van Galder on April 30, 2004 requiring him to submit a copy of his Survey Feedback Action

1  ("SFA") plan as well as notes from his quarterly follow-up feedback meetings because his SFA score
2  fell below the corporate average.

3       Plaintiff claimed that the above events were taken in retaliation for complaints that he filed with
4  the DFEH on July 6, 2002, and the EEOC in May 2003. Plaintiff also claimed that each of the four
5  events was racially discriminatory. Plaintiff did not present any evidence that Van Galder, Rey, or any
6  other decision-maker made any comments about plaintiff's race, ever used racial slurs, or engaged in
7  any conduct which suggested that plaintiff's race factored into any of the four challenged events.
8  Defendant contends that the evidence at trial shows that none of the four events is an "adverse
9  employment action," and that there is no evidence that defendant retaliated or discriminated against
10 plaintiff.

## LEGAL STANDARD

13 In reviewing defendant's motion for judgment as a matter of law, the Court must view the
14 evidence in the light most favorable to plaintiff and draw all reasonable inferences in his favor. *See*
15 *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence
16 permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id*.

## DISCUSSION

19 As a preliminary matter, the Court notes that if the evidence presented at trial had been presented
20 at summary judgment, the Court would have granted summary judgment in favor of defendant. As
21 became evident during trial, both sides failed to produce relevant, responsive documents during
22 discovery, and both presented inaccurate and/or incomplete information during the summary judgment
23 briefing. For example, during the summary judgment briefing, the parties asserted that Van Galder sent
24 the 55-hour "corrective action" e-mail in <u>late 2002 or early 2003</u>. *See* Docket No. 95 at 9:4-5
25 (Defendant's motion for summary judgment). Neither party submitted the e-mail in connection with the
26 summary judgment briefing, and prior to trial, neither party produced the e-mail in discovery. Had that
27 e-mail been produced, it would have been obvious that the June 25, 2002 e-mail could not have been

retaliatory since it predated plaintiff's July 2002 DFEH complaint.[1]

Similarly, prior to trial, neither party produced the allegedly discriminatory and retaliatory e-mail from Ev Rey directing plaintiff to take corrective action against an employee for improperly operating a scale trailer. This e-mail was produced at trial; the e-mail was sent sometime between <u>February 4-7, 2004</u>, and states "I need you to do the corrective action for this incident. thx p. ." Plaintiff's Trial Ex. 6b.[2] Defendant now argues, and the Court agrees, that this one-sentence e-mail is not causally connected to any protected activity, as it was sent 19 months after plaintiff's DFEH complaint and 15 months after plaintiff's EEOC charge. However, during the summary judgment briefing, neither party submitted the e-mail at issue, and defendant incorrectly stated (based upon plaintiff's inaccurate deposition testimony) that the e-mail was sent in <u>February 2003</u>. *See* Docket No. 95 at 8:6-8 (Defendant's motion for summary judgment).[3]

---

[1] The parties dispute whether plaintiff had the obligation to produce this e-mail during discovery. According to defendant, it first learned that plaintiff had this e-mail when plaintiff identified the e-mail on his pretrial exhibit list. Defendant moved to exclude the e-mail on the ground that plaintiff had failed to produce it in violation of his Rule 26 obligations. The Court denied defendant's motion, agreeing with plaintiff's position that he was not required to produce the e-mail since the e-mail was located on defendant's computers and thus within defendant's possession. In any event, defendant was not prejudiced by the introduction of the e-mail into evidence, as the e-mail flatly disproves the causation element of plaintiff's retaliation claim.

[2] The document does not indicate the date on which Rey sent the e-mail to plaintiff. The e-mail shows that Rey received an e-mail from William Fisher on February 4, 2004; Rey then forwarded the e-mail to plaintiff, along with Rey's statement "I need you to do the corrective action for this incident." Plaintiff responded by e-mail to Rey on February 7, 2004.

[3] The Court also notes that defendant never produced memos from Van Galder to similarly-situated Caucasian employees regarding those employees' low SFA scores and the need to provide quarterly feedback, despite the fact that plaintiff had inquired about such documents during discovery. As a result, the Court barred defendant from introducing those memos at trial, though the Court permitted Van Galder to testify in accordance with the scope of his deposition testimony, namely that Van Galder had sent similar memos to other employees whose SFA scores fell below the corporate average. *See*, *e.g.*, Trial transcript at 509-11 (colloquy between counsel and the Court regarding SFA memos, defendant's failure to produce, and plaintiff's concession that those documents would likely be fatal to claims based on SFA memo). If defendant had produced those memos in discovery and made this argument in the motion for summary judgment, the Court would have granted summary judgment in favor of defendant on plaintiff's claims regarding the SFA memo. Instead, defendant's sole summary judgment argument regarding the SFA memo was that there was no inference of retaliation because the SFA memo was issued seven months after plaintiff's EEOC charge. *See* Docket No. 95 at 19.

