IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALVARADO, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>    Defendant.<br>_____/ | No. C 04-0098 SI<br><br>**ORDER RESOLVING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL**<br><br>**RE: CHARLOTTE BOSWELL** |

A jury trial was held from April 2 - 11, 2007. The jury found in favor of plaintiff Charlotte Boswell on her claims for sexual harassment, retaliation, and constructive discharge, and awarded compensatory damages in the amount of $550,000 ($300,000 in lost earnings and $250,000 in other damages, including mental or emotional pain and suffering), and punitive damages in the amount of $2,450,000. The Court entered final judgment on May 21, 2007. Now before the Court is defendant's renewed motion for judgment as a matter of law, as well as defendant's motion for a new trial, or alternatively a motion for amendment of the judgment. Defendant also alternatively requests remittitur of the damages award.

**I.    Renewed motion for judgment as a matter of law**

In reviewing defendant's motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to plaintiff and draw all reasonable inferences in her favor. *See Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence

permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id*.[1]

As a general matter, defendant contends that all of plaintiff's claims should be dismissed as a matter of law based on her failure to plead the claims in the complaint. Defendant argues that plaintiff did not specifically plead in the complaint that her supervisor Norman Stites sexually harassed her, that she was retaliated against after she complained of the sexual harassment, and that she was constructively discharged due to the retaliation and sexual harassment. As a result, defendant contends that "FedEx was forced into trial, without consent and over its objection, without notice of the specific claims at issue or whether both federal and state law would apply." Motion for Renewed Judgment as a Matter of Law at 3.

As an initial matter, the Court notes that defendant first raised these arguments in a "motion to dismiss for lack of subject matter jurisdiction, or alternatively for judgment on the pleadings, or alternatively a second motion for summary judgment," which was filed on the eve of trial.[2] In that motion, defendant contended that plaintiff's sexual harassment (and related) claims had not been plead in the complaint, and thus that defendant was entitled to judgment on the pleadings or summary judgment. Defendant also asserted that the Court lacked jurisdiction over these claims because plaintiff's DFEH complaint did not specifically mention "sexual harassment," and thus plaintiff did not exhaust her administrative remedies.

The Court denied defendant's motion, and defendant's subsequent motion for reconsideration, on two grounds. First, the Court found that plaintiff had exhausted her administrative remedies on her sexual harassment claims because plaintiff's DFEH complaint stated that she had been "harassed," "forced to quit" and "retaliated" against, on account of "sex" by two individuals, including her manager

---

[1] The Court notes that defendant did not include any citations to the trial transcripts in its motion. Instead, defendant simply makes representations regarding the evidence at trial; the Court has reviewed the trial transcripts and found that, at least some of those representations are inaccurate. For example, defendant misleadingly asserts that at most plaintiff only complained to Stites about him kissing and hugging her, and that she never complained to anyone else about Stites' behavior. However, plaintiff testified that plaintiff and Ingram met with Stites' supervisor, Bob Montez, and that Ingram complained to Montez about Stites' behavior on behalf of both women. *See* Boswell testimony at 169-70; Ingram testimony at 550.

[2] The motion was filed a week before trial. The trial date was subsequently rescheduled several times due to a variety of reasons not relevant here.

2

Norman Stites. Second, the Court found the balance of defendant's arguments untimely. The Court noted that the deadline for filing dispositive motions was September 2, 2005, and that defendant had previously filed a motion for summary judgment as to plaintiff, which, *inter alia*, specifically addressed the merits of plaintiff's sexual harassment, retaliation and constructive discharge claims.[3] The Court found that defendant could have raised all of the eve-of-trial arguments in a timely manner, and the Court refused to excuse defendant's failure to do so.

The Court reiterates these earlier holdings, and further holds that while plaintiff undoubtedly could have plead her claims more specifically, the complaint did allege that defendant engaged in "gender-based . . . discriminatory employment practices intended to harass plaintiff," and that "defendant's persistent pattern of harassment and discrimination had finally become intolerable for plaintiff." First Amended Complaint ¶¶ 83, 96. Moreover, defendant's assertion that it "did not have notice" of plaintiff's claims is belied by the extensive record in this case. Both plaintiff and Stites testified at length during their depositions about the events giving rise to plaintiff's sexual harassment, retaliation and constructive discharge claims, and these claims were litigated on summary judgment. *See* Docket Nos. 215, 278, 289 & 295. Defendant also cited the nature of plaintiff's claims – "Unlike other Plaintiffs, Boswell's claims arise [out] of the alleged harassment by one Operations Manager, Norman Stites" – as one ground for severing plaintiff and the remaining plaintiffs' claims for separate trials. *See* Docket No. 372. It was only after defendant's summary judgment motion was unsuccessful as to those claims, in the third year of litigating this case and on the eve of trial, and now with new lawyers, that defendant first raised the argument that the sexual harassment claims were not part of this case.

