IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALVARADO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL EXPRESS CORPORATION, <br><br> Defendant. | No. C 04-0098 SI <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR DECLARATORY RELIEF; GRANTING PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF REQUIRING DEFENDANT TO FILE AN INTERPLEADER COMPLAINT; AND GRANTING PLAINTIFFS' MOTION FOR CLARIFICATION** |

On November 7, 2008, the Court heard argument on defendant's motion for declaratory relief. For the reasons set forth below, the Court GRANTS defendant's motion for declaratory relief, GRANTS plaintiffs' motion for administrative relief requiring defendant to file an interpleader complaint, and GRANTS plaintiffs' motion for clarification that plaintiffs will not be required to interplead any additional monies.

**BACKGROUND**

In November 2007, the seven remaining plaintiffs reached settlements with FedEx ("settlement plaintiffs").[1] In July of 2006, those plaintiffs fired one of their attorneys, Kay McKenzie Parker. After firing Ms. Parker, the settlement plaintiffs continued to be represented by Waukeen McCoy, and Mr. McCoy conducted and finalized the settlement negotiations on behalf of those plaintiffs. Each plaintiff signed identical settlement agreements, save for the amount of the settlement, and each agreement defines "Releasing Party" as the plaintiff and "[HIS or HER] heirs, successors, administrators, agents

---

[1] Other plaintiffs have been dismissed on summary judgment or proceeded to trial.

or representatives, and attorneys in this matter . . . ." Settlement Agreement ¶ 2, Douglas Decl., Docket No. 980. The settlement agreements release all claims for attorneys' fees, including any claims by Ms. Parker for her fees and costs:

> . . . Releasing Party knowingly, willingly, and voluntarily releases and waives all rights to, and claims for monetary relief or individual equitable relief for HIMSELF . . . against Released Parties regarding any aspect of HIS employment with FedEx Express, the subsequent ending of that employment, and any other events occurring prior to, and including, the effective date of this Agreement . . . These rights and claims for monetary relief or individual equitable relief include, but are not limited to . . . any or all rights or claims for monetary relief or individual equitable relief under any federal, state, or local statutes, or under common law, *including any claims for attorneys' fees and/or costs*.

Settlement Agreement ¶ 5 (emphasis added). Paragraph 8 of the settlement agreements provides that "each party will bear its own costs, including attorney's fees, arising from this action." *Id*. ¶ 8. Paragraph 18 of the settlement agreements states "Releasing Party warrants and represents that HE is fully entitled to give this complete release and discharge, and that HE is fully aware of all facts and rights to HIS claims." *Id*. ¶ 18. Paragraph 21 of the settlement agreements provides a contractual right to indemnification by FedEx against the settlement plaintiffs in the event that litigation continues:

> Releasing Party agrees never to institute, directly or indirectly, any proceeding of any kind against Released Parties based on, arising out of, or as a consequence of Releasing Party's employment with FedEx Express or the termination of that employment. If Releasing Party does file or institute, either directly or indirectly, any lawsuit or proceeding of any kind against Released Parties on account of any matters which can be waived by law and over which HE has waived HIS rights in this Agreement, Releasing Party agrees to indemnify and hold Released Parties harmless from damages or costs incurred by Released Parties as a result of HIS actions, including any costs, expenses, and reasonable attorneys' fees incurred by Released Parties. Thus, based on this provision, should the Court decline to award declaratory relief, FedEx will have the right to sue the Settlement Plaintiffs for indemnification.

*Id*. ¶ 21. The settlement agreements are signed by the settling plaintiffs and Mr. McCoy. Underneath Mr. McCoy's signature the agreements state:

> I, Waukeen Q. McCoy, of the Law Offices of Waukeen Q. McCoy, do hereby acknowledge full and complete satisfaction of any claim for attorneys' fees and costs regarding this matter and certify that to my knowledge no other attorney or firm or other entity has a claim for attorneys' fees and costs in this matter except those claims that have been filed with the Court by Kay Parker and Michael Cael Davis.

*Id*. at 7.

After finalizing the settlements, FedEx filed a motion for counterclaim and interpleader relief. Docket No. 955. FedEx sought to interplead 40% of the settlement funds to protect itself against

2

multiple claims from various people who have filed liens in this case. Ms. Parker filed a "conditional acceptance" of the interpleader, stating that she did not waive her right to seek fees directly from FedEx. Docket No. 958. Lienholder Carlene Young (an expert retained by plaintiffs) and lienholder Michael Davis (plaintiffs' former attorney) filed statements of nonopposition to the interpleader. Docket Nos. 969 & 998. Plaintiffs filed a response to FedEx's interpleader motion, stating that "Plaintiffs do not oppose the interpleader of the amount in controversy: 40% of the settlement funds . . . [and] the remaining 60% is uncontested and should be immediately disbursed to the order of Plaintiffs." Docket No. 974 at 2. On December 18, 2007, the Court held a hearing on defendant's motion. Docket No. 981. After receiving supplemental filings by plaintiffs and Mr. McCoy confirming that the settlement plaintiffs would each receive a full 60% of their respective settlement amounts and were not paying any additional money beyond a maximum of 40% of the settlement amount to Mr. McCoy for attorneys' fees or costs, on February 4, 2008 the Court granted defendant's motion in part and interplead 50% of the settlement funds ($749,500.00).[2] Docket No. 1008. On February 14, 2008, the Court amended the order to join an additional lienholder, Angela Alioto. Docket No. 1018. On May 2, 2008, plaintiffs entered into a stipulation with one lienholder, Michael Davis, to disperse $48,000 from the interplead funds to Davis. Docket No. 1099.

