IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALVARADO, *et al.*, | No. C 04-0098 SI; No. C 04-0099 SI |
| Plaintiffs, | **ORDER DENYING MR. McCOY'S MOTION TO IMMEDIATELY RELEASE SETTLEMENT FUNDS AND DISMISS INTERPLEADER; GRANTING DEFENDANT'S RULE 60(a) MOTION; DENYING PLAINTIFF RIVERA'S MOTION TO COMPEL ARBITRATION; AND SETTING SCHEDULE FOR RESOLUTION OF INTERPLED FUNDS** |
| v. | |
| FEDEX CORPORATION, *dba* FEDEX EXPRESS, | |
| Defendant. | |

On February 25, 2008, the Court held a hearing on various motions regarding the interpled funds. For the reasons set forth below, the Court DENIES plaintiffs' motion to dismiss the interpleader, GRANTS defendant's Rule 60(a) motion, DENIES plaintiff Rivera's motion to compel arbitration, and sets a briefing schedule to resolve all outstanding issues necessary to disburse the interpled funds.

**1.    Mr. McCoy's motion to immediately release settlement funds and dismiss the interpleader action**

On February 4, 2009, "cross-defendant"[1] Waukeen McCoy filed a motion to dismiss the interpleader action for lack of subject matter jurisdiction. Mr. McCoy contends that the interpleader should be dismissed because there is no single fund, and there are no adverse claimants who would potentially expose FedEx to multiple liability. Mr. McCoy requests that the Court "immediately release the seven separate and distinct settlement funds to the individual Plaintiffs and their attorney Waukeen

---

[1] It is unclear to the Court why Mr. McCoy has characterized himself as a "cross-defendant" because he was never named in the interpleader action.

McCoy."

Both FedEx and the lienholders oppose Mr. McCoy's motion. Although Mr. McCoy is plaintiffs' counsel, Mr. McCoy has filed the motion in his capacity as "cross-defendant," and it is unclear whether the settlement plaintiffs[2] join in Mr. McCoy's request to have the settlement funds immediately disbursed to themselves and Mr. McCoy. The Court has received a letter from the "Clients," dated January 30, 2009, which states in full:

> Dear Judge Illston,
>
> I am writing this letter to inform you of the unethical conduct that Mr. Waukeen McCoy has displayed in the Alvarado v. FedEx case.
>
> You instructed Mr. McCoy and the clients to provide you a signed declaration that Mr. McCoy would only get 40 percent from the settled cases. After the signed declarations were submitted to the court Mr. McCoy had three or more clients that settled, separately deliver him $15,000 dollars cash money to his office totaling $45,000.00. Mr. McCoy took advantage of these clients' limited knowledge of the law and told them they had to pay him this money. Three of these clients will be present at the Feb. 5, 2009 court date and will be available to provide their sworn testimony. The following clients Tanda Brown, Bertha Duenas and Lasonia Walker request that adjustments be made on their final check to include the money that Mr. McCoy extorted.
>
> Mr. McCoy also used threatening tactics to try and extort money from Kevin Neely and Janice Lewis. When Kevin Neely and Janice Lewis refused to pay, Mr. McCoy threatened them if they did not pay he would take them to State Court. Kevin Neely and Janice Lewis will be present at the Feb. 5, 2009 court date, and have agreed to provide you with sworn testimony.
>
> In conclusion, Mr. McCoy had each of his clients write a letter to the bar association about Mrs. Kay Parker, not once but twice on separate occasions. Mr. McCoy told each of the clients the verbiage he wanted them to use. Mr. McCoy informed the clients on a conference call that if they did not write the letter they would not get paid any time soon, but if they did write the letter it would help remove Mrs. Kay Parker's lien and they would be paid faster. All Alvarado clients that will be present at the Feb. 5, 2009 court date will be willing to provide you with sworn testimony.
>
> Judge Illston, we beg you and the court to look into this matter.
>
> Respectfully,
>
> Clients.

Docket No. 1294 in C 04-0098. On February 24, 2008, the Court received a letter from Kevin Neely to similar effect. Docket No. 1313 in C 04-0098.

---

[2] Tanda Brown, Bertha Duenas, Janice Lewis, Kevin Neely, Dyronn Theodore, Lasonia Walker, and Alexander Rivera.

2

1  After a review of the record, the Court finds that Mr. McCoy's motion to dismiss the interpleader
2  lacks merit, and the Court will retain jurisdiction over the interpled funds. As FedEx notes, the
3  settlement plaintiffs, represented by Mr. McCoy, explicitly agreed to the interpleader process in the
4  settlement agreements.[3] Paragraph 23 of each settlement agreement states:

> Releasing Party agrees to accept payment of the aforesaid amounts by the following means: Released Parties will post a bond and institute an interpleader action to determine rights to settlement funds referenced in paragraphs 4 and 17. Released Parties shall file a single interpleader action with respect to all Plaintiffs in the Alvarado and White actions, in the aggregate sum of the settlement amounts reached with all Plaintiffs.

