1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   EDWARD ALVARADO, *et al.*,                    No. C 04-0098 SI; No. C 04-0099 SI
                                                  Related Case: C 03-2659 SI
9              Plaintiffs,
                                                  **ORDER ADOPTING AND MODIFYING**
10    v.                                          **SPECIAL MASTER'S**
                                                  **RECOMMENDATION AND ORDER ON**
11  FEDEX CORPORATION, dba FEDEX                  **DEFENDANT'S AND PLAINTIFFS'**
    EXPRESS,                                      **MOTION FOR SANCTIONS (DOCKET**
12                                                **NO. 1085); GRANTING DEFENDANT'S**
               Defendant.                         **MOTION TO MODIFY; DENYING MR.**
13                                                **McCOY'S OBJECTION TO SPECIAL**
                                                  **MASTER'S ORDER**
14  _____/
15
16
17                                **INTRODUCTION**

18        Now before the Court is review of the Special Master's Recommendation and Order on

19  Defendant's and Plaintiffs' Motions for Sanctions and on Defendant's Motion to Quash.  (Docket Nos.

20  1085, 1141 & 1152).   In a 40 page opinion, the Special Master recommended that the Court, under its

21  inherent power, impose sanctions against Mr. McCoy in his individual capacity in the amount of

22  $25,000.  The Special Master found that Mr. McCoy engaged in bad faith in connection with three fee

23  petitions that he filed in this case in which he sought a total of $2,159,241.12 in fees.  Defendant moved

24  to modify that Recommendation and Order and requested that the Court impose greater sanctions,

25  including striking Mr. McCoy's fee petitions.  Mr. McCoy objected to the Recommendation and Order

26  and argued that it should not be adopted by the Court.

27        The Court held a hearing on these matters, and directed that the record be supplemented to

28  ensure that the Court had a complete record of all filings before the Special Master.  After *de novo*

review of the Special Master's Recommendation and Order, the Court ADOPTS and MODIFIES the Special Master's Recommendation and Order, GRANTS defendant's motion to modify that Recommendation and Order, and DENIES Mr. McCoy's objection.

As set forth below, the Court finds that Mr. McCoy engaged in bad faith or conduct tantamount to bad faith in connection with the fee petitions, and that this conduct is sufficiently serious to warrant significant sanctions. Mr. McCoy repeatedly misrepresented to the Special Master and this Court that the fee petitions were based upon "contemporaneous notes and invoices" and "fully documented time sheets" that were "maintained in the regular course of our legal business." *See*, *e.g.*, Docket No. 715-1 (Declaration of Waukeen McCoy in Support of Plaintiff [*Alvarado's*] Motion for Attorney's Fees and Costs ¶¶ 1, 14.)[1] In reality, the fee petitions were not based on any fully documented time sheets or contemporaneous invoices, and instead were reconstructed after the fact by an attorney who had never worked on the cases at all. This attorney was instructed by Mr. McCoy to draft the fee petitions based upon a review of the docket in this case, calendars and task lists which did not include information about time spent on litigation tasks, and deposition transcripts.[2] Indeed, the time record "summaries" filed in support of the fee petitions appear in large respect to be created out of whole cloth, and they bear no resemblance whatsoever to the underlying documents used to create the time record "summaries."

The truth about the provenance of these records was only discovered after extensive litigation and discovery regarding the fee petitions – discovery that was vehemently resisted by Mr. McCoy – and only after defendant deposed the attorney who prepared the fee petitions. Further, during this discovery process, Mr. McCoy withheld documents that were plainly responsive to the Special Master's August

---

[1] In support of each fee petition, Mr. McCoy submitted time record "summaries" consisting of Excel spreadsheets containing thousands of entries with dates, timekeepers, descriptions of work performed, the amount of time spent, and the hourly rate of the timekeeper. For example, one representative entry in the *Alvarado* fee petition states that on January 10, 2006, Mr. McCoy performed the following: "Review FedEx supplement opposition to expert disclosures. Draft letter to court re: scheduling. Review proposed letter to court re: rescheduling. Add revisions and submit for filing," for a total of 4.5 hours, with .35 hours attributed to *Alvarado*. Docket No. 715-1, Ex. A at 47. As discussed *infra* and in the Special Master's Recommendation and Order, there are no "fully documented time sheets" or contemporaneous time records to corroborate that, or any other, entry.

[2] All of the materials used to prepare Mr. McCoy's fee petitions, found at Docket No. 1248, are hereby incorporated by reference in this order. A copy of one representative page, Mr. McCoy's handwritten calendar for July 2004, is attached to this order.

29, 2007 order directing production of "all contemporaneous time records for all attorneys who worked on the *Alvarado*, *Evans*, and *Boswell* matters."[3]  Finally, the fee petitions that were filed with this Court have been shown to be manifestly inaccurate, and the Court has no confidence that the fee petitions can be relied upon in any way.

"An attorney does not simply act as an advocate for his client; he is also an officer of the court. As such, an attorney has a duty of good faith and candor in dealing with the judiciary." *United States v. Associated Convalescent Enters. Inc*., 766 F.2d 1342, 1346 (9th Cir. 1985).  Mr. McCoy has breached these duties, and his acts of misconduct with regard to the fee petitions are among the most egregious that this Court has seen in almost 14 years on the bench.  The Court does not lightly impose sanctions. However, on this record, the Court finds that it must.

In sum, and for the reasons set out below, this Court STRIKES the fee petitions filed by Mr. McCoy (Docket Nos. 1223 & 1224) and finds that Mr. McCoy may not recover statutory fees from defendant in the *Alvarado*, *Evans* or *Boswell* matters; and ORDERS Mr. McCoy, in his individual capacity, to pay sanctions in the amount of $25,000 to the Clerk of the U. S. District Court no later April 10, 2009.

## BACKGROUND

After prevailing at jury trials in the *Alvarado*, *Evans*, and *Boswell* cases, Mr. McCoy filed fee petitions seeking $2,159,241.12 in statutory fees from defendant.  Plaintiffs' former attorney, Kay McKenzie Parker, also filed fee petitions for her work in those cases.  The Court referred the fee petitions to Special Master Edward Swanson for decision in the first instance.  Defendant opposed the fee motions, arguing that a number of Mr. McCoy's time entries were fraudulent.[4]  Defendant also filed motions for sanctions against Mr. McCoy, alleging that he had "fil[ed] false declarations in an attempt to fraudulently recover attorneys' fees for work he never performed."   Docket No. 817 at 3

---

[3]  As discussed *infra*, although the fee petitions were not based on contemporaneous time records, several attorneys who worked for Mr. McCoy had in fact kept track of their time and submitted those records to Mr. McCoy.  Those records were not produced by Mr. McCoy, and only came to light after the attorney who prepared the fee petitions, Mr. Bolanos, produced them at his deposition.

[4]  Defendant also opposed Ms. Parker's fee petitions on grounds not relevant here.

3

(*Alvarado/Evans*); Docket No. 885 (*Boswell*).  Because the sanctions motions were related to the fee petitions, the Court referred the motions to the Special Master.