3

**I.     Retaliation claim**

To prove a retaliation claim, a plaintiff must initially show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). An "adverse employment action" is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in a protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (*citing* EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)). This definition includes actions "materially affect[ing] compensation, terms, conditions, or privileges" of employment. 42 U.S.C. § 2000e-2(a)(1).

**A.     "Corrective action" e-mails**

Defendant argues that the corrective action e-mails did not materially affect any of plaintiff's conditions of employment, nor would these e-mails reasonably deter anyone from engaging in protected activity. The evidence showed that corrective action e-mails are not considered disciplinary, and they did not go in plaintiff's employee's file. Plaintiff testified that he was not given a warning letter or any other form of discipline as a result of the two e-mails. *See* Evans testimony at 264-65, 268, 271-72. Plaintiff admitted that the FedEx disciplinary policy does not mention "corrective actions," and plaintiff was unable to identify any policy stating that a corrective action could lead to discipline. *Id*. Although plaintiff testified that it was the "practice" that corrective actions could lead to formal discipline, plaintiff testified that "practice" did not happen to him. *Id*.

The evidence also showed that neither of the e-mails materially affected plaintiff's compensation, terms, conditions, or privileges of employment. *See* Rey testimony at 639-42, 667-68 (letters or e-mails related to corrective actions do not go in employee's file; February 2004 e-mail was not disciplinary, Rey was satisfied with plaintiff's response that "this is a training issue"); Van Galder testimony at 453-55 (describing FedEx disciplinary policy; stating he has never disciplined plaintiff nor has he ever directed anyone to discipline plaintiff). Van Galder also testified that he notified all of the Operations Managers of the long-standing policy regarding employees not working over 55 hours per week in a memo before he sent the corrective action e-mail to plaintiff. *See* Van Galder testimony at

4

1  458. Van Galder did not issue a performance reminder, warning letter, or any other form of discipline
2  to plaintiff regarding the 55-hour situation. *Id.* at 462-63.

3  Further, plaintiff did not show any causal connection between the e-mails and the protected
4  activity. Plaintiff does not dispute that to the extent plaintiff's retaliation claim is based on the 55-hour
5  e-mail, his claim fails as a matter of law because that e-mail was sent approximately 10 days *before*
6  plaintiff filed his DFEH complaint. With regard to Rey's scale trailer e-mail, that e-mail was sent 15
7  and 19 months after plaintiff's EEOC and DFEH complaints. Plaintiff did not introduce any evidence
8  linking the February 2004 e-mail to either of his complaints. In the absence of such evidence, and in
9  light of the significant lapse of time between the protected activity and the innocuous, one-sentence e-
10 mail in February 2004, the Court finds that as a matter of law there was no causal link. *See Villiarimo*
11 *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (holding retaliation claim without merit
12 when no causal evidence and 18-month lapse between protected activity and adverse employment
13 action); *see also Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 507 (9th Cir. 2000)
14 (retaliatory intent can be inferred when adverse employment actions occur within "reasonable period
15 of time" after complaints of discrimination).

16 Finally, there was no evidence suggesting that plaintiff was treated differently with respect to
17 the corrective action e-mails. *See Brooks*, 229 F.3d at 929 (rejecting retaliation claim where plaintiff
18 did not present any evidence that she was singled out or treated differently than other employees).
19 Plaintiff did not put on any such evidence regarding the one-sentence scale trailer e-mail. With regard
20 to the 55-hour corrective action e-mail, Van Galder testified that he has sent similar e-mails to other
21 Operations Managers when their employees exceeded 55 hours in a week, including to Ev Rey and Dave
22 Perry, who are both Caucasian. *See* Van Galder testimony at 466-67. Van Galder also testified that
23 he did not send the corrective action e-mail to the other manager who supervised the employee who had
24 driven over 55 hours[4] because he did not supervise that manager, and would not have known the other
25 manager's identity. *Id.* at 388-94; 461. Van Galder's testimony on this point was undisputed.

---

[4] Plaintiff and another manager from the Emeryville location "shared" the driver who drove over 55 hours during the week.