**A.    Sexual harassment**

Defendant contends that plaintiff's evidence was insufficient as a matter of law to show that Stites sexually harassed her.    Boswell testified that at weekly work meetings Stites hugged and tried to kiss her, on several occasions did kiss her, repeatedly asked her questions of a personal nature

---

[3] Indeed, the Court notes that defendant's present arguments regarding plaintiff's sexual harassment, retaliation and constructive discharge claims appear to be largely cut and pasted from the summary judgment motion. *Compare* Motion for Summary Judgment (Docket No. 215) at 12-17 *with* Renewed Motion for Judgment on the Pleadings at 4-10.

**United States District Court**
For the Northern District of California

including questions about whether she was dating anyone and whether she intended to get married. Boswell and another co-worker, Deborah Ingram, testified that Stites hugged, kissed and/or attempted to kiss numerous women he managed, and that those who did not object to his actions were favored in the workplace by being allowed to record unearned hours, working as much overtime as they wanted, being assigned preferential shifts, and having their leave requests honored. In contrast, Boswell testified that after she rebuffed Stites' advances, he denied her request for a day off to attend a funeral and repeatedly allowed other co-workers to yell at her in the workplace without reprimand. Boswell also testified that she began having problems with her paycheck, and that Stites delayed in remedying the problem. Finally, Boswell testified that toward the end of 2001, her shift was unexpectedly changed to include weekends, a shift reserved for more junior employees. Boswell was the only employee whose schedule changed in any significant way[4], and Boswell testified that the schedule change imposed a hardship on her because of her child care needs. Boswell also testified that Stites was aware that the new schedule would post a hardship for her because she had previously declined working that shift due to child care needs. Both Boswell and Ingram testified that Stites was responsible for the schedule change, and the documentary evidence regarding the schedule change indicated that Stites was, at the very least, involved in the schedule change. A reasonable jury could conclude that Boswell was subjected to a hostile work environment. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108-09 (9th Cir. 1998).

FedEx also argues that Boswell's claim fails because she received high performance evaluations and was not disciplined. However, courts employ a totality of the circumstances test in analyzing hostile work environment claims, and whether allegedly abusive conduct interferes with a plaintiff's work performance is only one of the factors to be considered. *See Nichols v. Azteca Rest. Enters. Corp.*, 256 F.3d 864, 872 (9th Cir. 2001). Defendant also contends that plaintiff's claim fails as a matter of law because she did not avail herself of FedEx's internal complaint processes. However, Boswell and

---

[4] Plaintiff's evidence showed that other employees kept the same days but had their start times changed by an hour or so, but that plaintiff was the only person who was required to work different days; that Stites was aware that the shift change would pose a hardship for plaintiff; that Stites was involved in the schedule change; and that after plaintiff resigned, another employee was offered, and worked, plaintiff's prior shift, therefore calling into question the reason for changing plaintiff's shift.

4

Ingram both testified that they met with Stites and complained about his behavior, and that they complained about Stites to Stites' manager, Bob Montez, and that no action was taken. Boswell also testified that she had complained to Montez about other problems with Stites and that Montez's response had been, "Do you really want to do this? Because you're going to get Norman Stites in trouble." Boswell testimony at 106. Based on this evidence, a reasonable jury could reject FedEx's affirmative defense under *Faragher-Ellerth*.

### B.     Retaliation

Boswell testified that after she and Ingram complained to Stites and Montez, and after she rejected Stites' advances, she was retaliated against in numerous ways as described *supra*. To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Manatt v. Bank of America NA*, 339 F.3d 792, 800 (9th Cir. 2003). FedEx argues that Boswell failed to show any of the three elements.