Ms. Parker is also seeking fees for the work she performed on behalf of the two plaintiffs who prevailed at trial[3]; those fee petitions (Edward Alvarado and Charlotte Boswell) are currently pending before the Special Master. Ms. Parker has submitted "an exemplar of the form agreement that was signed by all Plaintiffs." Parker Decl. Ex. A, Docket No. 932.[4] The form agreement states, *inter alia*, "We have agreed to the following attorney fee arrangement . . . 40% of any amounts received or recovered by way of settlement after arbitration, mediation or trial." *Id*. at 1. The agreement also states

---

[2] The Court interplead 50% of the funds because at that time it was unclear whether the lienholders' claims might exceed 40% of the funds.

[3] Three plaintiffs – Edward Alvarado, Pernell Evans, and Charlotte Boswell – prevailed in jury trials. The Court granted defendant's motion for judgment as a matter of law as to Pernell Evans.

[4] Apparently all of the fee agreements with the judgment and settlement plaintiffs are the same, except that after trial the judgment plaintiffs signed an addendum explicitly assigning statutory fees to Mr. McCoy.

3

that "You hereby grant us a lien on any and all claims, causes of action, judgments or settlements that are the subject of my representation under this agreement. Our lien will be for any sums due and owing to me at the conclusion of our services. The lien will attach to any recovery you may obtain, whether arbitration award, judgment, settlement or otherwise." *Id*. at 2.

In an April 7, 2008 order, the Special Master found that the fee agreements did not address the issue of statutory fees after a trial, and instead "on their face, the contracts appear to address only what the attorneys will receive 'by way of settlement.'" Special Master's Order at 11, Docket No. 1062. The Special Master found that Ms. Parker has standing under FEHA to seek her reasonable attorneys' fees and costs on behalf of the judgment plaintiffs, and that she has standing to seek those fees and costs directly from FedEx. *Id*. at 14. The Special Master found that "none of the agreements between [the judgment] plaintiffs and counsel have the effect of assigning statutory fees to the clients or of assigning them to McCoy at the exclusion of Parker, and that the existence of a contract also does not deprive Parker of standing. Pursuant to *Flannery* [*v. Prentice*, 26 Cal. 4th 572 (2001)] and *Lindelli* [*v. Town of San Anselmo*, 139 Cal. App. 4th 1499 (2006)], Parker has standing to seek fees in *Alvarado* and *Boswell*." *Id*. at 14-15. The Special Master also found that Ms. Parker did not have standing to seek statutory fees from FedEx under a *quantum meruit* theory. *Id*. at 17. This Court adopted these findings in an order filed June 5, 2008. (Docket No. 1145).

Now before the Court are three motions related to the interplead funds and Ms. Parker's ability to seek fees related to the settlement plaintiffs. First, defendant has renewed a previous motion for declaratory relief, seeking an order that Ms. Parker lacks standing to seek attorneys' fees for work performed on behalf of the settlement plaintiffs directly against FedEx. Second, plaintiffs have filed a "motion for administrative relief" seeking an order requiring FedEx to file an interpleader complaint. Third, plaintiffs have filed an ex parte motion seeking clarification of the Court's February 2008 order granting defendant's motion for interpleader. Plaintiffs seek clarification that they will not be required to interplead any funds above the 50% of funds already interplead.

4

**DISCUSSION**

**I.      Defendant's motion for declaratory relief**

FedEx contends that Ms. Parker is bound by the settlement agreements and therefore has released her claim for attorneys' fees and costs against FedEx. FedEx also argues that Ms. Parker's fee agreements with her clients, which provide that the attorneys shall recover "40% of any amounts received or recovered by way of settlement after arbitration, mediation, or trial," overrides any right Ms. Parker may have had under FEHA to seek fees directly from FedEx. Finally, FedEx argues that to the extent Ms. Parker has any right to seek fees under a *quantum meruit* theory, that right is against her former clients, not FedEx.

Ms. Parker contends that she is not bound by the settlement agreements' release of attorneys' fees and costs because neither the plaintiffs nor Mr. McCoy represented her interests, and the parties excluded her from the settlement process. Ms. Parker also contends that she has the right to seek fees directly from FedEx under FEHA, and she relies on the Special Master's order (and this Court's adoption of that order) finding that Ms. Parker has standing under FEHA to seek fees directly from FedEx for the work she performed on behalf of the judgment plaintiffs.