Docket No. 980 Exs. 1-7 ¶ 23. Each settlement agreement was signed by the settling plaintiff and Mr. McCoy. Thus, Mr. McCoy's current contention that the interpleader should be dismissed because "there is no single fund" is baseless and directly contradicted by the terms of the settlements that he signed as plaintiffs' attorney. Indeed, not only did Mr. McCoy sign the settlement agreements which provided for the interpleader process, but after FedEx filed the motion for interpleader, Mr. McCoy filed Plaintiffs' Response to FedEx's Motion for Interpleader, stating that "Plaintiffs do not oppose the interpleading of the amount in controversy," and asserting that the Court should direct a portion to be paid to plaintiffs and that "[t]he remainder of the proceeds should remain on deposit until the resolution of this dispute." Docket No. 974 at 2-3.

More importantly, the justification for the interpleader – to protect FedEx from the risk of multiple liability and to ensure a fair and just distribution of the settlement funds – remains. The liens filed by the lienholders seek payment from any settlement proceeds in these cases. *See* Docket Nos. 375 and 814; *see also* Docket No. 1241 (Alioto's lien seeking payment from any settlement proceeds before Mr. McCoy is paid). At the February 5, 2009 hearing, counsel for the lienholders stated their view that they could seek to hold FedEx liable for the liens if the Court were to release the interpled funds directly to Mr. McCoy and plaintiffs. The Court expresses no view on the merit of any such theoretical actions. For present purposes, it is sufficient to find that the interpleader is necessary to protect FedEx against the risk of multiple liability. *See generally Levin v. Gulf Ins. Group*, 69 Cal. App. 4th 1282 (1999) (holding that if an attorney or party has notice of a lien and disburses settlement proceeds directly to an

---

[3] Mr. McCoy's motion completely omits mention of this fact.

3

1 individual, and the individual fails to pay the lienholder, the attorney or party could be liable to the
2 lienholder).

3 The Court also remains gravely concerned about ensuring a fair and just distribution of the
4 settlement funds. The individuals with an interest in the interpled funds include the settlement plaintiffs,
5 Mr. McCoy, Ms. Parker, Ms. Young, and Ms. Alioto.[4]  While the Court retains jurisdiction over the
6 interpled funds, the Court can evaluate the validity of the liens and decide how to apportion the interpled
7 funds.  If the Court granted Mr. McCoy's motion and immediately released the funds to the settlement
8 plaintiffs and Mr. McCoy, the Court has no doubt that a flood of litigation would ensue, including
9 litigation against the settlement plaintiffs themselves.  Further, in light of the January 30, 2009 letter
10 from the "clients," the Court has an obligation to determine whether Mr. McCoy has demanded
11 additional sums from the settlement plaintiffs in violation of his sworn statement to this Court that "each
12 of my clients who have settled their cases will be paid the full 60% of their settlement in this matter with
13 no subtraction or withholding of costs, fees, or any other sum however denominated." December 19,
14 2007 Declaration of Waukeen Q. McCoy ¶ 5 (Docket No. 983); *see also id*. ¶¶ 6-7 ("I have not entered
15 into any other agreement of any kind with any person, including any and all attorneys, concerning the
16 proceeds of my clients' settlements in this matter.  I am aware of no other agreements which would
17 impact the receipt of my clients of the full 60% of their settlement amounts.").

18 Accordingly, the Court DENIES Mr. McCoy's motion to immediately release the settlement
19 funds to himself and the plaintiffs. As set forth below, the Court will set a schedule for the expeditious
20 resolution of all outstanding issues with regard to the interpled funds.

21

22 **2.    Defendant's motion to modify the declaratory relief order**

23 As noted above, plaintiffs did not object to FedEx's motion for interpleader when that motion
24 was originally filed, and indeed, plaintiffs affirmatively stated their view that some of the settlement
25 funds should be interpled as proposed by FedEx.  However, on July 31, 2008, plaintiffs filed a "motion
26 for administrative relief" arguing that FedEx's motion for interpleader was procedurally improper, and

27

28      [4] The claim of lienholder Michael Davis has already been satisfied.

4

1  contending that FedEx should be required to file an interpleader complaint. FedEx filed an opposition
2  to the motion, and the Court held a hearing on that motion, along with several other motions, on
3  November 7, 2008. Based upon the Court's understanding from the November 7, 2008 hearing that
4  FedEx was not actually adverse to filing an interpleader complaint, the Court granted plaintiffs'
5  administrative motion in an order filed January 27, 2009. After that order was filed, FedEx filed a
6  motion to modify the January 27, 2009 order, and stating that FedEx in fact remained opposed to
7  plaintiffs' administrative motion.