For approximately a year, Mr. McCoy, Ms. Parker, and defendant extensively litigated the fee petitions and the sanctions motions.  On May 22, 2008, after holding a number of hearings on the sanctions motions, the Special Master issued a detailed and comprehensive Recommendation and Order. Docket No. 1137.  Defendant and Mr. McCoy filed responses to the Recommendation and Order, and after several continuances, this Court held a hearing on November 7, 2008.  Mr. McCoy was represented by counsel at the November 7, 2008 hearing, and both Mr. McCoy and his counsel argued.  After the hearing, Mr. McCoy and defendant supplemented the record with documents that had been presented to the Special Master in connection with the sanctions motion.  Defendant also filed a copy of the transcript of the November 7, 2008 hearing, as well as a chart summarizing Mr. McCoy's statements at the hearing which defendant contended directly conflicted with statements in his earlier filings.  In response to defendant's filing, Mr. McCoy filed another declaration which "serves to clarify the theories on my how fee Petitions were created" in this action and the related *Satchell* case.  Docket No. 1250.[5] Mr. McCoy also filed the declaration of Zachary Best, an attorney who had worked on *Satchell*.  Docket No. 1251.

---

[5] At the November 7, 2008 hearing, Mr. McCoy stated that the fee petitions in *Alvarado*, *Evans* and *Boswell* were prepared in the same manner as the *Satchell* class action, *Satchell v. FedEx*, C 03-2659.  After the hearing, Mr. McCoy submitted declarations from himself and Mr. Best stating that while no attorneys kept contemporaneous time records in *Alvarado*, *Evans* and *Boswell*, Mr. McCoy and his firm did keep contemporaneous "handwritten notes regarding the work performed to one-tenth of an hour" in *Satchell*.  However, in order to "avoid keeping track of voluminous records," Mr. McCoy would "summarize the original records" every 30 to 90 days, and then discard the contemporaneous time records.  Thereafter, in June 2007, he and his staff "reconstructed billing records for the *Satchell* case" based on his notes and calendars.  All this was done, he stated, because co-counsel agreements in *Satchell* required that all the lawyers "maintain accurate, contemporaneous time records."  Docket No. 1250 ¶ 4.  In his declaration supporting his fee petition in *Satchell*, Mr. McCoy stated:  "My customary practice is to record my time in increments of one-tenth of an hour.  It is the regular practice of my firm to keep handwritten contemporaneous time records, supplemented with daily notes and calendar entries describing the work performed." *Satchell v. FedEx*, C 03-2659, Docket No. 749, ¶ 35.  The declaration did not mention the June, 2007 "reconstruction" of billing records.

4

United States District Court

For the Northern District of California

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 53(f), the Court reviews the Special Master's Recommendation and Order *de novo*. The Court may sanction a lawyer for improper conduct pursuant to its inherent power. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). "[T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Id.* at 992. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. "An attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." *Weissman v. Quail Lodge Inc*., 179 F.3d 1194, 1198 (9th Cir. 1999).

**DISCUSSION**

**I.     Representation of plaintiffs with regard to Mr. McCoy's request for statutory fees**

As a preliminary matter, the Court notes that there has been some confusion regarding who currently represents plaintiffs with regard to the pending fee petitions. At the time that he filed the fee petitions seeking fees for work performed on behalf of plaintiffs Edward Alvarado, Pernell Evans, and Charlotte Boswell, Mr. McCoy was counsel of record for these plaintiffs.[6]

On November 10, 2008, Mr. McCoy filed a "Notice of Withdrawal" stating that "the Law Firm of The Law Offices of Waukeen McCoy hereby withdraws from the above action as counsel for Charlotte Boswell in any and all respects." Docket No. 1234. The Notice stated that "[s]aid withdrawal is at the instruction of Plaintiff Charlotte Boswell and her new Counsel of record Stephen M. Murphy and Gerald Clausen." *Id.* Mr. McCoy filed an identical notice with regard to plaintiff Alvarado. Docket No. 1235. At the time the notices of withdrawal were filed, Messrs. Murphy and Clausen were representing plaintiffs Alvarado and Boswell in connection with the appeals in these cases, and Mr.

---

[6]  After Mr. McCoy filed the fee petition in *Evans*, the Court granted defendant's motion for judgment as a matter of law with regard to Mr. Evans, and Mr. McCoy filed an untimely appeal of that order to the Ninth Circuit. As a result, although the Court imposes sanctions based upon Mr. McCoy's misconduct with regard to the three fee petitions that were filed, only the *Alvarado* and *Boswell* fee petitions remain pending.

1    McCoy's fee petitions for Alvarado and Boswell were still pending and being litigated before the

2    Special Master.  Mr. McCoy then began to "specially appear" in the proceedings before the Special

3    Master, and took the position that because he was no longer counsel for plaintiffs Alvarado and Boswell,

4    he could not be required to participate in any proceedings before the Special Master absent a subpoena.

5    On December 29, 2008, counsel for Mr. McCoy[7] submitted a declaration signed by Mr. McCoy in which

6    Mr. McCoy stated that "Alvarado and Boswell terminated me as their counsel, and hired Gerald Clausen

7    and Eric Murphy to represent them in the resolution of their appeal and statutory fees."   Docket No.

8    1262-2 ¶ 7.  Mr. McCoy also stated that "[m]y former clients Alvarado and Boswell have asked me not

9    to participate in the fee petition process and have made it clear that they want their new counsel to settle

10   the fee petitions."  *Id*. ¶ 9.

11        On January 15, 2009, the Special Master held a conference call to discuss, among other matters,

12   the pending attorneys' fees petitions submitted by Mr. McCoy in *Alvarado* and *Boswell*.  Neither Mr.

13   McCoy nor his attorney participated in the conference call.  Mr. Murphy appeared on behalf of plaintiffs

14   Alvarado and Boswell, and stated that he had not been retained by plaintiffs to represent them in the

15   resolution of their statutory fees.  On January 16, 2009, the Special Master issued an order stating that

16   it was unclear who, if anyone, was currently prosecuting the fee petitions that have been filed by Mr.

17   McCoy, and instructing plaintiffs Alvarado and Boswell to file declarations stating whether they had

18   hired Messrs. Clausen and Murphy to represent them in the resolution of their statutory fees, and if not,

19   whether they intended to have any other attorney prosecute the fee petitions that had been filed in their

20   cases by the law offices of Mr. McCoy.  Docket No. 1274.

21        On January 22, 2009, plaintiffs Alvarado and Boswell filed declarations in response to the

22   Special Master's January 16, 2009 order.  Docket Nos. 1276, 1277.  Those declarations state, *inter alia*:

23        I understand that on November 10, 2008, Mr. McCoy filed withdrawals from
          representation of me . . . in the District Court, asserting that the withdrawals were
24        undertaken at the "request" and "instruction" of the clients, Mr. Murphy, and Mr.
          Clausen.  This assertion is inaccurate.  I did not request or instruct Mr. McCoy to
25        withdraw from representing me in the District Court.  Mr. McCoy was explicitly
          informed on more than one occasion that Mr. Murphy and Mr. Clausen represent me

26

27        _____

          [7]  On June 17, 2008, Matthew John Quinlan, Esq., entered a "Notice of Appearance on Behalf
28   of Waukeen McCoy."  Docket No. 1154.  Mr. Quinlan has represented Mr. McCoy in connection with
     the sanctions matters.

only in the Ninth Circuit.

I also understand that the District Court apparently construed Mr. McCoy's filings as requests for substitutions of counsel and ordered Mr. Murphy and Mr. Clausen to be substituted in place of Mr. McCoy as my counsel of record. In light of these circumstances and as a result of Mr. McCoy's withdrawal from representing me in the District Court, I have asked Mr. Murphy and Mr. Clausen to represent my interests there.