5

### B. Shift change

With regard to the shift change, the evidence showed that plaintiff's shift was changed as a result of a reorganization that affected six managers. The undisputed evidence showed that the shifts of all six Operations Managers were put up for bid in November 2003, that plaintiff bid third based on his seniority in management, and that as a result of the reorganization, the shifts (and workgroups) of other managers changed. Carl Bowersmith (one of two similarly-situated Caucasian Operations Managers) bid after plaintiff, while Jack Jordan, a similarly-situated African-American Operations Manager, was given the first bid because he had the highest seniority. In addition, both Jordan and Freese (a similarly-situated Caucasian Operations Manager) both got new work groups. *See* Rey testimony at 675-86. Plaintiff did not present any evidence that he was singled out or treated differently, and this fact alone is fatal to plaintiff's retaliation claim. *See Brooks*, 229 F.3d at 929.

Plaintiff also failed to show any causal connection between his protected activity and the shift change. Van Galder explained that the shifts had to be re-bid because when Operations Manager Don Porter retired, there were three managers working on the a.m. shift and only one manager on the p.m. shift, and FedEx needed to move more managers to the p.m. shift. *See* Van Galder testimony at 491-500, 513-17; Rey testimony at 675-86. Plaintiff contended that the bidding was based on "time in management" (under which his seniority was third out of six) rather than "time in location" (under which his seniority would have been first out of six) as a means of retaliating against him to ensure that plaintiff would not be able to obtain the shift he wanted. However, plaintiff did not have any evidence in support of this theory, and in contrast, defendant's evidence showed that the "time in management" seniority system was required under the I-Service program, which was created by management officials in Memphis who had no idea of plaintiff's circumstances. *See* Van Galder 429::25 (I-Service applicable); 486-91 (explaining what I-Service is, that it applied to the Oakland location in 2003); 491-500, 513-17 (explaining background of reorganization of managers, why shifts had to be re-bid, I-Service was corporate-wide program); Rey testimony at 675-86.

### C. SFA memo

Plaintiff also alleged that in April 2004 Van Galder retaliated against him by sending him a

6

memo regarding his below-average SFA score. The memo requested that plaintiff send Van Galder a copy of plaintiff's SFA action plan and notes of his quarterly feedback meetings. Plaintiff's claim fails because did not submit any evidence that Van Galder singled him out by sending the memo. *See Brooks*, 229 F.3d at 929. In fact, Van Galder testified that every manager was required to put together an "action plan" based upon their SFA results, regardless of the score, Van Galder testimony at 520-24, 536, and that he required every manager whose SFA score fell below the corporate average to produce quarterly reports, including Freese (Caucasian) and Jordan (African-American). *Id*. at 536; Rey testimony at 655-57, 662 (Freese got lowered SFA score, and lower score than Evans, from reorganized work group; Freese received same SFA letter as Evans); 662-65 (similar testimony regarding Jordan). Van Galder also testified that he sends a memo to every Operations Manager in his district after the SFA every year. *See* Van Galder testimony at 524-25.[5]

Plaintiff asserted that he was treated differently than Ev Rey because Van Galder did not send Rey an SFA memo when Rey's SFA score fell below the corporate average. However, Van Galder explained that he did not send Ev Rey, a Senior Manager, the same memo that he sent plaintiff (and other Operations Managers), and instead that Van Galder sent Rey and the Senior Managers a separate memo. *Id*. at 530. Van Galder also testified that plaintiff was not disciplined in any way for his 4.4 SFA score. *Id*. 528.

## II.   Disparate treatment claim

To prove plaintiff's disparate treatment claim, he must show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *See Peterson v. Hewlett Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004). Defendant contends that it is

---

[5] At trial, plaintiff testified that he thought it was unfair that he was rated by a new workgroup, and that it was only because he had a new workgroup that his SFA score fell below the corporate average. Again, plaintiff did not present any evidence that he was treated differently in any way, and in contrast, Fed Ex presented evidence that it was "quite common" for a manager to go into a workgroup for less than a year and be rated by that workgroup. *See* Rey testimony at 686-87 (stating that this happened to Freese); Freese testimony at 712-14 (testifying that his SFA score went from 4.2 to 3.9 after he got new workgroup, and that he received letter from Van Galder regarding quarterly SFA feedback to improve scores).

entitled to judgment as a matter of law on plaintiff's disparate treatment claim because plaintiff did not establish the third and fourth elements of his claim. For the reasons stated above, the Court holds that the corrective e-mails are not adverse employment actions, and thus plaintiff's disparate treatment claim based on these e-mails fails. Similarly, for the reasons stated above, with regard to all four employment actions, there was no evidence that similarly situated individuals outside of plaintiff's class were treated more favorably, and thus plaintiff's disparate treatment claim fails on that ground as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's renewed motion for judgment as a matter of law (Docket No. 718), and DENIES AS MOOT defendant's motion for a new trial. (Docket No. 719).

**IT IS SO ORDERED.**

Dated: March 18, 2008

SUSAN ILLSTON
United States District Judge