The Court disagrees. The Court has previously found that Boswell's complaint to Stites and Montez about Stites' behavior constitutes protected activity. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (holding that making informal complaints to a supervisor is protected activity under Title VII). Similarly, a jury could conclude that plaintiff suffered an adverse employment action. Here, Boswell's evidence showed that she was assigned a weekend shift that was normally reserved for junior employees, that she was the only person whose shift changed, and that the change imposed a known hardship on her because of her child care situation; that she was denied a one day funeral leave; that Stites allowed her co-workers to yell at and belittle her with impunity; and that Stites did not help her address a problem with her paycheck. Finally, a jury could reasonably conclude that there was a causal link between Boswell's protected activity and the adverse actions she experienced, both due to temporal proximity and the fact that these actions directly or indirectly involved Stites.

### C.     Constructive Discharge

Under California law, the test for constructive discharge is whether conditions were so

5

"intolerable or aggravated" that a reasonable employee would have resigned, and whether the employer knew about the conditions and their effect on the employee and could have remedied them but did not. *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1245 (1994). For all of the same reasons set forth above, the Court concludes that a jury could reasonably conclude based on the evidence at trial that conditions were so intolerable that a reasonable employee would have resigned. Further, Boswell testified that management was aware of Stites' behavior and that they failed to take any action.

### D. Damages

Defendant contends that plaintiff's claim for lost earnings should be dismissed as a matter of law because plaintiff did not mitigate her damages. However, plaintiff testified that she worked at a flea market after she left FedEx, and she later found employment at a legal office. In addition, Stanley Stephenson, an economist and plaintiff's damages expert, testified about plaintiff's lost earnings. Thus, there was sufficient evidence in the record to support the jury's lost earnings award.

Defendant also contends that plaintiff's punitive damages claim should be dismissed as a matter of law because there was no evidence of intentional discrimination. This contention lacks merit. The jury found that Stites sexually harassed plaintiff, retaliated against her for engaging in protected activity, constructively discharged her, and that plaintiff's complained about Stites to no avail; such intentional conduct could support a punitive damages award. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999) (holding an employer may be liable for punitive damages in any case where it "discriminate[s] in the face of a perceived risk that its actions will violate federal law.").

The Court addresses defendant's contentions regarding the Title VII damages cap *infra*.

### II. Motion for new trial, or alternatively for amended judgment

Defendant moves for a new trial, or in the alternative for an order amending the judgment and dismissing all claims against FedEx. Defendant also argues for remittitur of the damages award. Defendant argues that the verdict is contrary to the clear weight of the evidence. Defendant also argues that the Court erred by admitting certain testimony, improperly instructing the jury, and by preventing defendant from interviewing *Satchell* class members as part of its trial preparation.

6

Federal Rule of Civil Procedure 59(a) states, "A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). The Ninth Circuit has noted, "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Instead, the court is "bound by those grounds that have been historically recognized." *Id.* "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007) (*quoting Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000).

### A. Insufficiency of evidence/remittitur

In reviewing a Rule 59 motion based on insufficiency of the evidence, the Court must evaluate the evidence and assess for itself the credibility of witnesses. *See Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). However, the Court may not grant a Rule 59 motion "merely because it might have come to a different result from that reached by the jury." *Wilhelm v. Assoc. Container Transp. (Australia) Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981).

Here, for the reasons set forth above in Section I *supra*, the Court finds that the jury's verdict is not contrary to the clear weight of the evidence. The Court also notes that the jury had the opportunity to hear all of the parties' testimony and assess the credibility of Boswell and defendants' witnesses. The jury found against defendant on all of plaintiff's claims, and in doing so, implicitly found at least some of defendant's witnesses incredible. The Court cannot fault that assessment. Further, the Court finds that plaintiff was articulate, possessed a forthright demeanor, and that her testimony was persuasive.

Defendant alternatively seeks remittitur of the damages awarded by the jury. Defendant

7

contends that the compensatory and punitive damages awards are grossly excessive and unsupported by the evidence. The Ninth Circuit has held that a jury's finding on the amount of damages should be reversed only if the amount is "grossly excessive or monstrous," *Zhang*, 339 F.3d at 1040 (internal quotation marks omitted), or if the amount is "clearly unsupported by the evidence" or "shocking to the conscience." *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988) (internal quotation marks omitted). In making this determination, the Court must focus on evidence of the qualitative harm suffered by plaintiff. "The severity or pervasiveness of the conduct is relevant insofar as it provides probative evidence from which a jury may infer the nature and degree of emotional injury suffered, but direct evidence of the injury is still the primary proof." *Velez v. Roche*, 335 F. Supp. 2d 1022, 1038 (N.D. Cal. 2004); *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 513-14 (9th Cir. 2000) (focusing on evidence of harm suffered by the plaintiff, such as anxiety and rashes).