The Court is compelled to make a few observations before resolving the instant motions. As the docket well reflects, this litigation has been exceptionally protracted. The Court is sympathetic to the desires of plaintiffs and defendant to resolve this matter so plaintiffs can receive the remaining settlement funds to which they are entitled, and defendant can enjoy the peace for which it has bargained. It is extremely unfortunate that although the parties have settled this action, countless resources continue to be expended on this case due to satellite fee disputes. In the view of the Court, the multiple lawyers claiming to represent plaintiffs have not acted with the best interests of plaintiffs in mind.

Assuming arguendo that Ms. Parker is not bound by the settlement agreements, the Court nevertheless concludes that she may not seek fees directly from FedEx. In *Flannery v. Prentice*, the California Supreme Court held that "attorney fees awarded pursuant to [FEHA] (exceeding fees already paid) belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them." 26 Cal. 4th at 590. Here, as the Special Master noted in his order, the fee agreements expressly

address fee arrangements in the event of a settlement, and under those agreements the attorneys shall recover "40% of any amounts received or recovered by way of settlement after arbitration, mediation, or trial." The Court concludes that these agreements constitute an "agreement to the contrary" under *Flannery*, and thus Ms. Parker does not have standing to seek fees under FEHA directly from FedEx.[5]

To the extent Ms. Parker is entitled to fees, she may seek them from her former clients under *quantum meruit*.[6] In *Fracasse v. Ray Raka Brent*, 6 Cal. 3d 784 (1972), the California Supreme Court held that an attorney retained under a contingent fee agreement and then discharged with or without cause is to be compensated in the amount of the reasonable value of her services rendered to the time of discharge. The Court also noted, "To the extent that such a discharge is followed by the retention of another attorney, the client will, in any event be required, out of any recovery, to pay the former attorney for the reasonable value of his services. Such payment, in addition to the fee charged by the second attorney, should certainly operate as a self-limiting factor on the number of attorneys so discharged." *Id.* at 791. The Court found that its ruling "preserve[s] the client's right to discharge his attorney without undue restriction, and yet acknowledge[s] the attorney's right to fair compensation for work performed." *Id.*; *see also Madirossian & Assoc., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 272 (2007) ("It is well settled that a contingency fee lawyer discharged prior to settlement may recover in quantum meruit for the reasonable value of services rendered up to the time of discharge."); *Di Loreto v. O'Neill*, 1 Cal. App. 4th 149, 156-57 (1991) ("[Where] the contingent fee is insufficient to meet the quantum meruit claims of both discharged and existing counsel, the proper application of the *Fracasse* rule is to use an appropriate pro rata formula which distributes the contingent fee among all discharged and existing attorneys in proportion to the time spent on the case by each. Such a formula insures that each attorney is compensated in accordance with work performed, as contemplated by *Fracasse*, while

---

[5] The Special Master also found it notable that the judgment plaintiffs signed a separate addendum explicitly waiving their right to statutory fees; here there is no indication that the settlement plaintiffs signed any such addendum, which further weighs in favor of finding that the fee agreement covers statutory claims.

[6] The Court notes that one of the settlement plaintiffs, Alexander Rivera, has recently filed a motion to compel arbitration of Ms. Parker's fee dispute. The Court will address the motion to compel arbitration, as well as set a schedule to resolve all remaining issues relating to the interplead funds, at a February 5, 2009 case management conference.

6

assuring that the client will not be forced to make a double payment of fees.").

Accordingly, for the foregoing reasons, the Court GRANTS defendant's motion for declaratory relief.

## II. Plaintiff's motion for administrative relief requiring FedEx to file an interpleader complaint

Plaintiffs contend that under Rule 22, defendant is required to file an interpleader complaint suing the individuals with claims to the interplead funds. The Court notes that plaintiffs did not raise this argument at the time of defendant's motion for counterclaim and interpleader, and in fact plaintiffs agreed to the interpleader process as proposed by defendant. Nevertheless, defendant indicated at the hearing on this motion that it was not opposed to filing an interpleader complaint. In the interest of ensuring that the interpleader is procedurally correct, the Court GRANTS plaintiff's motion for administrative relief requiring defendant to file an interpleader complaint. The Court shall set a schedule for the filing of the interpleader complaint at the February 5, 2009 case management conference.

## III. Plaintiff's motion for "clarification" that they will not be required to interplead more than 50% of the settlement funds

Plaintiffs seek clarification that they will not be required to interplead any additional funds. It is unclear to the Court why plaintiffs have filed this motion, as the Court's previous order did not suggest that plaintiffs would ever be required to interplead additional funds, and the balance of the settlement funds have been disbursed to plaintiffs. Nevertheless, the Court confirms to plaintiffs that they will not be required to interplead any additional funds, and GRANTS plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for interpleader, GRANTS plaintiffs' motion for administrative relief, and GRANTS plaintiffs' motion for clarification. (Docket Nos. 1163, 1212, 1193). The Court will set a schedule for resolving all remaining issues related to the interplead funds, including plaintiff Rivera's motion to compel arbitration, at the February 5, 2009 case

management conference.

**IT IS SO ORDERED.**

Dated: January 27, 2009

SUSAN ILLSTON
United States District Judge