8  Accordingly, the Court has reviewed anew plaintiffs' "administrative motion" and FedEx's
9  opposition thereto, and DENIES plaintiffs' motion. Mr. McCoy repeatedly endorsed the interpleader
10 process, and indeed entered into a stipulation with lienholder Michael Davis for the release of some of
11 the interpled funds. The administrative motion does not (1) explain Mr. McCoy's inconsistent positions
12 on the propriety of the interpleader process, (2) identify any prejudice to any party or lienholder as a
13 result from the interpleader process, or (3) articulate any reasoned basis for requiring FedEx to file an
14 interpleader complaint. FedEx's motion to modify the January 27, 2009 order also notes that since the
15 filing of the "administrative motion," Mr. McCoy has taken the position that he is "specially appearing"
16 on behalf of plaintiffs, and that he must be personally served with a subpoena to compel his attendance
17 or participation in various court proceedings. Presumably, if FedEx were required to file an interpleader
18 complaint, that complaint would name Mr. McCoy as a defendant. Given the adequacy of the
19 interpleader process already in place, the Court finds no reason to further delay and complicate this
20 process by requiring FedEx to file and serve an interpleader complaint on Mr. McCoy.

22 **3.      Plaintiff Rivera's motion to compel arbitration with Kay McKenzie Parker**

23 On December 17, 2008, plaintiff Alexander Rivera filed a motion to compel arbitration of Ms.
24 Parker's fee dispute pursuant to California's Mandatory Fee Arbitration Act, Cal. Bus. & Prof. Code
25 §§ 6200 *et seq.* ("MFAA"). "The MFAA was first proposed by the Board of Governors of the State Bar
26 of California in 1976 when, finding that disputes concerning legal fees were the most serious problem
27 between members of the bar and the public, the board sought to create a mechanism for arbitrating
28 disputes over legal fees and costs." *Aguilar v. Lerner*, 32 Cal. 4th 974, 983 (2004). The California

Supreme Court explained arbitration under the MFAA as follows:

> The nature of the obligation to arbitrate under the MFAA differs from that under standard arbitration in two important ways. First, the obligation to arbitrate under the MFAA is based on a statutory directive and not the parties' agreement. Thus, a client may invoke the MFAA and proceed to arbitration despite the absence of any prior agreement to do so. By contrast, standard arbitration requires that both parties to a dispute agree to arbitrate. (*Benasra v. Marciano*, (2001) 92 Cal.App.4th 987, 990, 112 Cal.Rptr.2d 358 ["a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration"].)
>
> Second, section 6200, subdivision (c) provides: "[A]rbitration under this article shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client." In other words, whereas a client cannot be forced under the MFAA to arbitrate a dispute concerning legal fees, at the client's election an unwilling attorney can be forced to do so.

*Id*. at 984.

The MFAA also identifies the conditions under which a client can waive the right to compel arbitration under the act. "A client's right to request or maintain arbitration under the provisions of this article is waived by the client commencing an action or filing any pleading seeking either of the following: (1) Judicial resolution of a fee dispute to which this article applies. (2) Affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct." Cal. Bus & Prof. Code § 6201(d). "The MFAA thus provides the client with an alternative method of resolving a fee dispute with his attorney, not one in addition to traditional litigation." *Aguilar*, 32 Cal. 4th at 985.

Ms. Parker contends that plaintiff Rivera has waived his right to compel arbitration under the MFAA by extensively litigating the issue of Ms. Parker's entitlement to attorneys' fees in these cases. Certainly the motion practice which has been conducted before both this Court and the Special Master since the January 2008 settlements has involved, *inter alia*, Ms. Parker's entitlement to attorneys' fees. Mr. Rivera's participation in the interpleader activities and the motion practice, through his representative Mr. McCoy, are sufficient to constitute an election not to proceed to arbitration. Moreover, arbitration of this one issue, isolated from the balance of this complex web of competing claims to the interpled funds, would be extraordinarily difficult. It would also risk further delay, since

6

nothing final can be done until all claims to the interpled funds are resolved.[5]

**CONCLUSION**

For the foregoing reasons, the Court DENIES Mr. McCoy's motion to dismiss the interpleader (Docket No. 1290 in C 04-0098), GRANTS defendant's motion to modify (Docket No. 1285 in C 04-0098), and DENIES plaintiff Rivera's motion to compel arbitration (Docket No. 294 in C 04-0099). **All lienholders/parties with an interest in the interpled funds shall file their claims, with all supporting documentation, by March 13, 2009. Oppositions, if any, to the claims shall be filed by March 27, 2009. Replies, if any, shall be filed by April 10, 2009. The Court will hold an evidentiary hearing on April 23, 2009 at 9:00 a.m.**

**IT IS SO ORDERED.**

Dated: February 25, 2009

SUSAN ILLSTON
United States District Judge

---

[5] Since Mr. Rivera has been represented by Mr. McCoy throughout this proceeding, the almost year-long interval between the settlement and the petition for arbitration of the fee dispute with Ms. Parker also counsels in favor of waiver, as does the fact that any fees awarded to Ms. Parker are likely to reduce Mr. McCoy's share of the interpled funds, not Mr. Rivera's.