I did not hire attorneys Murphy or Clausen to represent Mr. McCoy in his request for statutory fees in the District Court.

I did not hire attorneys Murphy or Clausen to represent me with regard to Mr. McCoy's request for statutory fees in the District Court and I never asked or directed Mr. McCoy not to participate in the fee petition process.

I do not intend to have any other attorney prosecute the fee petitions that have been filed in my case by the law offices of Waukeen McCoy, which I believe would be Mr. McCoy's responsibility as he has asserted on several occasions.

*Id.* ¶¶ 3-7.[8]  The same day, Mr. McCoy filed a response to the Special Master's January 16, 2009 order, stating his view that he no longer represented plaintiffs Alvarado and Boswell with regard to the fee petitions.  Docket No. 1275.[9]

Regardless of who currently represents plaintiffs Alvarado and Boswell with regard to the fee petitions, it is a fact that those fee petitions were filed by Mr. McCoy, and that those petitions seek fees for work performed by Mr. McCoy and his law firm.  The requests for fees and for sanctions will be evaluated on that basis; sanctions cannot be avoided by unilateral post-hoc withdrawal.

---

[8]  On February 3, 2009, plaintiffs Alvarado and Boswell, represented by Messrs. Clausen and Murphy, filed a lawsuit in federal court against Mr. McCoy, Ms. Parker, and Michael Davis (another attorney who previously represented plaintiffs), *Edward Alvarado and Charlotte Boswell v. McCoy et al.*, C 09-485.  That lawsuit seeks a declaratory judgment regarding the rights and duties of the plaintiffs and the attorneys as to payment of attorneys fees (statutory and contingent) under the fee agreements between the plaintiffs and their attorneys.  The Court has related *Alvarado v. McCoy*, C 09-485 to this action.

[9]  On January 30, 2009, Mr. McCoy filed a "motion to specially appear" in order to respond to the Special Master's January 16, 2009 order.  This Court granted the motion, but then vacated the order and referred the motion to the Special Master because at the time the Court granted the motion, the Court was not aware of defendant's objection to that motion.  Docket No. 1289.  The Special Master subsequently denied Mr. McCoy's motion.  Docket No. 1296.  The Special Master found that plaintiffs Alvarado and Boswell had made clear that they did not intend to pursue the fee petitions filed by Mr. McCoy, and therefore either Mr. McCoy should prosecute the fee petitions or they would be considered abandoned.  *Id.*  Mr. McCoy has sought review of that order with this Court, and the Court will resolve that matter by separate order.

United States District Court
For the Northern District of California

## II.      Misrepresentations regarding time records and how fee petitions were created

In his Recommendation and Order, the Special Master found that Mr. McCoy repeatedly misrepresented that the fee petitions were based upon "contemporaneous" time records. Recommendation at 10-12. The Special Master then found,

> Notwithstanding the sworn statements of McCoy and representations by his office, the fee petitions were not based on contemporaneous billing statements or records. In response to the special master's August 29, 2007 order seeking "all contemporaneous time records for all attorneys who worked on the *Alvarado*, *Evans*, and *Boswell* matters" (Docket 923), plaintiffs' counsel failed to produce a single contemporaneous billing record. Instead, plaintiffs provided the calendars of McCoy and co-counsel Spencer Smith, and a series of handwritten "task lists" apparently detailing assignments for McCoy's associates. These materials contained absolutely no information about the number of hours any attorney spent on a given day on a particular assignment.

> In addition, plaintiffs produced a document entitled "Reasonable Billable Hours by Task," which listed a series of categories of work and matched each to an hour figure. For example, "Revise Pleadings" is listed as a four-hour task, "Hearings in Alameda" and "Legal Research" are listed as taking four to six hours, "Defendant motions" and "Staff meetings" as taking six hours, and "Depositions" as taking eight hours. There was no explanation accompanying this document, but it appeared to represent a schedule for determining how much time should be assigned to each task. As such, the document was the first indication that McCoy's office had actually compiled the fee submissions through a rough, after-the-fact estimation of time spent, rather than based on contemporaneous time records.

> It was not until Aldon Bolanos testified on February 7, 2008 that a complete explanation emerged explaining how the documents in support of the fee petitions had been created. Bolanos testified that McCoy gave him the task of compiling fee petitions[10] according to a set of "ground rules" which included both how much time Bolanos should assign to a particular task and who he should indicate had participated. Thus, for example, Bolanos was instructed that McCoy attended all hearings and reviewed and revised all documents prior to filing. RT (Bolanos deposition), 63-64.[11] Another "ground rule" was that for two weeks prior to the date an opposition to a

---

[10] There is some discrepancy in the record regarding Mr. Bolanos' involvement with the *Boswell* fee petition. Mr. Bolanos testified at his deposition that he did not work on the *Boswell* fee petition except to the extent that the work he did on the *Alvarado* and *Evans* fee petitions was also used on the *Boswell* fee petitions, such as time entries that were common to all three petitions. Mr. Bolanos' August 22, 2007 declaration states that he "put together the billing statements" for all three fee petitions. Docket No. 919 ¶ 2. Mr. McCoy's March 3, 2008 surreply declaration, filed after Mr. Bolanos' deposition, states that Mr. Bolanos prepared all three fee petitions. Docket No. 1033 ¶¶ 3, 12. (The Court notes that the cover page to Docket No. 1033 is titled "Plaintiffs' Surreply to Defendants' Motion to Sanctions"; in fact, Docket No. 1033 is Mr. McCoy's surreply declaration.) Regardless of the extent of Mr. Bolanos' involvement in the preparation of the *Boswell* fee petition, the Court has before it all of the underlying records used to create the *Boswell* fee petition, and the process used to create the *Boswell* fee petition appears to be identical to that used in the *Alvarado* and *Evans* petitions.

[11] The Bolanos deposition is filed at Docket No. 1198, and the exhibits to the Bolanos deposition are filed at Docket No. 1233.

8

summary judgment motion was filed, "whichever attorneys were in the firm were doing full days preparing oppositions to those motions for summary judgment." *Id*. at 83.

Bolanos testified that McCoy instructed him that because "plaintiffs' firms don't keep billable records," such after-the-fact estimates were necessary. *Id*. at 65. By reviewing entries in the Court's docket and transcripts of depositions, Bolanos applied these ground rules to create an initial draft of the fee petition. *Id*. at 64. [Internal footnote stating "Bolanos noted that the calendars did not provide useful information regarding time spent on a given task. RT (Bolanos deposition), 79)]. After Bolanos finished the initial draft, other attorneys added time entries. *Id*. at 68-69. The final filing, therefore, was more extensive than Bolanos's first draft:

> And I performed that task [creating a first draft] and I handed it up the chain, and I'll tell you, when I saw the filing with the Court, it grew exponentially. It was much larger, because other things were done that I was there and that I couldn't verify from the docket or from the firm calendar, such as, meeting is what caught my eye, things like meetings and telephone calls, a lot of new entries that surfaced from 2002 and 2003.

*Id*. at 68. Bolanos also explained that the "Reasonable Billable Hours by Task" document, while it more or less accurately reflected the time ranges used to compile the time records, was itself created in response to the special master's order for production and was not a document upon which Bolanos relied in creating the first draft of the time records. *Id*. at 176.