As discussed *infra*, the Court applies the Title VII damages cap to plaintiff's punitive damages award, thus reducing the overall damages to $850,000 (that is, $300,000 lost earnings, $250,000 emotional distress and $300,000 punitive damages). The Court finds that there was sufficient evidence to support such damages, and will not further reduce the damages award.

### B. Barring defendant from questioning plaintiff about the failure to specifically plead sexual harassment in the complaint

Defendant contends that the Court erred by not allowing defense counsel to "fully question" plaintiff on the *absence* of sexual harassment allegations in the First Amended Complaint. Defendant also contends that the Court erred by not taking "judicial notice" of the absence of such allegations as requested by defendant at the beginning of trial.

Defendant's contentions lack merit. As the trial transcript demonstrates, defense counsel was afforded ample opportunity to question plaintiff about various statements that she made about why she left FedEx, and plaintiff's failure to specifically mention sexual harassment in those statements. *See*, *e.g.*, Boswell cross-examination at 202-06 (questioning plaintiff about absence of "sexual harassment" allegations in statement she filed with state agency for unemployment, e-mails plaintiff sent while at FedEx, and plaintiff's DFEH charge). Thus, defendant made the point that it now claims it was precluded from making: that plaintiff did not complain about sexual harassment by Stites. The Court

8

finds no error in its decision to bar defense counsel from questioning plaintiff about what was not included in the First Amended Complaint, as that pleading was drafted by her lawyer, and was not verified by plaintiff. Under those circumstances, it is inappropriate to question plaintiff about the decision not to include certain allegations in the complaint.

### C. Testimony by Deborah Ingram and Jennifer Thomas

Defendant contends that the Court erred in admitting certain testimony[5] by two of plaintiff's co-workers, Deborah Ingram and Jennifer Thomas, about their experiences with Norman Stites. For example, Ms. Ingram testified, *inter alia*, that Stites hugged and kissed and/or attempted to kiss the female employees he supervised, including both Ingram and plaintiff, that Stites' conduct was unwelcome, and that "if you played the kissing game with Norman Stites, you got to do what you wanted to do. You got a golden ticket. And if you didn't play the kissing game, your life was hell. Period." Ingram testimony at 561. Ms. Ingram also testified that she and plaintiff met with Stites and told him that they did not want him to hug and kiss them, and Ingram also told Stites' supervisor, Bob Montez, about Stites behavior. Ms. Thomas, whose direct testimony spans three pages in the trial transcript, *see* Thomas testimony at 610:24-613:23, testified that Stites sent her e-mails that she found inappropriate and that Stites asked her out on a date.[6]

The testimony of Ms. Ingram and Ms. Thomas was probative of plaintiff's claim that she was subjected to a sexually hostile workplace. In addition, Ms. Ingram's testimony was also proof that FedEx management had notice of Stites' conduct but failed to take remedial action. As defendant's motion concedes, the "trial court enjoys considerable discretion in determining whether to exclude evidence under Rule 403 for unfair prejudice." *Tennison v. Circus Circus Enters.*, 244 F.3d 684, 690 (9th Cir. 2001) (in sexual harassment case, affirming district court's exclusion of certain evidence

---

[5] Again, because defendant did not include citations to the trial transcript in its motion, the Court can only guess as to which portions of the witnesses' testimony is at issue.

[6] Defendant also argues that the Court improperly overruled a hearsay objection to Ms. Thomas' testimony. The transcript reflects that the Court sustained defendant's hearsay objection, overruled a non-specific objection to a question that did not clearly call for hearsay, and that defense counsel failed to make a further hearsay objection. *See* Thomas testimony at 612:17-613:23.

9

because evidence would have amounted to "mini trial," and noting that court had allowed "significant amount of more recent evidence regarding other co-workers, including Fernandez, Amato and three other women."). The Court finds no error in allowing the testimony of Ms. Ingram or Ms. Thomas.