Bolanos's testimony makes clear that the time records accompanying the fee petitions were not based on contemporaneous billing records. *McCoy does not dispute this fact. In his surreply to the sanctions motions, McCoy for the first time acknowledges that, "[r]eviewing all of Bolanos's testimony about the Alvarado and Evans petitions one can only conclude that he was estimating about the hours of work preformed [sic] in an effort to calculate a reasonable lodestar calculation.*" Docket No. 1033, 4.

Recommendation and Order at 11-13 (emphasis added).

The Special Master found that Mr. McCoy's misrepresentations were material because the Court is required to scrutinize fee petitions based on reconstructed time records much more closely than those based on contemporaneous time records. *Id*. at 13; *see also id*. at 9-10 (discussing case law on fee petitions). The Special Master further found that "the truth of the matter did not come to light because McCoy confessed his error. It was only after the special master ordered McCoy to produce all contemporaneous time records that the special master learned that no such records had been used in creating the timesheets that accompanied the fee petition. And it was only after Bolanos contacted the special master and was deposed that the special master learned how the time records were actually

9

United States District Court
For the Northern District of California

1   created." *Id.* at 13-14.[12]

2       Mr. McCoy responds to the Special Master's Recommendation and Order by contending that

3   he and his staff have always stated that the fee petitions were created from two sources – notes and

4   calendars – and that Mr. McCoy has never represented that the fee petitions were based on

5   contemporaneous time records.  At the November 7, 2008 hearing before this Court, Mr. McCoy

6   repeatedly asserted that "I never informed the Court and I never informed Master Swanson that I

7   actually kept contemporaneous time records, because I don't."  Docket No. 1252 (Nov. 7, 2008

8   Transcript at 7:16-19).  Instead, Mr. McCoy maintained that he had always represented that the fee

9   petitions were "reconstructions" "based on my notes, the calendars, and the docket."  *Id.* at 7:12-14; 8:7;

10  *see also id.* at 9:12-17 ("I had to reconstruct the time.  There is not one citation that Mr. Swanson has

11  where he – in the record where I said that I had contemporaneous time records, because I would never

12  do that. I don't keep contemporaneous time records."[13]); *see also* Waukeen McCoy's Objection, Docket

13  No. 1185 at 5:9-12 ("the McCoy Firm unequivocally stated that the fee petitions were reconstructed

14  from only two sources: the office notes and calendars."); *see also*. at 11:16-18 ("McCoy and his staff

15  have repeatedly said that the fee petitions were created from two sources: notes and calendars.").

16      In fact, and as detailed in the Special Master's Recommendation and Order, Mr. McCoy

17  repeatedly stated, under oath, that the fee petitions were based on "contemporaneous" records and "fully

18

19      [12]  Aldon Bolanos is an attorney who formerly worked for Mr. McCoy and who worked on the
    preparation of the fee petitions.  *See* Bolanos Decl. ¶ 2 (Docket No. 919).  On October 12, 2007, after
20  Mr. Bolanos left Mr. McCoy's firm, he contacted the Special Master and left an *ex parte* voicemail
    stating that he "left the [Law Offices of Waukeen McCoy] pretty much specifically because of what's
21  been going on and the things that I've been asked to do."  Recommendation and Order at 3; *see also*
    Docket No. 1233 Ex. 6 (Special Master's memorandum to file documenting transcript of voicemail).
22  After consultation with this Court, the Special Master contacted Mr. Bolanos and informed him that the
    Special Master would be required to inform the parties of Mr. Bolanos' contact.  Recommendation and
23  Order at 4; Docket No. 1233 Ex. 7-8 (Special Master's memoranda to file documenting phone calls).
    After the Special Master informed the parties of his communications with Mr. Bolanos, FedEx sought
24  to depose Mr. Bolanos, which the Special Master granted and this Court affirmed over Mr. McCoy's
    objection.  Mr. McCoy also moved to disqualify the Special Master based on alleged "improper"
25  communications with Mr. Bolanos.  This Court denied the motion to disqualify (Docket No. 988), and
    Mr. McCoy filed a petition for writ of mandate the Ninth Circuit Court of Appeals.  The Ninth Circuit
26  denied that petition by order filed February 25, 2008.  Docket No. 1021.

27      [13]  But see McCoy declaration in *Satchell,* Docket No. 749, ¶ 35:  "My customary practice is to
    record my time in increments of one-tenth of an hour.  It is the regular practice of my firm to keep
28  handwritten contemporaneous time records, supplemented with daily notes and calendar entries
    describing the work performed."

documented time sheets" "maintained in the regular course of our legal business."  Equally important, Mr. McCoy never informed the Court that the fee petitions were "reconstructions" based on notes and calendars until after Mr. Bolanos' deposition.  The voluminous record in this case shows that Mr. McCoy only admitted that the fee petitions were based on reconstructions after the truth had been revealed and Mr. McCoy had no choice.

Mr. McCoy's original[14] Motion for Attorneys' Fees in *Alvarado* states, "In the present case, Alvarado submitted several exhibits documenting hours which were *contemporaneously* billed by members of his legal team [citing Declaration of Waukeen McCoy, Ex. A]."  Docket No. 715-1 at 8:16-19 (emphasis added).  In turn, Mr. McCoy's declaration, which was signed under penalty of perjury, states:

> 1.  I am the lead attorney for the Plaintiff in this action.  My Law Office's time and expense computation totals for this case are attached as Exhibit A.  A true copy of the total amount of the hours spent by each individual who worked on this case, their billing rate and the expenses incurred, is attached as Exhibit A and is incorporated herein by reference.  Exhibit A is a summary compiled from *fully documented time sheets*, receipts, computer files, calendar entries, and court records *maintained in the regular course of our legal business.*
>
> . . .
>
> 14.  Hours for this lodestar calculation are generated by using *contemporaneous notes and invoices* for the salaries of Kelly Armstrong, Zachary Best, Dow Patten, Michael DePaul, and Spencer Smith.

Docket No. 715-2 ¶¶ 1, 14 (emphasis added).  The fee petition in *Evans*, and Mr. McCoy's declaration in support thereof, contains identical language.  *See* Docket Nos. 716-1 at 8 (*Evans* fee motion); 716-2 ¶¶ 1, 14 (McCoy's Declaration).

In fact, contrary to the representation in the *Alvarado* and *Evans* fee petitions that the petitions were based on "exhibits documenting hours which were contemporaneously billed" by members of plaintiffs' legal team, the petitions were not based on contemporaneous billing records.  Similarly, contrary to Mr. McCoy's sworn statement in his declarations that the exhibits were based on "fully documented time sheets" "maintained in the course of [McCoy's] legal business," there were in fact no fully documented time sheets, and indeed Mr. McCoy now proclaims that fully documented time sheets

---

[14]  In the course of the prosecution of the fee petitions, Mr. McCoy submitted amended fee petitions for *Alvarado* and *Boswell*.

United States District Court
For the Northern District of California

1   have never been maintained in the course of his legal business.[15]

2          Similarly, the original fee petition in *Boswell*, filed after defendants moved for sanctions based

3   on the *Alvarado* and *Evans* fee petitions, states,

> In this case, Plaintiff's lodestar calculation reflects only the hours which were spent
> efficiently in preparation of the legal claims at bar.  These claims are carefully and
> prudently recorded in the time sheets included within this Fee Petition.  All of the billing
> included in the lodestar is supported by specific documentation of the reasonable time
> expended in this case.  [Internal footnote stating "See McCoy Declaration, referencing
> detailed time records for the instant action."]