### D. Denial of defendant's motions *in limine*

#### (1) Motion *in limine* to exclude Stanley Stephenson from testifying

Defendant contends that the Court erred when it denied defendant's motion *in limine* to exclude plaintiff's economics expert, Stanley Stephenson, from testifying. As defendant argued in the motion *in limine*, defendant contends that Stephenson's December 2005 expert report consisted solely of preliminary findings. As the Court held in denying defendant's motion *in limine*, "The December 2005 report contains a specific damages range for plaintiff Boswell, and explains the experts' methodology in reaching that number. Although defendant emphasizes language in that report stating that the economic loss analysis may be revised based upon additional information, plaintiff states that, in fact, the experts have not conducted any additional research and thus that they will be limiting their testimony to the opinions set forth in the December 2005 report. As so limited, the foundational issues go to the weight of the expert's testimony, not its admissibility." The Court finds no error in this ruling.

#### (2) Motion *in limine* to exclude evidence of plaintiff's child's illness and/or disability

Defendant argues that the Court erred by denying defendant's motion *in limine* to exclude as irrelevant evidence of plaintiff's child's illness and/or disability. The Court denied defendant's motion, finding that such evidence would be admissible if relevant and material to issues in the case. At trial, plaintiff testified that she was unable to work the new shift because she had a sick child and the shift posed childcare issues. Thus, the testimony was relevant. The Court also notes that there was very little testimony about plaintiff's daughter's health, and all such testimony was in the context of plaintiff's work schedule.

Further, defendant's assertion that FedEx was "not put on proper notice" of this issue lacks merit. The First Amended Complaint alleged, *inter alia*, that plaintiff's daughter suffered from severe

10

asthma, FAC ¶ 91, and that plaintiff could not work during the new shift because of childcare issues. *Id*. ¶ 96. Plaintiff testified about these matters during her May 2005 deposition, and the issue was briefed in defendant's summary judgment motion. If defendant believed that further discovery on that issue was necessary, defendant could have conducted such discovery.

### (3) Motion *in limine* to exclude evidence of telephone call

Defendant argues that the Court erred by denying defendant's motion *in limine* to exclude as irrelevant evidence of a telephone call between Peggy Reardon, Lou Vigiletti and plaintiff that took place after plaintiff left her employment with FedEx. The Court denied this motion, ruling "if the content of the phone call includes otherwise admissible relevant information it will not be excluded based on FRE 403." Pretrial Order at 5 (Docket No. 579). At trial, when plaintiff was questioned about this phone call, defense counsel objected solely on hearsay grounds, and did not challenge the relevance of this testimony. *See* Boswell testimony at 129. In any event, defendant has not identified any prejudice flowing from this testimony, which was brief.

### (4) Motion *in limine* to exclude plaintiff's witnesses and exhibits

Defendant moved to exclude all of plaintiff's witnesses and exhibits on the ground that plaintiff filed her pretrial witness and exhibit lists late. However, as stated in plaintiff's opposition to that motion, and as reflected in the docket, plaintiff filed her witness and exhibit lists on September 26, 2006, the same date that defendant filed its pretrial conference statement containing defendant's witness and exhibit lists. Both defendant's motion *in limine* and the present motion generally assert that defendant has been "prejudiced" by plaintiff's failure to comply with court deadlines. Defendant has not demonstrated how it was prejudiced by plaintiff's filing of the witness and exhibit lists on the same day that it filed its own lists.

### E. Objections to Stites' testimony

Defendant generally contends the Court erred in overruling defendant's objections to Stites' videotaped depositions for the reasons set forth in defendant's pretrial evidentiary objections (Docket

11

No. 739) as well as defendant's motion *in limine* No. 3 (Docket No. 515). The Court hereby incorporates the Order ruling on defendant's objections (Docket No. 743), and the pretrial order ruling on motion *in limine* No. 3 (Docket No. 579). The only particular testimony that defendant identifies in the motion[7] is testimony regarding a warning letter that Stites received in 1995 regarding a sexually inappropriate hand gesture that Stites made towards a male employee, and any lawsuit that may have been filed as a result. Stites testimony at 125-131, 136, 183-84. The Court sustained defendant's objection to some of this testimony, but allowed some of the testimony because it was probative of Stites' understanding of what constitutes sexual harassment and of FedEx's sexual harassment policy, as well as FedEx management's notice of Stites' conduct. The Court finds no error in these rulings.

### F. Jury instructions

Defendant generally contends that the Court erred by failing to give fifteen instructions proposed by defendant. The Court rejected these instructions as unnecessary, confusing and/or argumentative. With the exception of the punitive damages instruction, addressed *infra*, the Court finds no error in the failure to give the instructions at issue.