Docket No. 842 at 4:4-8, 28.   As the record demonstrates, this statement is replete with

misrepresentations: the lodestar calculation was not "carefully and prudently recorded in the time sheets

included within [the] Fee Petition"; the billing in the lodestar was not supported by "specific

documentation"; and the "detailed time records" attached to the McCoy declaration were not true time

records.

       As yet another example, Mr. McCoy's declaration in support of the *Boswell* fee petition states,

> 3.     My firsthand knowledge of the following is based on my *contemporaneous notes
> and records* incorporated in Exhibit A and within PLAINTIFF'S MOTION FOR
> AWARD OF ATTORNEY'S FEES AND COSTS.
>
> . . .
>
> 6.     A true copy of the total amount of the hours spent by each individual who
> worked on this case, their billing rate and the expenses incurred, is included
> within PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND
> COSTS and is incorporated herein by reference.   These calculations are
> summaries compiled from *fully documented time sheets*, receipts, computer files,
> calendar entries, and court records *maintained in the regular course of our legal
> business*.
>
> 7.     A true copy of the hours spent by each individual itemized by task and broken
> down by attorney is attached as Exhibit A and is incorporated herein by
> reference.  Exhibit A is compiled from *fully documented time sheets*, receipts,
> computer files, calendar entries, and court records *maintained in the regular
> course of our legal business*.
>
> . . .
>
> 14.    Hours for this lodestar calculation are generated by using *contemporaneous notes
> and invoices* for the salaries of Kelly Armstrong, Spencer Smith, Zachary Best,
> Dow Patten, and Michael Depaul.

[15] This is, according to Mr. McCoy, with the one exception of the *Satchell* case.  In *Satchell,* Mr.
McCoy avers that he kept contemporaneous "handwritten notes regarding the work performed to one-
tenth of an hour," although he personally discarded the notes every 30 to 90 days.  *See* Docket No. 1250.

United States District Court
For the Northern District of California

Docket No. 843.  At the risk of repetition, the time record "summary" attached to Mr. McCoy's declaration in support of the *Boswell* fee petition was not based on "fully documented time sheets" "maintained in the regular course of [Mr. McCoy's] legal business," nor was it based on "contemporaneous invoices" for the listed attorneys.

Mr. McCoy's misrepresentations continued.  After Mr. McCoy filed the *Alvarado* and *Evans* fee motions, defendant served a *subpoena duces tecum* seeking "[t]he original underlying daily time records that support the attorneys' fee application presented in connection with the claims of Edward Alvarado . . . and, the table and summaries filed in support of those applications."  Docket No. 735 at 1:9-13 (Plaintiffs Edward Alvarado's and Pernell Evans' Motion to Quash *Subpoena Duces Tecum*).[16]  Mr. McCoy moved to quash the subpoena and argued, *inter alia*:

- "Accompanying the Petitions were detailed time records of work performed on the case and billing statements for that work." *Id*. at 1:7-8.

- "[T]he production of voluminous records generated over the four-year period of this case would be unduly burdensome." *Id*. at 1:16-18.

- "In this case, Plaintiffs' attorney has submitted verified and detailed time statements accounting for every hour that was spent on the case, all of which provide specific reference to the nature of the work done for every hour spent." *Id*. at 3:5-8.

- "[I]t would be oppressive to require Plaintiff to produce extensive billing records from over four years of litigation that at one point involved numerous plaintiffs due to the sheer volume of such records and their interrelatedness to one another. To that end, such a production would require Plaintiffs' attorneys to redact other clients' voluminous and confidential information from those statements and records in order to comply with the subpoena." *Id*. at 3:26-4:6.

- "In this case, the subpoena would require the disclosure of documents, including client calendars and other case notes, which were prepared by the attorneys with their clients in the course of representing those clients in their respective cases. For example, detailed daily billing statements would contain records of trial theories, client discussions about sources of information at FedEx, and confidential interviews with personnel in furtherance of the clients' cases." *Id*. at 4:28-5:4.

Docket No. 735. Contrary to these sworn statements, there are no "verified and detailed time statements accounting for every hour that was spent on the case," "extensive billing records from over four years of litigation," or "detailed daily billing statements."

---

[16] The record does not contain the subpoena, only the briefing on the motion to quash the subpoena.

**United States District Court**
For the Northern District of California

1    It is correct that Mr. McCoy stated in the fee petitions and at proceedings before the Special

2   Master that the fee petitions were based on "notes" and "calendars." However, Mr. McCoy always

3   represented that the fee petitions were also based upon "fully documented time records" and other

4   contemporaneous records, and only "clarified" that the fee petitions were in fact based solely on "notes"

5   and "calendars"[17] – and not on any contemporaneous billing records whatsoever – after extensive

6   litigation on the sanctions motion and only *after* Mr. Bolanos testified about how the fee petitions were

7   actually created.

8    Further, at no point did Mr. McCoy voluntarily divulge the bare bones nature of the "notes" and

9   the "calendars" that formed the basis of the fee petitions. These notes and calendars, found at Docket

10  No. 1248, consist of Mr. McCoy's personal calendar, Mr. Smith's personal calendar, the McCoy Law

11  Firm's office "Yahoo" calendar, and task lists/assignment sheets. None of these documents, which this

12  Court has reviewed, contain any information about the time spent on a particular task. The notes and

13  calendars generally do not identify which staff members worked on a particular task, nor do they

14  provide much detail about the task involved. Mr. McCoy's calendar is in large part illegible, and where

15  it is legible, contains brief notations such as "mediation," "Alvarado cmc 2:30 pm," "Fed Ex MSJ." *Id*.

16  The Yahoo office calendar contains brief information about meetings and litigation deadlines, such

17  "Prepare motion in limine in Alvarado/prep Alvarado" and "FedEx telephone conf. on ex parte matter."

18  As with Mr. McCoy's personal calendar, the Yahoo office calendar does not contain information about

19  who attended meetings or performed any tasks, or how much time was spent. The "task lists" and Mr.

20  Smith's personal calendar are similarly devoid of detail. *See generally id*.

21   In his objection to the Special Master's Recommendation and Order, Mr. McCoy attempts to

22  distance himself from his sworn misrepresentations by characterizing the language in his fee

23  declarations as "boilerplate." Objection at 14, Docket No. 1185. Mr. McCoy states,

24   In each declaration McCoy submitted with his fee petitions McCoy used the same
      boilerplate language and stated that fee petitions were based on a "summary compiled
25   from fully documented time sheets, receipts, computer files, calendar entries, and court
      records maintained in the regular course of our legal business" and "generated by using
26   contemporaneous notes and invoices for the salaries of Kelly Armstrong, Zachary Best,

27
      ───────────────
28        [17] Mr. Bolanos testified in his deposition that he also relied on the docket in this case, as well
      as deposition transcripts, to construct the first draft of the fee petitions.

**United States District Court**
For the Northern District of California

Dow Patten, Michael DePaul and Spencer Smith."