Somewhat confusingly, defendant contends that the Court erred by *not* giving certain California law instructions *and also* that only federal law governs plaintiff's claims. In support of the argument that only federal law governs plaintiff's claims – and thus that the Title VII cap of $300,000 should apply to plaintiff's punitive and emotional distress damages awards[8] – defendant asserts that in its motion for summary judgment, "FedEx analyzed the sexual harassment claims only under federal law." Motion for a New Trial at 18. In fact, however, while it is true that defendant's motion for summary judgment *analyzed* the sexual harassment claims under federal law, defendant's motion for summary judgment correctly noted that plaintiff's claims were brought under Title VII, § 1981[9] *and FEHA*, *see*

---

[7] Again, defendant did not provide a citation to the record and the Court was required to review the record to find the testimony at issue.

[8] Defendant concedes that the Title VII damages cap does not apply to the jury's $300,000 award for lost earnings.

[9] The Court dismissed plaintiff's § 1981 claim prior to trial.

1 Motion for Summary Judgment at 1; and argued that plaintiff's state law claims were untimely under
2 state law. *See id*. at 8. The First Amended Complaint alleges claims under federal and state law, and
3 the jury was instructed that plaintiff brought her claims under federal and state law.

4 However, because the Court finds that plaintiff's claims were brought under federal and state
5 law, the Court agrees that the punitive damages instruction was incorrect as to the state law standard of
6 proof for punitive damages. Plaintiff concedes that the standard for punitive damages under state law
7 is "clear and convincing," while the standard under federal law is the lower "preponderance of the
8 evidence." *See* 42 U.S.C. § 1981a(b)(1); Cal. Civ. Code § 3294(a); *see also Hawkins v. Merchants Nat.
9 Bank*, 127 F.3d 1105 (9th Cir. 1997); *Erdmann v. Tranquility, Inc.*, 155 F. Supp. 2d 1152, 1167 (N.D.
10 Cal. 2001). Plaintiff has not cited any authority for the proposition that the "preponderance of the
11 evidence" standard governs a punitive damages award on a FEHA claim brought in federal court, nor
12 could the Court locate any such authority. The Court cannot assume, as plaintiff argues, that the jury
13 would have awarded $2,450,000 in punitive damages under the more stringent state law standard.

14 Accordingly, the Court finds that it must apply the Title VII cap to the jury's punitive damages
15 award, thus reducing the punitive damages award to $300,000. Because the standards for liability under
16 FEHA and Title VII are effectively the same,[10] the jury's awards of $300,000 in lost earnings and
17 $250,000 in emotional distress damages are unaffected.

---

[10] Defendant contends that the Court erred by not giving defendant's proposed FEHA instruction on "adverse employment action." Defendant is correct that the California courts have interpreted "adverse employment action" as an action that "materially affects the terms, conditions, or privileges of employment," *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1051 (2005), while the Ninth Circuit has interpreted "adverse employment action" more broadly to also include an action "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Here, the Court's failure to give a separate "adverse employment instruction" based on state law was harmless error, as at least some of the challenged adverse employment actions, such as changing plaintiff's shift and the delay in processing plaintiff's paycheck, materially altered the terms, conditions or privileges of her employment.

13

### D. Interviewing class members in *Satchell* case

Defendant argues it is entitled to a new trial because the Court denied defendant's request to interview class members in the *Satchell* case. After the close of discovery in this action, defendant sought to conduct "confidential interviews" of 14 FedEx employees who were also class members in *Satchell et al. v. FedEx Express*, C 03-2659 SI. The Court denied defendant's request on the ground that fact discovery had closed. The Court finds no error in this ruling. Defendant was well aware of the 14 individuals' identities prior to the close of discovery, and could have deposed these individuals within the discovery period.

## CONCLUSION

For the foregoing reasons, because the punitive damages instruction incorporated the Title VII burden of proof, the Court applies the Title VII cap of $300,000 to the punitive damages award. Plaintiff's compensatory damages award of $550,000 is unaffected; the jury's award of $300,000 for lost earnings is not subject to the Title VII cap, and the award of $250,000 in emotional distress damages is pursuant to state law. This order resolves defendant's renewed motion for judgment as a matter of law and defendant's motion for a new trial. (Docket Nos. 845 & 846).

**IT IS SO ORDERED.**

Dated: March 18, 2008

SUSAN ILLSTON
United States District Judge