*Id.* at 14:2-8 (quoting Docket Nos. 715-1 ¶ 14; 716-1 ¶ 14). Mr. McCoy continues,

> These statements in McCoy's declarations reference invoices created by contract lawyers to bill the Law Offices of Waukeen McCoy for work performed. The invoices were not created for the FedEx litigation. Further, the contract lawyers invoiced McCoy for many other matters than the FedEx litigation. This is how the contract lawyers were paid. McCoy's staff invoiced him for projects on a bi-weekly or monthly basis. (McCoy Decl. ¶ 9). McCoy would then review these invoices and summarize them in his notes which were put in the FedEx file. (McCoy Decl. ¶ 9). McCoy would summarize these invoices with no reference to time entries and would take out duplicative tasks or tasks he felt he could not charge to FedEx. (McCoy Decl. ¶ 9). McCoy's notes therefore summarized the invoices of Kelly Armstrong, Zachary Best, Dow Patten, Michael DePaul, and Spencer Smith. (McCoy Decl. ¶ 9). The invoices were not systematically filed or maintained by the Law Offices of Waukeen McCoy, as once he paid the contract lawyers for work performed and summarized their work in his notes, McCoy did not place any particular value on the invoices. The invoices would sometimes be returned to the contract lawyer, thrown away, or lost. Finally, *these invoices were not used in preparing the fee petition*.
>
> The summary of these invoices are what McCoy referred to in his declaration and provided to the special master in September, 2007.

*Id.* at 14-15 (emphasis added). Paragraph 9 of the cited McCoy declaration, which was signed under penalty of perjury, states:

> I do not keep contemporaneous time records and I did not at any point during the litigation of the FedEx cases.[18] Rather, my staff invoiced me for projects on a bi-weekly or monthly basis. I would then review these invoices and summarize them in my notes which were put in the FedEx file. I would summarize these invoices with no reference to time entries and would take out duplicative tasks or tasks I felt I could not charge to FedEx. My notes therefore summarized the invoices of Kelly Armstrong, Zachary Best, Dow Patten, Michael DePaul, and Spencer Smith.

July 18, 2008 McCoy Decl. ¶ 9 (Docket No. 1186).

Mr. McCoy's Objection and supporting declaration raise more questions than they answer. One thing is clear: the fee petitions were not based on "fully documented time sheets" and were not "generated by using contemporaneous notes and invoices." Mr. McCoy's explanation for his previous statements is as follows: (1) Mr. McCoy's sworn fee declarations stated that the fee petitions were "compiled from fully documented .time sheets, receipts, computer files, calendar entries, and court records maintained in the regular course of our legal business" and "generated by using

---

[18] *But see*, McCoy declaration in *Satchell,* Docket No. 749, ¶ 35: "My customary practice is to record my time in increments of one-tenth of an hour. It is the regular practice of my firm to keep handwritten contemporaneous time records, supplemented with daily notes and calendar entries describing the work performed."

United States District Court
For the Northern District of California

1  contemporaneous notes and invoices for the salaries of Kelly Armstrong, Zachary Best, Dow Patten,

2  Michael DePaul and Spencer Smith"; (2) those statements actually referred to "invoices created by

3  contract lawyers to bill the Law Offices of Waukeen McCoy for work performed"; (3) Mr. McCoy

4  "would then review these invoices and summarize them in his notes which were put in the FedEx file

5  . . . with no reference to time entries"; (4) Mr. McCoy's summarized notes were then used to create the

6  fee petitions; and (5) the invoices themselves were not used to create the fee petitions.

7  　　　Mr. McCoy's sophistry does not and cannot reconcile his sworn statements that the fee petitions

8  were based on "fully documented time sheets" and "generated by using contemporaneous notes and

9  invoices" with the reality that the fee petitions were not based on any fully documented time sheets or

10 contemporaneous invoices.  Notably, even accepting Mr. McCoy's July 18, 2008 iteration of how the

11 fee petitions were created – that he summarized the contract attorneys' invoices and put those notes in

12 the FedEx file – the "notes and calendar information used in preparing the billing statements for

13 Alvarado, Evans and Boswell,"[19] and which were produced to the Special Master and this Court, do not

14 appear to contain any such notes.  As described *supra*, the documents that were produced and which

15 formed the basis of the fee petitions included Mr. McCoy's personal calendar, Mr. Smith's personal

16 calendar, the McCoy firm's office "Yahoo" calendar, and task lists or assignment sheets.  Mr. McCoy's

17 March 10, 2008 Declaration in Support of Surreply in Opposition to Sanctions (Docket No. 1033),

18 which was filed after the Bolanos deposition and after Mr. Bolanos produced several contract attorneys'

19 invoices,[20] suggests that the "assignment sheets" could be Mr. McCoy's summaries of the contract

20 attorney invoices:  "I also stated [to Bolanos] that the invoices would not be used in preparing the fee

21 petition because they were duplicative of my assignment sheets for Best and Armstrong which I

22 produced to the Special Master."  Docket No. 1034 ¶ 27.  However, the Special Master specifically

23 found this statement to be false:

24 　　　[T]he assignment sheets that had previously been submitted to the special master contain

25

26 　　　[19] Declaration of Aldon Bolanos in Support of Plaintiffs' Motion for Attorney's Fees and Costs
27 ¶ 1, Docket No. 1248.

28 　　　[20] Mr. McCoy's failure to produce these invoices in response to the Special Master's August 29, 2007 order is discussed in section 3 *infra*.

United States District Court
For the Northern District of California

1  no information on how much time any attorney spent on a particular task on a particular
2  day.  Moreover, the assignment sheets do not correspond to the contemporaneous billing
3  records.  For example, an assignment sheet dated February 3, 2008 states "intake class
   members – KA."  McCoy submitted to the Court that Armstrong spent 8 hours on
   February 3, 2003 on "intake re potential class member."  Docket No. 715-2, 20.
4  However, Armstrong's records for February 2003 show she billed no time on February
   3.

5  Recommendation and Order at 16 n.8.  In sum, contrary to Mr. McCoy's sworn statements in support

6  of the fee petitions, the fee petitions were not based on "fully documented time sheets" or

7  "contemporaneous invoices."  If Mr. McCoy "summarized" the contract attorneys' invoices and put

8  those notes in the FedEx file, they were not produced to the Special Master or this Court, and they do

9  not appear to have formed the basis of the fee petitions.

10      As the Special Master found, Mr. McCoy's misrepresentations about how the fee petitions were

11  created were material.  If Mr. McCoy had been forthright from the beginning that the time sheet

12  summaries submitted in support of the fee petitions were reconstructions based upon the above-

13  described calendars and notes, there is no question that the fee petitions would have been subject to

14  exacting scrutiny by defendant and the Court.  Instead, by representing that the fee petitions and

15  supporting exhibits were based on "fully documented time sheets" "maintained in the regular course of

16  our legal business," and that "hours for this lodestar calculation are generated by using contemporaneous

17  notes and invoices for [various attorneys]," Mr. McCoy attempted to avoid rigorous scrutiny of his

18  reported hours by misleading the Court and defendant into believing that the fee petitions were based

19  on contemporaneous time records, which are inherently more reliable.  It is no accident that the exhibits

20  submitted in connection with the fee petitions contain thousands of entries and appear, at first blush, to

21  be a compilation of time records.  These exhibits, and Mr. McCoy's misrepresentations about the

22  creation of these exhibits, were intended to mislead the Court and defendant.  Ultimately, the truth

23  surrounding the creation of the fee petitions emerged, but only after Ms. Parker filed a competing fee

24  petition calling into question much of Mr. McCoy's claimed time, leading to protracted litigation,

25  including the deposition of Mr. Bolanos.

26

27  **III.    Failure to produce time records**

28      On August 29, 2007, the Special Master issued the following order:

17

1   On August 9, 2007, the special master held a hearing on Defendant FedEx's
2 motion for sanctions against Plaintiffs' attorney Waukeen McCoy. In the course of that
hearing, Plaintiffs' counsel explained that the time records submitted in the *Alvarado*,
3 *Evans*, and *Boswell* matters were drawn from contemporaneous notes kept by Mr.
McCoy and by other attorneys in his office, which were later transcribed by Mr.
4 McCoy's staff. The special master instructed Plaintiffs' counsel to preserve all
contemporaneous records documenting time spent in this case.

5   In light of testimony at the Declaration of Aldon L. Bolanos filed on August 23,
6 2007, the special master finds that examination of the contemporaneous records is
necessary to resolution of the motion for sanctions. Accordingly, the special master
7 hereby ORDERS Plaintiffs' counsel to produce to the special master by no later than 10
days after issuance of this order true and correct copies of all contemporaneous time
8 records for all attorneys who worked on the *Alvarado*, *Evans*, and *Boswell* matters. The
special master will thereafter determine whether Defendant should receive the records,
9 and if so, whether Defendant should receive them in their entirety or in redacted form.

10 Docket No. 923.

11   In response, on September 10, 2007, plaintiffs' counsel produced the above-mentioned calendars

12 of Messrs. McCoy and Smith, the task lists/assignment sheets, and the firm's "Yahoo" office calendar.

13 Docket No. 1248. Mr. McCoy did not produce any contemporaneous time records or invoices.

14   At his February 7, 2008 deposition, Mr. Bolanos turned over records purporting to be

15 contemporaneous invoices for two of Mr. McCoy's associates, Kelly Armstrong and Zachary Best. *See*

16 Docket No. 1022. The Special Master found that these documents were "contemporaneous time records

17 for . . . attorneys who worked on the *Alvarado*, *Evans*, and *Boswell* matters" and were therefore "plainly

18 responsive" to the Special Master's August 29, 2007 order. Recommendation and Order at 14. In his

19 Recommendation and Order, the Special Master describes Mr. Bolanos' deposition testimony in which

20 he testified that Mr. McCoy had these records in his possession on or about September 10, 2007, but

21 specifically told Bolanos that they would not be produced. *Id*. at 14-15 (citing Bolanos Depo. at 84,

22 193: Docket No. 1198).

23   The Special Master noted that Mr. McCoy was represented at Mr. Bolanos' deposition by an

24 attorney, Dow Patten, and was given the opportunity to cross-examine Bolanos. *Id*. at 15. "Patten did

25 not seek to impeach Bolanos's credibility or challenge his account of how he learned of these records.

26 Instead, he asked only one question, namely how Bolanos came to be in possession of the Best and

27 Armstrong timesheets." *Id*. Following the Bolanos deposition, Mr. McCoy filed a surreply and

28 declaration. In his declaration, he states that he "never saw the Best and Armstrong invoices while the

United States District Court
For the Northern District of California

18

1    fee petition was pending before the Court," that he last saw the records "when they were presented to

2    me for payment in 2003 or 2004," that Bolanos "never spoke to me about these invoices," and that he

3    "never showed these invoices to Bolanos or anyone in my office after they were presented to me for

4    payment in 2003 or 2004."  Docket 1033 ¶¶ 19-23.

5         The Special Master found that Mr. Bolanos was credible when he testified to having discussed

6    the Best and Armstrong records with Mr. McCoy prior to the production of documents to the Special

7    Master.  Recommendation and Order at 17.  The Special Master stated that his finding was "based upon

8    the special master's assessment of Bolanos's demeanor during his examination by counsel for FedEx,

9    counsel for Parker, counsel for McCoy and the special master.  The special master also notes the

10   extreme reluctance with which Bolanos gave his testimony, and that he did so only after being served

11   with a subpoena and being required to answer questions."  *Id*.  The Special Master continued:

> Furthermore, even relying only upon those aspects of Bolanos' live testimony that are
> unchallenged, the special master finds McCoy failed to comply with the special master's
> order.  McCoy does not contest the authenticity of the Best and Armstrong records.  RT
> (February 25, 2008 hearing), 11.  He has not denied that he was aware of the existence
> of these timesheets at the time the special master ordered production of contemporaneous
> records of time spent litigating this case.  He has not contested that the records were
> within his possession, custody, and control, or that they were responsive to the special
> master's order.  Indeed, [Mr. McCoy's March 10, 2008 surreply declaration, Docket No.
> 1033] leaves no room even for an inference that McCoy did not know of these records
> during the relevant time period, as McCoy admits that he affirmatively instructed his
> staff to turn them over to him and *not* to use them in preparing the fee petitions.  In
> essence, McCoy acknowledges the responsive documents were somewhere in his office;
> he just says he did not personally see them around the time of the special master's order.
> It would seem that McCoy, based on his own testimony, simply decided not to look for
> the documents the special master had ordered that he produce.

20   *Id*. at 17-18.  The Special Master found that Mr. McCoy deliberately did not produce the invoices, and

21   that the failure to produce the invoices was significant because the Best and Armstrong invoices

22   "demonstrate most unequivocally that the time records McCoy previously submitted were inaccurate."

23   *Id*. at 18.

24        In his objection, Mr. McCoy repeatedly asserts that on September 10, 2007, "the McCoy firm

25   produced all documents in [sic] knowingly in the Firm's possession that could be considered even

26   remotely responsive to [the Special Master's order]."  Docket No. 1185 at 6, 12.  As noted above, none

27   of the documents produced contained contemporaneous time records.  Thus, regardless of how Mr.

28   McCoy chooses to characterize the contract attorneys' invoices (such as asserting that these invoices

United States District Court
For the Northern District of California

were not created for the FedEx litigation, and that these invoices were not created contemporaneously), these documents – which contain dates, descriptions of work performed, and time spent, and are far more detailed than any document produced by Mr. McCoy – should have been produced in response to the Special Master's order: they are the *only* materials in the entire record which actually appear to document time spent by attorneys on the *Alvarado*, *Evans*, and *Boswell* matters.  Although these invoices were not actually used to create the fee petitions (and instead, according to Mr. McCoy, he "summarized" these invoices in his "notes""with no reference to time entries"), the Special Master's order required production of all contemporaneous time records for the attorneys who had worked on the cases.  Mr. McCoy's explanation that he did not produce these invoices because they were not contemporaneous, while at the same time producing all of the other non-contemporaneous materials, strains credulity.  Moreover, Mr. McCoy agreed at the February 25, 2008 hearing before the Special Master that there was "no dispute about the authenticity of the timesheets or that they are indeed records kept by [Best and Armstrong] in connection with their work . . . as it relates to FedEx." Recommendation and Order at 33 (citing Feb. 25, 2008 transcript at 11, Docket No. 1344).

It appears that the true reason Mr. McCoy did not produce these records, or use them to create the fee petitions, is that the time actually recorded by Best and Armstrong on the invoices is substantially less than the time claimed for Best and Armstrong in the fee petitions.  As the Special Master found, "the end result of McCoy's misrepresentations is unambiguous.  During the period for which records were produced, Armstrong billed a total of 92.1 hours for work on the FedEx cases. McCoy represented that she worked 289.6 hours during the same time frame, an increase of over 300%." *Id.* at 35.

## IV.    Inaccurate fee petitions

Relatedly, the Special Master also found that many of the entries in the time sheets submitted by Mr. McCoy were not accurate.  The Special Master first noted that "while there are many entries in the records McCoy submitted that cause the special master substantial concern, often there is no way to determine in any definitive manner whether the entries are accurate or not."  Recommendation and Order at 19.  The special master provided "three examples out of many," including a time entry for

20

United States District Court
For the Northern District of California

77.25 hours to draft a motion in limine in *Evans*:

> Mr. McCoy initially claimed this motion related to "complex issues related to Evans's criminal history" (Reply in Support of *Evans* Fee Petition (Docket 793), 7), but at the hearing he clarified that Evans in fact has no criminal history and the motion dealt with the criminal history of potential witness Darryl Adams. RT 88. The filed motion (Docket 600) is barely over a page long and cites no cases. Plaintiffs' counsel explained that this was a scaled-down version of the motion they initially prepared, which was not filed for tactical reasons. RT 85-88. The special master finds it doubtful that any motion to exclude evidence of criminal history could take nearly two solid weeks of work to prepare. Again, however, there is simply no way to know for certain.

*Id.* at 19-20; *see also id.* (noting that Mr. McCoy billed 129.5 hours from April to August 2005 to respond to a motion for summary judgment where the motion was not filed until September 2005; noting that despite Mr. McCoy's sworn representations that tasks were "billed to tenth of an hour" and that "any time records of an hour or half-hour of work accurately reflect the amount of time the McCoy firm spent working" the vast majority of entries are full hours, with the remainder billed at half-hour and, very occasionally, quarter-hour increments). The Court shares the Special Master's skepticism in this regard.

However, the Special Master did identify a number of entries that were demonstrably false. The Special Master found that Mr. McCoy engaged in bad faith with regard to the inaccurate entries because he had many opportunities to correct inaccuracies after they were brought to his attention, and that "[w]hile McCoy did make some modifications to some of the entries, for the most part, as discussed below, he did so only when the inaccuracy of the records became patently obvious. In other cases, he made no modifications at all." *Id.* at 21:8-13. The Special Master then provided a number of specific examples of false entries, including entries shown to be false based on the Best and Armstrong invoices. *Id.* at 23-33.

Mr. McCoy does not raise any specific objection to the Special Master's findings of false entries. Instead, Mr. McCoy argues that the questioned time entries "do not permeate the petition," and that "[i]t comes as no surprise that from the approximately 1000 reconstructed time entries the special master opined that eight unmodified reconstructed time entries and modified descriptions of reconstruction [sic] time entries were unreasonable." Docket No. 1185 at 21. Contrary to Mr. McCoy's characterization, the Special Master did not find the entries "unreasonable." He found them false. Further, as specifically noted by the Special Master, there were numerous other time entries that were questionable but not,

21

**United States District Court**
For the Northern District of California

1    given the difficulty in proof, demonstrably false.

2        Mr. McCoy also asserts that any minor inaccuracies should be excused in the face of voluntary

3    reductions that he made, and he provides examples of instances where he billed FedEx less than the total

4    amount of time he allegedly actually spent on a task.  However, in each of the examples provided by

5    Mr. McCoy, the task at issue was performed on behalf of numerous plaintiffs, and the reduction in time

6    was made only to account for that fact.  Thus, when Mr. McCoy's office allegedly spent 25 hours to

7    handle calls from the media over a two day period (a claim of which the Court is skeptical), Mr. McCoy

8    only billed 1.06 hours for this task in each of the fee petitions because, at the time of the media calls,

9    Mr. McCoy represented 24 plaintiffs.  These reductions are wholly irrelevant to the question of whether

10   the questioned time entries are false.

11       The Court has reviewed the entries at issue – such as billing full days for trial when court was

12   not in session and billing for attending hearings that did not occur – and agrees with the Special

13   Master's assessment that the entries are false.  The false time entries, combined with the unreliable

14   manner in which the fee petitions were prepared and the numerous other indications suggesting that the

15   fee petitions are inaccurate, lead the Court to conclude that the fee petitions cannot be relied upon in any

16   manner.  Further, because Mr. McCoy repeatedly made material misrepresentations regarding the

17   creation of the fee petitions, the Court finds that one appropriate sanction is to strike the fee petitions

18   in their entirety.

19

20                                        **CONCLUSION**

21       The Court has presided over this litigation since its inception, and has been troubled on a

22   number of occasions by Mr. McCoy's conduct.[21]    With regard to the fee petitions, Mr. McCoy made

23   numerous misrepresentations to the Court, did not comply with discovery obligations, and sought a

24

_____

25       [21] *See, e.g.*, Docket Nos. 988 (Order Denying Plaintiffs' Motion to Disqualify Special Master,
      finding Mr. McCoy's accusations of bias and impropriety "patently frivolous"); 1144 (Order Denying
26   Plaintiffs' Motion for Extension of Time to File Notice of Appeal re Evans, finding that Mr. McCoy had
      filed a declaration containing false statements regarding explanation for untimely appeal); 1169 (Order
27   Denying Plaintiff Evans' Motion for Reconsideration, finding that "plaintiff's shifting-sands approach
      only confirms this Court's opinion that Mr. McCoy's original declaration was intentionally
28   misleading."). The Ninth Circuit dismissed plaintiff Evans' appeal as untimely.

**United States District Court**
For the Northern District of California

1   statutory fee recovery based on reconstructed time records that were demonstrated to be false or wholly

2   lacking in credibility.

3          There are several consequences of these actions.  The first is that the Court cannot rely with any

4   confidence on Mr. McCoy's papers, declarations or arguments in support of his fee petitions.

5   Accordingly, the fee petitions as framed are denied in their entirety.

6          The second consequence is that because Mr. McCoy has breached his duties of good faith and

7   candor to the Court, his conduct warrants sanctions.  The Court finds that one appropriate sanction is

8   to deny the fee petitions with prejudice – that is, strike them from the file without leave to refile or

9   amend them.  The Court is aware that Mr. McCoy has in fact spent a great of time on these cases and

10  his success before the jury was considerable.[22]   However, the Court finds that by his repeated

11  misrepresentations to both the Special Master and to this Court, on matters of clear significance, Mr.

12  McCoy has forfeited his opportunity to seek statutory fees.

13         The third consequence is the Court will affirm the Special Master's finding that Mr. McCoy, in

14  his individual capacity, should be required to pay monetary sanctions of $25,000, and order that he pay

15  the $25,000 sanction to the Clerk of the U.S. District Court no later than **April 10, 2009**.

16

17

18

19

20

21

22

23  ///

24

25

26

27  ───────────────

28      [22] Although not without controversy.  The continuing distraction of Mr. McCoy's relationship
with his co-counsel and his creditors has yet to end.

Accordingly, the Court ADOPTS and MODIFIES the Special Master's Recommendation and Order (Docket No. 1085), DENIES plaintiff's objection (Docket No. 1152), and GRANTS defendant's motion to modify the Recommendation (Docket No. 1141).  The Court STRIKES Mr. McCoy's fee petitions (Docket Nos. 1223 & 1224).   By separate order, the Court denies Mr. McCoy's objections to the Special Master's fee requests, and directs Mr. McCoy to pay the outstanding balance of the Special Master's pending fee bills no later than 10 days after the filing date of this Order.

**IT IS SO ORDERED.**

Dated: March 19, 2009

SUSAN ILLSTON
United States District Judge